JACOB M. HARPER (State Bar No. 259463)
  jacobharper@dwt.com
MARCY BLATTNER MICALE (State Bar No. 319868)
  marcymicale@dwt.com
SANCHO ACCORSI (State Bar No. 329413)
  sanchoaccorsi@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California  90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Defendant
GT'S LIVING FOODS, LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| MATT SORENSEN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>GT'S LIVING FOODS, LLC, a California limited liability company; DOES 1 through 25, inclusive<br><br>                    Defendant. | Case No. 24STCV20548<br><br>**DEFENDANT GT'S LIVING FOODS, LLC'S REPLY MEMORANDUM IN SUPPORT OF DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**RESERVATION ID 399814760543**<br><br>Assigned to the Hon. Joseph Lipner<br>Dept.:         72<br><br>Date:         April 10, 2025<br>Time:         9:30 a.m.<br><br>Action Filed:  August 13, 2024 |

REPLY ISO DEMURRER TO FAC    1

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 7 |
| II. | THE FAC SHOULD BE DISMISSED WITH PREJUDICE | 8 |
| | A. Plaintiff's § 638.51 Claim Fails. | 8 |
| |     1. Penal Code § 638.51 Does Not Provide a Private Right of Action. | 8 |
| |     2. The TikTok Code Is Not a Trap and Trace Device. | 9 |
| |     3. Plaintiff Alleges No Injury Caused By Any Trap and Trace Device. | 13 |
| |     4. The Pen/Trap Law Expressly Exempts GT's Conduct. | 15 |
| |     5. GT's Is the Relevant User for Consent. | 15 |
| | B. Plaintiff's UCL Claim Fails. | 16 |
| |     1. Plaintiff Alleges No Economic Injury. | 16 |
| |     2. Plaintiff Does Not Allege Unlawful Conduct. | 16 |
| |     3. Plaintiff Does Not Allege Unfair Conduct. | 16 |
| |     4. Plaintiff Does Not Allege Fraudulent Conduct. | 16 |
| III. | CONCLUSION | 16 |

2

REPLY ISO DEMURRER TO FAC

**DAVIS WRIGHT TREMAINE** LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brown v. Google LLC* (N.D.Cal. 2023)
   685 F.Supp.3d 909 .................................................................................................. 15

*Cal. Med. Assn. v. Aetna Health of Cal. Inc.* (2023)
   14 Cal.5th 1075 ...................................................................................................... 16

*Cal. Sch. Bds. Ass'n v. State Bd. of Educ.* (2015)
   240 Cal.App.4th 838 ................................................................................................ 8

*Cal. Water Impact Network v. Cnty. of San Luis Obispo* (2018)
   25 Cal.App.5th 666 .................................................................................................. 9

*Casillas v. Transitions Optical, Inc.* (L.A.Sup.Ct. Sept. 9, 2024)
   2024 WL 4873370 .................................................................................................. 14

*Coburn v. Sievert* (2005)
   133 Cal.App.4th 1483 .............................................................................................. 8

*Doe v. Adobe* (L.A.Sup.Ct. Sept. 19, 2024)
   23STCV11136 ........................................................................................................ 15

*Gabrielli v. Insider, Inc.* (S.D.N.Y. Feb. 18, 2025)
   2025 WL 522515 .............................................................................................. 13, 14

*Greenley v. Kochava, Inc.* (S.D.Cal. 2023)
   684 F.Supp.3d 1024 ............................................................................................... 12

*Hale v. Morgan* (1978)
   22 Cal.3d 388 ..................................................................................................... 7, 11

*Heeger v. Facebook, Inc.* (N.D.Cal. 2020)
   509 F.Supp.3d 1182 ............................................................................................... 13

*Hill v. Nat'l Collegiate Athletic Assn.* (1994)
   7 Cal.4th 1 .............................................................................................................. 13

*In re Facebook, Inc. Internet Tracking Litig.* (9th Cir. 2020)
   956 F.3d 589 ..................................................................................................... 14, 16

*In re Google, Inc. Priv. Pol'y Litig.* (N.D.Cal. 2014)
   58 F.Supp.3d 968 ................................................................................................... 13

*James v. Walt Disney Co.* (N.D.Cal. 2023)
   701 F.Supp.3d 942 ................................................................................................. 10

REPLY ISO DEMURRER TO FAC

3

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Jarman v. HCR ManorCare, Inc.* (2020)
    10 Cal.5th 375 .................................................................................................. 9

*Katz v. United States* (1967)
    389 U.S. 347 .................................................................................................. 12

