Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>WALMART INC.,<br><br>*Defendant*. | Case No. 2:24-cv-08211-RGK-MAR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY**<br><br>Date: November 3, 2025<br>Time: 9:00 a.m.<br>Dept.: Courtroom 850<br><br>Assigned to the Hon. R. Gary Klausner<br><br>Complaint filed: September 24, 2024 |

**Table of Contents**

I. Introduction. ...................................................................................................... 1

II. Walmart has not proved bad faith, a necessary prerequisite for sanctions. .......... 2

    A. The pleading error was a mistake, not bad faith. ....................................... 3

    B. There is no evidence indicating bad faith. ................................................. 4

    C. There was no reason for Plaintiff to intentionally disguise an online purchase as in-store when she could have just alleged an in-store purchase. ............................................................................................... 7

    D. Plaintiff disclosed the online purchase as soon as Walmart asked about it. ..................................................................................................... 8

III. Walmart has not shown that the pleading error unreasonably and vexatiously multiplied proceedings. ................................................................. 9

    A. Section 1927 does not apply to initial pleadings. ...................................... 9

    B. If counsel had not made the oversight, the same proceedings would have occurred and Walmart would likely be worse off (not better off). .................................................................................................... 10

IV. If the Court awards sanctions, they should be directed only at counsel, not Ms. Golikov. .................................................................................................. 11

V. Conclusion. ................................................................................................... 12

1 **Table of Authorities**

2 **Cases**

3 *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,
4    824 F.3d 858 (9th Cir. 2016) ................................................................................. 10

5 *Doyle v. Ill. Cent. R.R.*,
6    2009 U.S. Dist. LEXIS 8917 (E.D. Cal. Jan. 29, 2009) ............................................ 11

7 *F.T.C. v. Alaska Land Leasing, Inc.*,
8    799 F.2d 507 (9th Cir. 1986) .................................................................................. 11

9 *Fitzgerald v. Mercedes Benz U.S.*,
10    2021 U.S. Dist. LEXIS 171504 (C.D. Cal. Apr. 5, 2021) ...................................... 2, 4

11 *Hawthorne Hangar Operations, L.P. v. Hawthorne Airport*,
12    2021 U.S. Dist. LEXIS 177947 (C.D. Cal. July 8, 2021) .......................................... 4

13 *In re Keegan Mgmt. Co., Sec. Litig.*,
14    78 F.3d 431 (9th Cir. 1996) ................................................................................... 2, 9

15 *Johnson v. Walmart Inc.*,
16    57 F.4th 677 (9th Cir. 2023) ...................................................................................... 7

17 *Primus Auto. Fin. Servs. v. Batarse*,
18    115 F.3d 644 (9th Cir. 1997) ..................................................................................... 2

19 *Schwarz v. Meinberg*,
20    2016 U.S. Dist. LEXIS 110247 (C.D. Cal. Aug. 10, 2016) ....................................... 4

21 *Whelan v. BDR Thermea*,
22    2011 U.S. Dist. LEXIS 143129 (N.D. Cal. Dec. 13, 2011) ....................................... 4

23 *Wilkins v. Barber*,
24    2021 U.S. Dist. LEXIS 207802 (E.D. Cal. Oct. 27, 2021) ........................................ 4

25 *Yagman v. Republic Ins.*,
26    987 F.2d 622 (9th Cir. 1993) ................................................................................ 2, 4

27 *Zaldivar v. City of L.A.*,
28    780 F.2d 823 (9th Cir. 1986) ..................................................................................... 9

*Zambrano v. Tustin*,
   885 F.2d 1473 (9th Cir. 1989)..........................................................................2, 4

**Statutes**

28 U.S.C. § 1927.................................................................................................9, 10

**Rules**

Fed. R. Civ. P. § 15(a)(2)..........................................................................................10

## I. Introduction.

Sanctions are an extraordinary remedy. A court cannot impose them unless it is convinced that counsel acted in bad faith. Walmart seeks over half a million dollars in sanctions for a pleading error. But that error was a mistake, not bad faith.