*Kwikset Corp. v. Sup. Ct.* (2011)
    51 Cal.4th 310 ............................................................................................... 16

*Low v. LinkedIn* (N.D.Cal. 2012)
    900 F.Supp.2d 1010 ...................................................................................... 13

*Moody v. C2 Educational Systems, Inc.* (C.D.Cal. 2024)
    742 F.Supp.3d 1072 ................................................................................ 12, 16

*Moore v. Centrelake Med. Grp., Inc.* (2022)
    83 Cal.App.5th 515 ................................................................................. 14, 15

*Namisnak v. Uber Techs., Inc.* (N.D.Cal. 2020)
    444 F.Supp.3d 1136 ...................................................................................... 16

*Patel v. Facebook, Inc.* (9th Cir. 2019)
    932 F.3d 1264 .......................................................................................... 14, 16

*People v. Bouzas* (1991)
    53 Cal.3d 467 ............................................................................................... 16

*People v. Larkin* (1987)
    194 Cal.App.3d 650 ...................................................................................... 10

*People v. McKale* (1979)
    25 Cal.3d 626 ............................................................................................... 16

*People v. Stipo* (2011)
    195 Cal.App.4th 664 .................................................................................... 13

*Price v. Headspace, Inc.* (L.A.Sup.Ct. Apr. 1, 2025)
    2025 WL 1237977 ........................................................................... 7, 9, 10, 11

*R.C. v. Walgreen Co.* (C.D.Cal. 2024)
    733 F.Supp.3d 876 ........................................................................................ 10

*Rodriguez v. Fountain9, Inc.* (L.A.Sup.Ct. Nov. 21, 2024)
    2024 WL 4905217 ........................................................................................ 14

*Rodriguez v. Plivo Inc.* (L.A.Sup.Ct. Oct. 2, 2024)
    2024 WL 5184413 ........................................................................................ 14

*Saleh v. Nike, Inc.* (C.D.Cal. 2021)
    562 F.Supp.3d 503 .......................................................................................... 9

REPLY ISO DEMURRER TO FAC

4

**DAVIS WRIGHT TREMAINE** LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Sanchez v. Cars.com Inc.* (L.A.Sup.Ct. Jan. 27, 2025)
  2025 WL 487194 .................................................................................................. 14

*Shah v. Fandom, Inc.* (N.D.Cal. 2024)
  754 F.Supp.3d 924 ................................................................................................ 12

*Smith v. Maryland* (1979)
  442 U.S. 735 ............................................................................................. 10, 11, 13

*Sparshott v. Feld Ent., Inc.* (D.C.Cir. 2002)
  311 F.3d 425 .......................................................................................................... 12

*United Med. Management Ltd. v. Gatto* (2016)
  49 Cal.App.4th 1732 .............................................................................................. 9

*United States v. Caira* (7th Cir. 2016)
  833 F.3d 803 .......................................................................................................... 13

*United States v. Forrester* (9th Cir. 2008)
  512 F.3d 500 .................................................................................................. 10, 12

*Xu v. Reuters News & Media Inc.* (S.D.N.Y. Feb. 13, 2025)
  2025 WL 488501 .................................................................................................. 14

*Yoon v. Lululemon USA, Inc.* (C.D.Cal. 2021)
  549 F.Supp.3d 1073 .............................................................................................. 9

**STATUTES**

18 U.S.C., § 3127(4) ..................................................................................................... 10

California Business & Professions Code, § 17204 ....................................................... 16

California Penal Code
  § 629.51(a)(2) ........................................................................................................ 11
  §§ 630-638.55 ......................................................................................................... 9
  § 631 ................................................................................................................ 10, 16
  §§ 631, 632 ............................................................................................................ 14
  § 635 ....................................................................................................................... 9
  § 637.2 ............................................................................................................ 7, 8, 9
  §§ 638.50-638.55 .................................................................................................... 7
  § 638.50(c) .............................................................................................. 7, 9, 11, 12
  § 638.51 ........................................................................................................ passim
  § 638.51(b)(1) ....................................................................................................... 15
  § 638.51(b)(5) ....................................................................................................... 15

**RULES**

California Rules of Court 8.1115(a) .............................................................................. 7

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    Fourth Amendment ............................................................................................... 12, 13

**OTHER AUTHORITIES**

9 Witkin, Cal. Proc. 6th Appeal § 507 (2025) ............................................................... 14

## I. INTRODUCTION

Plaintiff and his counsel attempt to twist a criminal statute into a hook for money damages and fees by alleging, in this case and many others, that analytics and advertising tools used on websites across the internet are criminal pen registers or trap and trace devices (pen/traps). But courts "adopt the narrowest construction of [a criminal statute's] penalty clause," and do not permit the stretched reading Plaintiff proffers here. (*Hale v. Morgan* (1978) 22 Cal.3d 388, 405.)