The pleading error was alleging that on November 14, 2021, Ms. Golikov purchased avocado oil from a Walmart store. It was true that she purchased the oil from Walmart stores (many times during the class period). But the alleged date was for an online purchase (not an in-store purchase). This error happened because a staff member inserted that particular date, and Ms. Cho—the attorney drafting and reviewing the complaint—did not double-check that the purchase on this date was an in-store purchase. It should have been checked. But that was a mistake, not bad faith.

Walmart has no evidence suggesting bad faith. And its accusations that this was a scheme to avoid arbitration do not make sense. It is undisputed that Ms. Golikov made numerous in-store purchases of avocado oil from Walmart's stores during the class period. And under controlling Ninth Circuit precedent, those in-store purchases are not subject to the arbitration provision in Walmart's online Terms of Use. So if the complaint had accurately identified in-store purchases, as intended, the case would have proceeded through the motion to dismiss and class certification all the same. In fact, Walmart would likely be worse off (not better off) because it would still be facing a certified class action.

Plus, it was Plaintiff herself who disclosed the online purchase as soon as Walmart asked about it. Why would she or her counsel intentionally try to hide the online purchase in the complaint but promptly disclose it as soon as Walmart asked? That does not make sense. And if Walmart had simply pulled Plaintiff's purchase records from the information in the complaint, Walmart itself would have discovered the mistake right away. None of this is consistent with an intentional scheme to hide the online purchase. All of this is consistent with an unintentional mistake.

To be sure, mistakes have consequences. Because of the mistake, the class was decertified and Plaintiff compelled to arbitration. If the complaint had accurately identified an in-store purchase, the outcome may have been different. But mistakes—even serious ones—do not justify severe sanctions that require a showing of bad faith.

## II. Walmart has not proved bad faith, a necessary prerequisite for sanctions.

Sanctions are "an extraordinary remedy, one to be exercised with extreme caution." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996) (quotation omitted). To seek sanctions, Walmart must prove that Plaintiff and her counsel acted in bad faith in alleging that Plaintiff's purchase was in-store. *Id.* at 436 ("[S]ection 1927 sanctions must be supported by a finding of subjective bad faith.") (quotation omitted); *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993) ("Courts may not invoke [inherent powers to sanction] without a specific finding of bad faith.") (quotation omitted). This requirement of bad faith is "especially critical" because Walmart seeks "fee-shifting." *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997).

Bad faith is a "high threshold." *Id.* at 649. "Attorneys should not be disciplined by financial reprisal for conduct attributable to mistake, inadvertence or error of judgment." *Zambrano v. Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989). Even seriously careless mischaracterizations are insufficient to impose sanctions. *See, e.g.*, *Yagman*, 987 F.2d at 628-29 (reversing sanctions where there was "no indication in the record before us that Yagman acted in bad faith or intended to mislead the court by his careless characterization of the petition"); *Fitzgerald v. Mercedes Benz U.S.*, 2021 U.S. Dist. LEXIS 171504, at *16 (C.D. Cal. Apr. 5, 2021) (refusing to impose sanctions even for the "serious mistake" of "issuing backdated proofs of service," where this was "likely a result of carelessness or a busy schedule"). Here, Walmart has not met the high threshold of bad faith.

**A.     The pleading error was a mistake, not bad faith.**

It is undisputed that Ms. Golikov made numerous in-store purchases of avocado oil from Walmart stores during the class period. Dkt. 69-2 (Golikov Decl.) ¶ 2; Harper Decl., Ex. B (interrogatory responses) at 2. Around the time Plaintiff's counsel was preparing her complaint, it was investigating and filing multiple avocado-oil class actions. Cho Decl. ¶ 2. Ms. Cho prepared the complaint with assistance from staff. *Id.* ¶ 4. A staff member filled in the November 14, 2021, date for the alleged in-store purchase. *Id.* ¶ 4. That particular date was incorrect: it was an online purchase, rather than an in-store purchase. *Id.* ¶ 4; Dkt. 69-2 (Golikov Decl.) ¶ 2; Harper Decl., Ex. B (interrogatory responses) at 2.