The pen/trap law (Pen. Code, §§ 638.50-638.55) narrowly addresses tools that collect "source" information akin to the "originating number" of a telephone call; they do not collect the content of the communication. (*Id.* § 638.50(c) [defining trap and trace device].) Plaintiff's Opposition does not meaningfully address this fundamental incongruity between his sweeping allegations (which claim wholesale data collection, not mere source information) and the hyper-specific criminal law he invokes. Instead, he maligns the Demurrer as "nonsensical" and "absurd" and promises "no court has held that TikTok software is not a trap and trace device." (Opp'n 10, 15.) But this is not true. A judge in this Court sustained a demurrer against another of Plaintiff's counsel's exact same § 638.51 cases, concluding "[t]he TikTok [s]oftware is [n]ot a [t]rap and [t]race [d]evice." (*Price v. Headspace, Inc.* (L.A.Sup.Ct. Apr. 1, 2025) 2025 WL 1237977, at *3.)[1] Indeed, many other courts have ruled online tools like the TikTok code here do not, as a matter of law, support private claims under the pen/trap law.

The Court should sustain the Demurrer for several reasons.

*First*, Plaintiff asks the Court to apply the private right of action at CIPA § 637.2 to his § 638.51 claim, but he ignores that § 637.2 is latently ambiguous if applied to the pen/trap law because doing so conflicts with the statutory scheme and the Legislature's intent—and, because of the ambiguity of this criminal statute, cannot support the broad reading Plaintiff advances.

*Second*, Plaintiff concedes the TikTok code is not a trap and trace device because "[he] … does not allege that [it] records IP address data" (Opp'n 14), but identifies no other "source" information. In any event, he alleges the TikTok pixel captures "as much data as it can,"

---

[1] Though the Appellate Rules of the California Rules of Court prohibit citing unpublished opinions (Cal. R. of Ct. 8.1115(a)), GT's cites *Price* (and several other Superior Court opinions below) in the trial court and to contradict Plaintiff's inaccurate description of the case law.

7

REPLY ISO DEMURRER TO FAC

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

including data that, as a matter of law, can be contents of a communication. This means the TikTok tool is not a trap and trace device because such devices collect source information, "but not the contents of communications." (Pen. Code, § 638.50(c).)

*Third*, even if he did allege the TikTok code captured source information, Plaintiff fails to allege a privacy injury sufficient to bring a claim under § 637.2 because he has no privacy interest in his IP address, which he necessarily and voluntarily shared with GT's to access the website.

*Fourth*, the pen/trap law exempts GT's from the general rule against trap and trace devices because GT's must collect IP addresses to operate its website, which Plaintiff does not dispute.

*Fifth*, GT's is a "user" of the TikTok software, and GT's consented to its use.

*Sixth*, Plaintiff does not meaningfully address GT's arguments to dismiss his UCL claim.

The Court should sustain GT's demurrer and dismiss the FAC with prejudice.

## II. THE FAC SHOULD BE DISMISSED WITH PREJUDICE

### A. Plaintiff's § 638.51 Claim Fails.

#### 1. Penal Code § 638.51 Does Not Provide a Private Right of Action.

As explained in the Demurrer, Plaintiff has no private right of action to bring his § 638.51 claim: (1) the pen/trap law itself does not have a private right of action; (2) the Legislature intended the pen/trap law to guide how law enforcement obtains pen/traps, not to foster private suits for damages;[2] (3) the pen/trap law details various other enforcement mechanisms; and (4) the pen/trap law should be narrowly construed. (Demurrer 15-17.) Plaintiff largely ignores these arguments, instead arguing that the private right of action at § 637.2 applies here. (Opp'n 11.)

But Plaintiff misses that these arguments render § 637.2 latently ambiguous when applied to the pen/trap law. Even where statutory language appears clear, courts assess whether the statute contains a latent ambiguity, or "some extrinsic evidence creates a necessity for interpretation." (*Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1495 [finding latent ambiguity in facially "clear and intelligible" term].) Courts consider "extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, … and the statutory scheme of which the statute is a part." (*Id*. at p. 1496 [quotation omitted]; see also *Cal.*

---

[2] GT's never argued "the trap and trace law only applies to law enforcement." (Opp'n 12.)