Ms. Cho was aware that Ms. Golikov had made in-store purchases during the class period. Cho Decl. ¶ 4. As a result, when she reviewed the complaint, the sentence identifying an in-store purchase—with the November 14, 2021 date—did not jump out as potentially inaccurate. *Id.* ¶ 4. So Ms. Cho did not double-check to make sure that the purchase on this date was in-store, and thus did not catch this mistake. *Id.* ¶ 4. A careful review should have caught the error, but this was not bad faith.

Plaintiff filed an amended complaint three months later, to address some issues raised in Walmart's motion to dismiss. Dkt. 31. Mr. Lyon, who was not involved in preparing the initial complaint, oversaw preparation of the amendments. Lyon Decl. ¶ 3. Because none of the amendments had anything to do with the date or location of Ms. Golikov's purchase, Mr. Lyon had no reason to second-guess those allegations. *Id.* ¶ 3. Mr. Lyon was focused on making sure that the amendments were accurate and addressed the issues raised in the motion to dismiss, not on double-checking the allegations already in the complaint. *Id.* ¶ 3. So, although Mr. Lyon was diligent in ensuring that the amendments were accurate, he did not catch the mistaken allegation from the initial complaint. *Id.* ¶ 3.

Plaintiff's counsel did not realize that the complaint contained this error until the April 24, 2025 meet-and-confer before Walmart's motion to compel arbitration, when

1  Walmart brought it up. *Id.* ¶ 4.  Before that, though, Plaintiff truthfully stated in
2  discovery that most of her purchases were in-store, but that she made some online
3  purchases, including on November 14, 2021.  Harper Decl., Ex. B at 2.  And when
4  Defendant moved to compel arbitration, Plaintiff relied on her in-store purchases (as
5  was always intended) rather than the online purchase made on November 14, 2021.
6  Dkt. 69 at 1-4.
7        As these facts show, the mistake in the complaint resulted from an advertent
8  oversight—not bad faith as Walmart contends. *See, e.g.*, *Whelan v. BDR Thermea*,
9  2011 U.S. Dist. LEXIS 143129, at *20 (N.D. Cal. Dec. 13, 2011) (finding "no reason
10 to disbelieve that Plaintiff's counsel made an innocent mistake" where "counsel has
11 filed a declaration" explaining the mistake).  This "inadvertence" and "mistake" is no
12 basis for sanctions.  *Zambrano*, 885 F.2d at 1480; *see, e.g.*, *Yagman*, 987 F.2d at 628-
13 29; *Fitzgerald*, 2021 U.S. Dist. LEXIS 171504, at *16.

14       **B.**     **There is no evidence indicating bad faith.**

15       A motion for sanctions must be supported by actual evidence showing bad faith;
16 conjecture is insufficient.  *See, e.g.*, *Hawthorne Hangar Operations, L.P. v.*
17 *Hawthorne Airport*, 2021 U.S. Dist. LEXIS 177947, at *11 (C.D. Cal. July 8, 2021)
18 (denying motion for sanctions where "the record is devoid of evidence of subjective
19 bad faith"); *Schwarz v. Meinberg*, 2016 U.S. Dist. LEXIS 110247, at *9 (C.D. Cal.
20 Aug. 10, 2016) (denying motion for sanctions where the moving party had "not
21 provided any evidence, other than mere conjecture," that affirmative defenses "were
22 filed for an improper purpose, such as harassment, or were otherwise filed in bad
23 faith"); *Wilkins v. Barber*, 2021 U.S. Dist. LEXIS 207802, at *3-4 (E.D. Cal. Oct. 27,
24 2021) (denying motion for sanctions where the moving party "submit[ted] nothing
25 other than his conjecture and speculation that counsel [acted] in bad faith or for an
26 improper purpose").
27       Here, Walmart asserts that "there is little question that Ms. Golikov and her
28 counsel acted in bad faith," but provides no evidence proving this accusation.  Mot. 11.