*Sch. Bds. Ass'n v. State Bd. of Educ.* (2015) 240 Cal.App.4th 838, 854 ["[W]e must read the words 'in their context and with a view to their place in the overall statutory scheme.'"].) Here, for the reasons stated above and in the Demurrer, § 637.2's language "a violation of this chapter" is latently ambiguous because applying it literally to § 638.51 conflicts with the pen/trap law's intent and enforcement scheme. (Demurrer 15-17.)[3]

Plaintiff's cases do not help him. One supports GT's because it "look[ed] to the statutory scheme" to find a statute *was* ambiguous. (*Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 381-383.) The others did not address latent ambiguity at all. (*Cal. Water Impact Network v. Cnty. of San Luis Obispo* (2018) 25 Cal.App.5th 666 [not discussing latent ambiguity]; *United Med. Management Ltd. v. Gatto* (2016) 49 Cal.App.4th 1732 [same].)

Plaintiff fails to establish a basis for a private claim for a purported § 638.51 violation.

### 2.  The TikTok Code Is Not a Trap and Trace Device.

A trap and trace device "captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." (Pen. Code, § 638.50(c).) Plaintiff alleges none of these elements.

**No "Source" Information.** Plaintiff does not allege that the TikTok code is a trap and trace device because he does not allege it captures "source" information equivalent to the "originating number" of a telephone call. (Demurrer 17-18.) Plaintiff concedes that "[he] … does not allege that TikTok Software records IP address data" (Opp'n 14) but he offers no other potential "source" information. This is enough to sustain the Demurrer.

**The TikTok Code Can Capture "Contents."** Moreover, his Opposition confirms the FAC describes a process that can capture the "contents" of a communication, which means it does not describe a trap and trace device. (Pen. Code, § 638.50(c); see *Price*, *supra*, 2025 WL

---

[3] Plaintiff avoids GT's argument that courts do not automatically apply § 637.2 to later-enacted CIPA provisions. (Demurrer 15 [citing *Yoon v. Lululemon USA, Inc.* (C.D.Cal. 2021) 549 F.Supp.3d 1073.) Plaintiff's attempt to limit *Yoon* to § 635 (Opp'n 12) contradicts his argument that § 637.2 applies to "§§ 630-638.55." (*Id.* at p. 11.) And Plaintiff mischaracterizes GT's citation to *Saleh v. Nike, Inc.* (C.D.Cal. 2021) 562 F.Supp.3d 503 (Opp'n 12), which supports GT's argument that merely "installing" a trap and trace device without "using" it cannot cause injury. (Demurrer 19 fn. 4.) Plaintiff does not argue otherwise.

9

REPLY ISO DEMURRER TO FAC

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

1237977, at p. *3 [dismissing § 638.51 claim, reasoning "if the device is capturing the content of the communications, it is definitionally not a trap and trace device"].) In fact, courts, including the United States Supreme Court, have long "distinguished pen registers from more intrusive surveillance techniques on the ground that 'pen registers do not acquire the *contents* of communications' but rather obtain *only* the addressing information associated with phone calls." (*United States v. Forrester* (9th Cir. 2008) 512 F.3d 500, 509 [quoting *Smith v. Maryland* (1979) 442 U.S. 735, 741] [second emphasis added]; see *People v. Larkin* (1987) 194 Cal.App.3d 650, 653 fn. 2 ["[a] pen register," like a trap and trace, "is a mechanical device connected to a telephone number to … register[] the phone numbers dialed"].)[4]

Here, Plaintiff alleges the TikTok code can capture information considered, as a matter of law, the "contents" of a communication. He says his theory is about a process that captures "as much data as it can"—"much more … than collecting a basic device IP address." (Opp'n 8, 13.) He says the TikTok code "scans websites for information," "monitors each visitor's Internet browsing history, physical location, and obtains personal identifying information," and "uses a 'fingerprinting process' to unmask the[ir] identity." (*Id.* at pp. 5, 8-9.) But allegations that a tracking tool can record users' interactions with a website, including "search queries" or "browsing history" (Opp'n 8-9 [citing FAC ¶¶ 15, 16, 19]; FAC ¶ 49), have been sufficient to support the conclusion that software can collect "'contents' of communications." (*R.C. v. Walgreen Co.* (C.D.Cal. 2024) 733 F.Supp.3d 876, 886, 902-903 [collecting browsing history sufficient to allege "contents" of communication]; see *James v. Walt Disney Co.* (N.D.Cal. 2023) 701 F.Supp.3d 942, 956 [collecting "information about the webpages [plaintiffs] viewed and searches they conducted" sufficient to allege "contents"].) Because Plaintiff alleges the TikTok code can capture contents of communications, he alleges it is not a trap and trace device.[5]

---

[4] Plaintiff says federal pen/trap cases interpret "an entirely different statute" (Opp'n 9), but federal law defines "trap and trace device" identically. (See 18 U.S.C., § 3127(4).)