1  Walmart points to an invoice for the online purchase printed five days before the initial
2  complaint was filed. Mot. 12. But this does not show bad faith. And as explained
3  above, the online purchase was identified as an in-store purchase due to a mistake (not
4  bad faith).
5      Walmart asserts that Plaintiff's counsel "cannot credibly claim this is an
6  oversight" because their firm's website says the firm has excellent, diligent attorneys.
7  Mot. 12-13. This does not meet the high threshold required for a finding of subjective
8  bad faith. If it did, then every lawyer at a firm with a website would be subject to
9  sanctions for any inadvertent oversight. Lawyers can aspire to excellence and still
10 make mistakes.
11     Finally, Walmart asserts that Ms. Golikov and her counsel "hid" the pleading
12 error because "Ms. Golikov did not properly meet and confer in advance of her motion
13 for class certification" and did not "appear[] for any noticed deposition." Mot. 13.
14 The Court has already considered and rejected these arguments. *See* Dkt. 62 at 7-8.
15     As to the depositions, the Court already observed that "Defendant appears to
16 grossly misrepresent the facts" regarding its January deposition notice. *Id.* at 7.
17 Walmart "gave only three business days' notice of Plaintiff's deposition" and "agreed
18 that Plaintiff was not obligated to appear, writing: 'We absolutely understand and
19 appreciate the objections. We will work with [counsel] to try to get a more appropriate
20 schedule.'" *Id.*
21     Walmart's inaccurate representations continue. To begin, Walmart asserts that
22 Ms. Golikov's depositions were "[n]oticed" on "January 10, March 28, and May 23."
23 Mot. 7; Harper Decl. ¶ 10.a. But those are the dates the deposition notices were
24 served, not the dates on which the depositions were noticed. The depositions were
25 noticed for January 15, April 17, and June 20, respectively. Lyon Decl. ¶ 5, Exs. 2, 3,
26 and 5. As described above, Walmart conceded that Plaintiff's objections to the first
27 notice were valid. *Id.* ¶ 5. The second time, Plaintiff offered four alternative dates for
28 deposition, and Walmart decided not to proceed. *Id.* ¶ 5, Ex. 4 (stating that Ms.

Opposition to Motion for Sanctions     5     Case No. 2:24-cv-08211-RGK-MAR

1  Golikov is "available April 25, 28, 29, or 30").  And the third time, the deposition was
2  taken off the calendar because the actual notice date—June 20—was after the Court
3  granted Walmart's motion to compel arbitration and stayed all proceedings on June 10.
4  *Id.* ¶ 5; Dkt. 81.

5　　　Walmart also inaccurately describes the facts surrounding the deposition notices
6  of Mr. Lyon and two experts.  *See* Mot. 7-8, 13; Harper Decl. ¶ 10.d, f.  After Mr.
7  Lyon repeatedly informed Walmart that he would move to quash his deposition if
8  Walmart intended to proceed, Walmart informed him that it did not intend to pursue
9  his deposition.  Lyon Decl. ¶ 6, Ex. 6 (April 25, 2025, email) ("To confirm our call
10 yesterday, my understanding is that you do not intend to pursue my deposition at this
11 time and there is no need for me to file a motion to quash.").  As for the experts, "the
12 parties agreed to revisit [these depositions] after the class certification Order was
13 entered," and Walmart ultimately decided not to pursue these depositions.  *Id.* ¶ 6, Ex.
14 6.  In any event, these depositions would have no bearing on the date or location of
15 Ms. Golikov's purchase.