[5] This is not to say a website operator can evade liability by using devices *more* invasive than a trap and trace. "[A] host of statutes and caselaw are directed at those other devices" (*Price*, *supra*, 2025 WL 1237977, at p. *3; see Pen. Code, § 631 [criminalizing wiretapping contents of communications]), but Plaintiff chose not to invoke those statutes in this iteration of CIPA cases.

REPLY ISO DEMURRER TO FAC | 10 | DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Price*, *supra*, dismissed another of Plaintiff's counsel's § 638.51 complaints on this basis. *Price* held familiar allegations that "[t]he TikTok Software is not simply tracking an IP address" but rather "collects as much data as it can" (2025 WL 1237977, at p. *3 [quoting opposition]), "support[ed] the conclusion that the contents of the communications [were] being captured" and thus "conflict[ed] with the statutory definition of a trap and trace device." (*Ibid.*)

**Plaintiff's Construction Fails.**  Having failed to explain how his theory fits the narrow pen/trap law, Plaintiff tries to expand the law.  He argues the TikTok code is a trap and trace because it generally captures "'signaling information', including the transfer of signals, data, 'intelligence of any nature.'"  (Opp'n 9.)  This sweeping construction fails for several reasons.

*First*, it ignores the rules of construction that hold specific terms like "originating number" control more general ones like "signaling information" (which in any case is limited to information "likely to identify the source" of a communication).  (Demurrer 17-18.)  It also ignores the rule to construe criminal statutes narrowly and resolve ambiguity in favor of alleged violators.  (See *Hale*, *supra*, 22 Cal.3d at p. 405 [courts "adopt the narrowest construction of [criminal statute's] penalty clause to which it is reasonably susceptible"]; Demurrer 17 [addressing rule of lenity].)

*Second*, Plaintiff says any device that captures "intelligence of any nature" constitutes a trap and trace device (Opp'n 9), but he neglects to mention that that language comes from the definition of a *wire communication*, not a trap and trace device.  (Pen. Code, § 629.51(a)(2) [defining wire communication].)  But however "wire communication" is defined, a trap and trace still has to identify the communication's "source," which is limited to information akin to an "originating number."  (*Id.* § 638.50(c).)

*Third*, Plaintiff argues the TikTok code is a trap and trace because it is a "device or process" (Opp'n 9) but, again, a trap and trace still has to be a device or process that captures "source" information.  (Pen. Code, § 638.50(c).)

*Fourth*, Plaintiff's unbounded definition flips the statutory scheme on its head. The federal pen/trap law filled a gap in the Fourth Amendment's warrant requirement, which did not apply to pen/traps, by requiring law enforcement to obtain a court order for their use (even if

not a full warrant supported by probable cause). (Demurrer 12 [citing *Smith*, *supra*, 442 U.S. at p. 745]; see *Forrester*, *supra*, 512 F.3d at p. 510 fn. 6 [electronic "[s]urveillance techniques that enable the government to determine *not only* the IP addresses that a person accesses … might be more constitutionally problematic"] [emphasis added].) But if, as Plaintiff suggests, a device that captures "signals, data, or intelligence" of any kind—not just source information—is still a trap and trace device, then law enforcement could surveil the contents of any wire communication with only a court order under the pen/trap law. This result conflicts with longstanding Fourth Amendment jurisprudence. (See *Katz v. United States* (1967) 389 U.S. 347, 353 [government's use of wiretap constituted search requiring warrant supported by probable cause].)

*Fifth*, Plaintiff's argument would also criminalize everyday caller ID. (Demurrer 19.) Plaintiff calls this argument "nonsensical" (Opp'n 9), but does not explain why. (See *Sparshott v. Feld Ent., Inc.* (D.C.Cir. 2002) 311 F.3d 425, 432 [caller ID not a trap and trace under federal law because otherwise "it is hard to see how any caller ID system … would be legal"].)