16　　　The Court also already rejected Walmart's contention that Ms. Golikov failed to
17 meet and confer in advance of her class-certification motion.  Dkt. 62 at 7-8.  The
18 Court observed that there was "some dispute over the exact timing and substance of
19 the parties' discussions about the Motion," but "even if no meet and confer took place
20 between January 7 and January 9, it does not appear that Defendant was prejudiced as
21 a result" because "Defendant knew from the outset of the case the grounds that
22 Plaintiff would seek class certification, as she stated them in her original Complaint.
23 And Defendant also knew when the Motion would be filed, as it engaged with
24 discussions with Plaintiff about continuing the class certification deadline."  *Id.* at 8
25 (citation omitted).

26　　　Thus, Walmart's accusations that Plaintiff and her counsel hid the error are
27 baseless.  Far from hiding the error, Plaintiff and her counsel did the exact opposite: as
28

Opposition to Motion for Sanctions　　　　　6　　　Case No. 2:24-cv-08211-RGK-MAR

soon as Walmart served discovery asking about Ms. Golikov's purchase, they disclosed the online purchase date.

> **C.  There was no reason for Plaintiff to intentionally disguise an online purchase as in-store when she could have just alleged an in-store purchase.**

Another fatal problem with Walmart's accusations of bad faith is that they do not make sense. Walmart accuses Plaintiff and her counsel of trying to mislead Walmart and the Court by disguising an online purchase as an in-store purchase. But there was no reason for Plaintiff to do that: Plaintiff and her counsel could have just relied on one of Plaintiff's many in-store purchases, which were not subject to arbitration.

Under controlling Ninth Circuit precedent, Walmart's online Terms of Use do not apply to in-store purchases, even if the consumer has also made purchases online. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681-83 (9th Cir. 2023) (rejecting Walmart's attempt to invoke the online arbitration provision for separate, in-store purchases); *see* Dkt. 72 at 8-10 (not disputing this controlling principle of law in reply). The Ninth Circuit also rejected Walmart's argument (made again in this case) that this was an issue of scope delegated to the arbitrator. *Johnson*, 57 F.4th at 681 ("We agree with the district court that Johnson contests the existence, not the scope, of an arbitration agreement that would encompass this dispute."). So Ms. Golikov and her counsel could have just alleged one of her many in-store purchases that was not subject to arbitration. There was no reason to mislead the Court, and Plaintiff and her counsel did not intend to do so.

Walmart contends that Plaintiff made the allegation to "evad[e] arbitration and litigat[e] in her preferred forum," to "evade her class waiver," and to "seek[] extensive discovery, including class discovery, that is not available in individual arbitration." Mot. 15-16. But Plaintiff could have achieved all of this simply by truthfully basing her allegations on one of her in-store purchases, which were not subject to arbitration.

In fact, Plaintiff is worse off (and Walmart better off) due to the pleading error. The Court decertified the class because the complaint inaccurately identified only an online purchase. If the complaint had accurately identified Ms. Golikov's in-store purchases, that may not have happened.

For the same reason, Walmart's contention that Plaintiff was trying to "impos[e] significant and unnecessary costs on Walmart" makes no sense. Mot. 15. If the complaint were accurate and identified the in-store purchases, the same costs would be imposed. There was no reason for Plaintiff to lie about the online purchase to impose costs that would result from truthfully alleging the in-store purchases.

### D. Plaintiff disclosed the online purchase as soon as Walmart asked about it.

Another fact that confirms that Plaintiff did not intend to mislead is that, when Walmart served discovery requests, Plaintiff promptly disclosed that the November 14, 2021, purchase was online. As Walmart points out, there was clear documentation—including in Walmart's own records—showing the November 14, 2021, purchase was online. Mot. 4; *see* Dkt. 66-7 (Sahay Decl.) at ¶ 3. And when Walmart sent interrogatories, Plaintiff truthfully responded that the November 14, 2021, purchase was online. Harper Decl., Ex. B (interrogatory responses) at 2. Plaintiff and her counsel would not intentionally try to mislead the Court about a fact they knew would need to be disclosed—and was disclosed—as soon as Walmart asked about it.