*Last*, Plaintiff's authorities do not require a different result. Two did not consider the argument, raised here, that software that can capture contents of a communication is not a trap and trace device. (See *Shah v. Fandom, Inc.* (N.D.Cal. 2024) 754 F.Supp.3d 924, 928-930 [rejecting unrelated arguments that IP addresses themselves were "'contents' of the communication" and software "d[id] not operate like [a] traditional pen register[]"]; *Greenley v. Kochava, Inc.* (S.D.Cal. 2023) 684 F.Supp.3d 1024, 1050 [rejecting unrelated argument that software cannot be a pen register].) Plaintiff's last case declined to address whether certain data was "contents" of a communication, reasoning that, even if it were, the claim survived because other data alleged was not contents and "a defendant may not dismiss only a portion of a claim under [Federal Rule of Civil Procedure] 12(b)(6)." (*Moody v. C2 Educational Systems, Inc*. (C.D.Cal. 2024) 742 F.Supp.3d 1072, 1077.) But here, Plaintiff does not allege the TikTok code captures source any information. (Opp'n 14 [he "does not allege that TikTok Software records IP address data"].) In any event, *Moody* misconstrued CIPA's definition of a trap and trace device, which excludes any device that captures contents even if it also captures source information. (Pen. Code, § 638.50(c) [trap and trace captures source information "but not the contents of communications"].)

In sum, Plaintiff does not allege the TikTok code is a trap and trace device.

### 3. Plaintiff Alleges No Injury Caused By Any Trap and Trace Device.

Even if Plaintiff alleged the TikTok code captured source information and not contents, his claim still fails because the narrow aspect of the code that could be considered a trap and trace device, *i.e.*, that allegedly captures IP addresses, did not injure him. (Demurrer 19-21.)

**No Privacy Injury.** Plaintiff alleges a privacy injury (Opp'n 13) but collecting IP addresses does not cause a privacy injury. (Demurrer 20.) A privacy injury requires: (1) a legally protected privacy interest, (2) a reasonable expectation of privacy, and (3) an egregious breach of norms. (*Hill v. Nat'l Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35-37 [outlining elements].)

Plaintiff satisfies none of these elements. *First*, he does not dispute that "there is no legally protected privacy interest in IP addresses." (*Heeger v. Facebook, Inc.* (N.D.Cal. 2020) 509 F.Supp.3d 1182, 1190 [finding no privacy injury for CIPA claim].) *Second*, Plaintiff does not even argue he reasonably expected his IP address to be private, nor could he. A user's IP address is "transmitted during internet usage and is necessary for the internet service providers to perform their services." (*United States v. Caira* (7th Cir. 2016) 833 F.3d 803, 807 [cleaned up]; *People v. Stipo* (2011) 195 Cal.App.4th 664, 669 ["Internet users have no expectation of privacy in … IP addresses"].)[6] *Last*, he does not argue collecting IP addresses is an egregious breach of norms. (See *Low v. LinkedIn* (N.D.Cal. 2012) 900 F.Supp.2d 1010, 1025 [disclosing user data, including IP addresses, "routine commercial behavior"]; *In re Google, Inc. Priv. Pol'y Litig.* (N.D.Cal. 2014) 58 F.Supp.3d 968, 988 [same].)

Notwithstanding Plaintiff's suggestion to the contrary (Opp'n 10-11), many cases have dismissed § 638.51 claims based on web tools like the TikTok code because collecting IP addresses does not cause a privacy injury. The court in *Gabrielli v. Insider, Inc.* (S.D.N.Y. Feb. 18, 2025) 2025 WL 522515, thoroughly considered the question and dismissed a § 638.51 claim for lack of injury because "the collection of an IP address would not be considered an intrusion

---

[6] Plaintiff dismisses *Smith*, *supra*, 442 U.S. at p. 735, because it considered privacy expectations under the Fourth Amendment, not California law (Opp'n 7), but this is a distinction without a difference. (Demurrer 12, 20; see *Heeger*, *supra*, 509 F.Supp.3d at p. 1190 fn. 3 ["it is useful to look to Fourth Amendment cases" to evaluate privacy injuries under CIPA].)

that would be 'highly offensive to a reasonable person.'" (*Id.* at p. *6 [reasoning "an IP address is necessary to access [a] website"].) Other courts agree. (See *Xu v. Reuters News & Media Inc.* (S.D.N.Y. Feb. 13, 2025) 2025 WL 488501, at *5 [dismissing § 638.51 claim for lack of injury]; *Casillas v. Transitions Optical, Inc.* (L.A.Sup.Ct. Sept. 9, 2024) 2024 WL 4873370, at *6 [same, reviewing case law and explaining "[t]he view that there is no privacy interest in IP addresses provided to a service provider or web-site is well established"]; *Sanchez v. Cars.com Inc.* (L.A.Sup.Ct. Jan. 27, 2025) 2025 WL 487194, at *5 [same]; *Rodriguez v. Fountain9, Inc.* (L.A.Sup.Ct. Nov. 21, 2024) 2024 WL 4905217, at *4 [same]; *Rodriguez v. Plivo Inc.* (L.A.Sup.Ct. Oct. 2, 2024) 2024 WL 5184413, at *2 [same]; see also 9 Witkin, Cal. Proc. 6th Appeal § 507 (2025) [noting that collection of superior court orders may be persuasive].)[7]