Also, Walmart could have caught the issue immediately after receiving the complaint if it had done a simple search of its records. Walmart was suspicious from the beginning that Plaintiff had purchased online. In its opposition to class certification (months before receiving Plaintiff's interrogatory responses), it stated that "Golikov herself may be subject to the arbitration agreement" through online purchases. Dkt. 44 at 14. Walmart could have confirmed its suspicion simply by searching its records for Ms. Golikov's online account—as it did in connection with its motion to compel arbitration. *See* Dkt. 66-7 (Sahay Decl.) at ¶¶ 2-3. The identifying

information in Ms. Golikov's account includes both her name ("Edie Golikov") and where she lived (in "Tarzana, CA"), both of which the complaint disclosed. Dkt. 1 (Complaint) at ¶ 6; Dkt. 69-2 (Golikov Decl.) at ¶ 3. If Walmart had searched its online accounts for an "Edie Golikov" living in "Tarzana, CA," it would have found her online purchases immediately. Instead, it made no attempt to figure this out until the Court ruled against it on key motions (like class certification).

It does not make sense that Plaintiff would try to hide a fact that Walmart could promptly discover by simply searching its purchase records or serving discovery.

*   *   *

In sum, there is no evidence or persuasive inference of bad faith. It would be an abuse of discretion to conclude that Ms. Golikov and her counsel intentionally shot themselves in the foot and exposed themselves to potential sanctions by intentionally disguising an online purchase as in-store (and then disclosing the in-store receipt as soon as it was requested), when they could have just truthfully alleged one of many in-store purchases.

### III. Walmart has not shown that the pleading error unreasonably and vexatiously multiplied proceedings.

Section 1927 applies only if the bad-faith conduct "unreasonably and vexatiously" "multiplies the proceedings." 28 U.S.C. § 1927. Walmart fails this requirement three different ways.

#### A. Section 1927 does not apply to initial pleadings.

The Ninth Circuit has "expressly held that § 1927 cannot be applied to an initial pleading." *Keegan*, 78 F.3d at 435. Only "the *multiplication* of proceedings is punished, thus placing *initial* pleadings beyond [the section's] reach." *Id.* (quoting *Zaldivar v. City of L.A.*, 780 F.2d 823, 831 (9th Cir. 1986)).

Walmart's request for sanctions is based on an allegation in the initial pleading. The purported bad-faith conduct it identifies is that Plaintiff and her counsel "pleaded" that her November 14, 2021, purchase was in-store and "made the allegations and

representations with an improper purpose." Mot. 11. Under controlling Ninth Circuit precedent, section 1927 does not apply to such conduct.

Although the same allegation appeared in Plaintiff's amended complaint, none of the amendments had anything to do with that allegation. Lyon Decl. ¶ 3, Ex. 1 (redline). So the amended complaint did not "multipl[y] the proceedings" any more than the initial complaint—let alone in bad faith. 28 U.S.C. § 1927.

### B. If counsel had not made the oversight, the same proceedings would have occurred and Walmart would likely be worse off (not better off).

To show that the pleading error multiplied the proceedings, Walmart must show that proceedings occurred that, but for the error, would not have occurred. The proceedings that Walmart points to are (a) moving to dismiss the complaint; (b) opposing class certification; and (c) engaging in discovery. Mot. 5-8, 17.

But if Plaintiff's counsel had caught the mistake—and based the complaint on an in-store purchase as intended—then all these same proceedings would have occurred. The only difference would be that Walmart would likely have been unsuccessful in moving to compel arbitration and decertify the class, as certification would have been based on an accurately pleaded in-store purchase. So if Plaintiff's counsel had caught the mistake, Walmart would likely be worse off than it is now: it would likely be facing a full-blown certified class action, rather than an individual arbitration.