Conceding any source information at issue here did not give rise to a privacy injury, Plaintiff argues he suffered a privacy injury because TikTok allegedly collected "personal data" and deanonymized him. (Opp'n 5, 14.) That may be. But because § 638.51 is narrowly aimed at devices that cannot collect non-source information, Plaintiff needs another statutory hook to bring a claim for interception of that information. (Demurrer 20.)

Last, Plaintiff's cases are easily distinguished. Neither considered the narrow CIPA provision at issue here. (See *In re Facebook, Inc. Internet Tracking Litig.* (9th Cir. 2020) 956 F.3d 589, 598 [considering CIPA §§ 631, 632]; *Patel v. Facebook, Inc.* (9th Cir. 2019) 932 F.3d 1264, 1272 [considering Illinois's Biometric Information Privacy Act].)

**No Economic Injury.** GT's also explained that Plaintiff did not allege economic injury because he failed to plead any facts "support[ing] the proposition that the personal information … had any value for which [he] could have expected to be compensated." (*Moore v. Centrelake Med. Grp., Inc.* (2022) 83 Cal.App.5th 515, 539; Demurrer 20-21.) Plaintiff responds simply: "Plaintiff suffered economic injury." (Opp'n 16.) But saying it does not make it so. As in *Moore*, *supra*, "[i]t strains credulity to believe that" any data broker "would have gone to each individual [visitor to GT's website] and compensated him or her for access to his or her personal

---

[7] The fact that a trap and trace device captures only source information distinguishes this case from cases concluding users have a privacy interest in personal health data on healthcare provider websites. Plaintiff does not allege he communicated any sensitive information to GT's.

information," let alone his or her IP address. (*Id.* at pp. 539-540 [quotation omitted].) Plaintiff ignores GT's authority (Demurrer 21), and his only authority is easily distinguished: the plaintiffs in *Brown v. Google LLC* (N.D.Cal. 2023) 685 F.Supp.3d 909, alleged a market for their data by alleging the "[defendant] itself piloted a program to pay users $3.00 a month to collect their browsing data." (*Id.* at p. 926.) Plaintiff identifies no comparable market for his data. This Court has dismissed based on similarly deficient allegations and it should do the same here. (See *Doe v. Adobe* (L.A.Sup.Ct. Sept. 19, 2024) 23STCV11136, at 7-8 (Cunningham, J.) [sustaining demurrer where plaintiff failed to allege she intended to or could derive value from data], attached as Ex. A to Declaration of Sancho Accorsi.)[8]

### 4. The Pen/Trap Law Expressly Exempts GT's Conduct.

GT's collection of source information, like IP addresses, is exempt under § 638.51(b)(1) because GT's has to collect users' IP addresses to operate its website. (Demurrer 21.) Plaintiff does not dispute this. (Opp'n 14.) He reiterates that his theory is about "various other types of information" (*ibid.*) but, as discussed, § 638.51 only concerns source information.

### 5. GT's Is the Relevant User for Consent.

GT's explained that § 638.51 only prohibits use of a trap and trace absent "consent of the user"—which includes GT's. (Pen. Code, § 638.51(b)(5); Demurrer 22-23.) Plaintiff says this argument is "absurd" because he believes § 638.51 "would never be violated." (Opp'n 15.) But he forgets the typical scenario for use of a pen/trap: a third party (usually law enforcement) using a pen/trap without either party's knowledge. It is Plaintiff and his attorneys who break new ground applying criminal law to routine online tools. Plaintiff also ignores GT's authority construing user consent this way to support the common-sense conclusion that caller ID is not criminal even without the prior consent of the caller. (Demurrer 22-23.) Same here.

---

[8] Plaintiff's last-ditch argument that GT's "induced [him] … to go on the Website … in reliance on the Website's cookie banner" (Opp'n 16) carries no water. Visitors already arrived on the website by the time they see the cookie banner. Plus, Plaintiff does not allege he purchased anything from GT's, so he did not lose the benefit of any bargain.

Likewise, Plaintiff does not dispute that his passing references to "price discrimination" and "the costs associated with protecting [consumers'] privacy" (FAC ¶ 52) are general, hypothetical harms insufficient to allege statutory standing. (Demurrer 21 fn. 6.)