The same is true if (for some reason) Plaintiff had based her complaint upon the November 14, 2021, purchase and alleged that it was an online purchase. If Walmart had responded with a motion to compel arbitration, as it contends it would have, Plaintiff could have simply amended the complaint to rely instead on one of her many in-store purchases during the class period. *See Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016) ("When justice requires, a district court should 'freely give leave' to amend a complaint.") (quoting Fed. R. Civ. P. § 15(a)(2)).

1  And then the litigation would have proceeded exactly as it has, except that the class
2  would still be certified.
3        Thus, Walmart cannot show that the pleading error multiplied proceedings.

4  **IV.  If the Court awards sanctions, they should be directed only at counsel, not**
5        **Ms. Golikov.**

6        As explained above, it would be beyond the Court's discretion to impose
7  sanctions on any party here, because there was no bad faith.  But it would be especially
8  unwarranted to impose sanctions on Ms. Golikov, who is not responsible for her
9  counsel's mistake.
10       Walmart does not move for sanctions against Ms. Golikov under section 1927.
11 *See* Mot. i (moving for section 1927 sanctions only against Ms. Cho and Mr. Lyon).
12 Nor could it, because "[s]ection 1927 does not authorize recovery from a party or an
13 employee, but *only* from an attorney or otherwise admitted representative of a party."
14 *F.T.C. v. Alaska Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986) (quotation
15 omitted).
16       As to the Court's inherent powers, it would be an abuse of discretion to use
17 them to impose sanctions on Ms. Golikov.  When exercising inherent powers, courts
18 are "guided by considerations applicable to sanctions under the Federal Rules of Civil
19 Procedure." *Doyle v. Ill. Cent. R.R.*, 2009 U.S. Dist. LEXIS 8917, at *19-20 (E.D.
20 Cal. Jan. 29, 2009).  These considerations include "[t]he nature and quality of the
21 conduct at issue"; "[a]s between attorney and client, who is responsible for the
22 culpable conduct"; "[w]hether there was a pattern of wrongdoing to require a stiffer
23 sanction"; "[t]he sanctioned party's ability to pay"; "[w]hether the wrongdoing
24 actually prejudiced the wrongdoer's opponent or hindered the administration of
25 justice"; and "[t]he existence of mitigating factors." *Id.* at *20.
26       Here, each of these factors weigh strongly against imposing sanctions on Ms.
27 Golikov.  The nature of the conduct was in drafting a complaint—something handled
28 by attorneys, not clients.  By the same token, it was counsel's responsibility to catch

inaccuracies in the complaint, not Ms. Golikov's. There was no pattern of wrongdoing (by anyone). The amount Walmart seeks (more than half a million dollars) would be unreasonable to impose on Ms. Golikov, who merely sought to recover for her purchase of avocado oil. As described above, the mistake did not actually prejudice Walmart in any way; it helped Walmart avoid a full-blown class action. And finally, there are mitigating factors in that Ms. Golikov volunteered to serve as a class representative, responded promptly and truthfully to Walmart's discovery, and trusted counsel to adequately represent her interests and litigate this case on her behalf.

Sanctions would be too harsh an outcome for anyone involved, but most of all for Ms. Golikov.

## V. Conclusion.

The drastic sanctions that Walmart requests require a showing of bad faith. A mistake—even a serious mistake—is not enough. Here, the evidence and circumstances all point to a mistake, not bad faith. And the actions the Court has already taken—decertifying the class and compelling Plaintiff to arbitration—are more than sufficient to discourage similar pleading mistakes.

Walmart's motion for sanctions should be denied.

Dated: October 10, 2025

Respectfully submitted,

By: */s/ Richard Lyon*
Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

**CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION**

The undersigned, counsel of record for Plaintiff Edie Golikov, certifies that this brief contains 3,908 words, which complies with the word limit of L.R. 11-6.1 and the Court's Standing Order.

Dated: October 10, 2025                    By: */s/ Richard Lyon*
                                               Richard Lyon