## B. Plaintiff's UCL Claim Fails.

### 1. Plaintiff Alleges No Economic Injury.

As GT's explained in the Demurrer, Plaintiff fails to allege he "lost money or property" sufficient for UCL standing. (*Kwikset Corp. v. Sup. Ct.* (2011) 51 Cal.4th 310, 323; Demurrer 23.) And as explained above, his Opposition does not persuade otherwise. Plaintiff implies that a privacy injury is sufficient for UCL standing (Opp'n 16), but it is not. (*Cal. Med. Assn. v. Aetna Health of Cal. Inc.* (2023) 14 Cal.5th 1075, 1082 [UCL plaintiff must allege both "'injury in fact' and 'lost money or property'" [quoting Bus. & Prof. Code, § 17204].) Plaintiff's authorities do not even address the UCL. (See *In re Facebook*, supra, 956 F.3d at p. 597 [no UCL claim]; *Patel*, supra, 932 F.3d at p. 1272 [same]; *Moody*, supra, 742 F.Supp.3d at p. 1074 [same].)

### 2. Plaintiff Does Not Allege Unlawful Conduct.

As explained, Plaintiff's "unlawful" UCL claim fails because his § 638.51 claim fails and his passing references to CIPA § 631 and common law duties are insufficient. (Demurrer 23 [citing *People v. McKale* (1979) 25 Cal.3d 626, 635.) Plaintiff did not respond to this argument and concedes the point. (See *People v. Bouzas* (1991) 53 Cal.3d 467, 480 [failure to respond to argument is "apparent conce[ssion]"]; *Namisnak v. Uber Techs., Inc.* (N.D.Cal. 2020) 444 F.Supp.3d 1136, 1146 [failure to respond to argument "concedes it through silence"].)

### 3. Plaintiff Does Not Allege Unfair Conduct.

Plaintiff also fails to state an "unfair" UCL claim because (1) even if he alleged collecting or sharing his source information caused any injury at all (he does not), he fails to allege that any injury is "substantial"; and (2) all three UCL prongs are based on the same conduct. (Demurrer 23-34 [citing cases].) Plaintiff ignored both arguments, again conceding them.

### 4. Plaintiff Does Not Allege Fraudulent Conduct.

Last, Plaintiff's allegation that GT's cookie banner does not work does not support a UCL "fraudulent" claim for multiple reasons (Demurrer 24), all of which Plaintiff ignored.

## III. CONCLUSION

The Court should sustain the demurrer and dismiss the FAC with prejudice.

DATED: May 28, 2025

DAVIS WRIGHT TREMAINE LLP
JACOB M. HARPER
MARCY BLATTNER MICALE
SANCHO ACCORSI

By: /s/ Jacob M. Harper
        Jacob M. Harper

Attorneys for Defendant
GT'S LIVING FOODS, LLC

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 350 South Grand Avenue, 27th Floor, Los Angeles, CA 90071.

On May 28, 2025, I served the document described as "**DEFENDANT GT'S LIVING FOODS, LLC'S REPLY MEMORANDUM IN SUPPORT OF DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**" upon the interested parties in this action addressed as follows:

| | |
|---|---|
| Wendy Miele<br>Camrie Ventry<br>TAULER SMITH LLP<br>626 Wilshire Boulevard, Suite 550<br>Los Angeles, California 90017<br>Tel: (213) 927-9270<br>Email: wmiele@taulersmith.com<br>cventry@taulersmith.com | Attorney for Plaintiff MATT SORENSEN |

_X_ (VIA U.S. MAIL) I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

___ (VIA PERSONAL SERVICE) I caused the above-named documents to be served on all other parties to this action by requesting that a messenger from GLOBAL NETWORK LEGAL SUPPORT deliver true copies of the above-named documents enclosed in sealed envelopes.

REPLY ISO DEMURRER TO FAC

18

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

| | | |
|---|---|---|
| 1 | _X_ | (VIA EMAIL) By forwarding a portable document file to the electronic mail address(es) below from electronic mail address linapearmain@dwt.com, at 27th Floor, 350 South Grand Avenue, Los Angeles, CA 90071. |
| 4 | ___ | (VIA OVERNIGHT DELIVERY) by placing a true copy or original in a separate envelope for each addressee named above, with the name and address of the person served shown above on the envelope, sealing the envelope and placing it for collection and delivery by FEDERAL EXPRESS with delivery fees paid or provided for in accordance with ordinary business practices. |

Executed on May 28, 2025, Los Angeles, California.

_X_ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
LINA PEARMAIN

REPLY ISO DEMURRER TO FAC    19

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899