# EXHIBIT 2

No. _____

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

*In re* CHRISTIN CHO and RICHARD LYON,

*Petitioners,*

v.

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT
OF CALIFORNIA,

*Respondent,*

WALMART INC.,

*Real Party in Interest.*

---

On Appeal from the United States District Court
for the Central District of California
The Honorable R. Gary Klausner Presiding
Case No. 2:24-cv-08211-RGK-MAR

---

## PETITION FOR A WRIT OF MANDAMUS

---

Richard Lyon
Christin Cho
(310) 656-7066
rick@dovel.com
christin@dovel.com

*Petitioners*

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...................................2

    A.    Plaintiff made multiple in-store purchases of avocado oil
        from Walmart during the limitations period.........................2

    B.    Due to an inadvertent drafting error, the complaint
        inaccurately identified November 14, 2021, as the date of one
        of Plaintiff's in-store purchases. .............................................2

    C.    Plaintiff disclosed the online purchase as soon as Walmart
        asked about it, and this information was available to
        Walmart beforehand. .............................................................4

    D.    After the mistake came to light, Plaintiff's counsel made
        good-faith arguments that the case could continue based on
        Plaintiff's in-store purchases or a substitute class
        representative. ........................................................................5

    E.    The district court imposed $623,738.70 in sanctions against
        Plaintiff's attorneys for the mistaken allegation...................7

ARGUMENT ....................................................................................7

I.    The district court clearly erred as a matter of law by imposing
    sanctions for an inadvertent pleading error..................................9

    A.    The district court's recklessness finding was a clear abuse of
        discretion. .............................................................................10

        1.    The district court cited no facts indicating that the risk
            of misrepresentation was known or obvious to Ms. Cho
            or Mr. Lyon...................................................................11

        2.    The district court improperly relied on the length of the
            litigation in its recklessness determination. ...............16

3.   The mistaken allegation was immaterial, further undermining the recklessness finding..........................17

B.   The district court's frivolousness finding was a clear abuse of discretion. ...............................................................18

1.   Plaintiff's claims did not turn on the November 14, 2021, purchase being in-store. .....................................19

2.   There was no plausible improper purpose for asserting that the November 14, 2021, purchase was in-store...20

3.   Petitioners' prompt disclosure of the online purchase confirms there was no improper purpose. ...................21

C.   The district court's multiplication-of-proceedings finding was a clear abuse of discretion......................................21

1.   Ms. Cho cannot be sanctioned under section 1927 because she worked only on the initial complaint. .....21

2.   The same proceedings would have occurred if Plaintiff's counsel had caught the mistake. .................................23

D.   The amount of sanctions was a clear abuse of discretion. ...26

II.   Petitioners have no other adequate means for relief from the continuing reputational and professional harm............................28

CONCLUSION ...................................................................................30

ATTESTATION.....................................................................................32

CERTIFICATE OF COMPLIANCE.........................................................33

# TABLE OF AUTHORITIES

## Cases

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents,*
 824 F.3d 858 (9th Cir. 2016).................................................................25

*Blumberg v. Gates,*
 152 F. App'x 652 (9th Cir. 2005) ................................................. 10, 11

*Fink v. Gomez,*
 239 F.3d 989 (9th Cir. 2001).............................................................. 11

*Gertz v. Robert Welch,*
 418 U.S. 323 (1974)............................................................. 12, 13, 15

*Haynes v. City & Cty. of S.F.,*
 688 F.3d 984 (9th Cir. 2012)......................................................... 26, 27

*In re Creech,*
 119 F.4th 1114 (9th Cir. 2024) ........................................................ 8, 9

*In re Girardi,*
 611 F.3d 1027 (9th Cir. 2010)...............11, 12, 13, 14, 17, 18, 19, 20, 25

*In re Keegan Mgmt. Co., Sec. Litig.,*
 78 F.3d 431 (9th Cir. 1996)...................................... 9, 10, 18, 20, 21, 22

*In re Mersho,*
 6 F.4th 891 (9th Cir. 2021) ......................................................... 28, 30

*In re Williams-Sonoma, Inc.,*
 947 F.3d 535 (9th Cir. 2020)......................................................... 8, 28

*In re Yagman,*
 796 F.2d 1165 (9th Cir. 1986)............................................. 21, 22, 27, 28

*Johnson v. Walmart Inc.,*
 57 F.4th 677 (9th Cir. 2023) ................................................. 6, 17, 19, 26

*Kailikole v. Palomar Cmty. Coll. Dist.,*
 2020 U.S. Dist. LEXIS 196645 (S.D. Cal. Oct. 22, 2020)....................23

*Lake v. Gates*,
  130 F.4th 1064 (9th Cir. 2025) ........................................................... 15

*Larin Corp. v. Alltrade, Inc.*,
  2008 U.S. Dist. LEXIS 65193 (C.D. Cal. July 11, 2008) ............... 23, 27

*Makaeff v. Trump Univ., LLC*,
  715 F.3d 254 (9th Cir. 2013) ................................................................ 12

*Morgan v. Cty. of Yolo*,
  277 F. App'x 735 (9th Cir. 2008) ........................................................ 20

*New Alaska Dev. Corp. v. Guetschow*,
  869 F.2d 1298 (9th Cir. 1989) ........................................................ 10, 12

*Primus Auto. Fin. Servs. v. Batarse*,
  115 F.3d 644 (9th Cir. 1997) ......................................... 9, 10, 16, 22, 23

*Stanley v. Woodford*,
  449 F.3d 1060 (9th Cir. 2006) ............................................................ 30

*Stockwell v. City & Cty. of S.F.*,
  749 F.3d 1107 (9th Cir. 2014) ............................................................ 17

*United States v. Associated Convalescent Enters., Inc.*,
  766 F.2d 1342 (9th Cir. 1985) ............................................................ 23

*United States v. Tillman*,
  756 F.3d 1144 (9th Cir. 2014) ...................................... 1, 8, 9, 28, 29, 30

*Zaldivar v. City of L.A.*,
  780 F.2d 823 (9th Cir. 1986) ............................................................. 22

**Statutes**

28 U.S.C. § 1927 ....................................................................... 18, 21, 23

**Rules**

Fed. R. Civ. P. § 15(a)(2) ...................................................................... 25

# INTRODUCTION

Sanctions are an extraordinary remedy, to be used with extreme caution in exceptional cases of attorney misconduct. They are not for punishing accidental mistakes.

The district court imposed $632,738.70 in sanctions against Petitioners for an inadvertent pleading error. The complaint stated that Plaintiff purchased avocado oil from a Walmart store on November 14, 2021. Although Plaintiff had made numerous in-store purchases during the limitations period (each of which would have supported her claims), that particular date was for an online purchase. Plaintiff's attorneys failed to catch that error while reviewing the complaint. That oversight is not a basis for sanctions.

Petitioners face ongoing reputational and professional harm from the erroneous sanctions orders. That is especially so because, as class action attorneys, their careers depend on courts agreeing to appoint them as class counsel. This Court has recognized that mandamus is justified to relieve the ongoing impacts of sanctions orders on attorneys' reputations and professional endeavors. *United States v. Tillman*, 756 F.3d 1144, 1151-53 (9th Cir. 2014) (granting mandamus petition and

vacating sanctions award).  It should issue a writ of mandamus

reversing the sanctions here.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff made multiple in-store purchases of avocado oil from Walmart during the limitations period.

This petition arises from a class action alleging that Walmart

misleads consumers about the purity of its avocado oil.  APP035-054

(initial complaint).  When named Plaintiff Edie Golikov purchased

Walmart's avocado oil, she typically did so in person at brick-and-

mortar Walmart stores.  APP083 (response to interrogatory 1).  She

made in-store purchases multiple times per year during the limitations

period.  APP090 ¶ 2 (Golikov Decl.).  This is undisputed.

### B.    Due to an inadvertent drafting error, the complaint inaccurately identified November 14, 2021, as the date of one of Plaintiff's in-store purchases.

Ms. Cho, a partner at the law firm representing Plaintiff,

prepared the initial complaint in this case.  APP016 ¶ 4 (Cho Decl.

10/10/25).  During the drafting process, a staff member filled in

November 14, 2021, as the date of an in-store purchase of avocado oil.

*Id.*  Although Plaintiff had made many in-store purchases during the

limitations period (any of which would have served as a basis for a non-arbitrable claim), that particular date was the date of an online purchase. APP083 (response to interrogatory 1). A printed purchase receipt reflects an online purchase on that date. APP096 (receipt).

Ms. Cho did not catch this mistake when reviewing the complaint. APP016 ¶ 4 (Cho Decl. 10/10/25). Because she knew that Ms. Golikov had made in-store purchases during the limitations period, the sentence identifying November 14, 2021, as the date of an in-store purchase did not jump out as potentially inaccurate. *Id.* As a result, the initial complaint contained that inadvertent error. *Id.* After filing the initial complaint, Ms. Cho had no involvement with this case until Walmart moved for sanctions against her. APP019 ¶¶ 1-4 (Cho Decl. 12/5/25).

Mr. Lyon, another partner at the law firm representing Plaintiff, joined the case later on. APP026 ¶ 2 (Lyon Decl. 10/10/25). He had no involvement with the case before his appearance, including the pre-filing investigation or preparation of the initial complaint. *Id.* By the time he joined the case, the mistaken allegation was already filed. *Id.*

Mr. Lyon amended the complaint to address an argument in Walmart's motion to dismiss. *Id.* ¶ 3. The amendments had nothing to

3

do with the date or location of Plaintiff's purchase, so Mr. Lyon had no

reason to revisit those allegations.  *Id.*; *see* APP 057-078 (redline

amended complaint).  Instead, his focus was on addressing the issues in

the motion to dismiss and ensuring the amendments were accurate.

APP026 ¶ 3 (Lyon Decl. 10/10/25).  In addition, because he knew that

Plaintiff had made in-store purchases of avocado oil, he had no reason

to think that the sentence identifying November 14, 2021, as the date of

an in-store purchase was inaccurate.  *Id.*  He did not believe arbitration

could even be an issue in the case.  *Id.*

### C.     Plaintiff disclosed the online purchase as soon as Walmart asked about it, and this information was available to Walmart beforehand.

Plaintiff's interrogatory responses—served before anyone raised

an issue about the mistaken allegation—promptly disclosed that the

November 14, 2021, purchase was online.  APP083.  Plaintiff stated

that although she "typically shops in person at Walmart stores,

including when she would purchase Walmart Great Value Avocado Oil,"

she used her "online account on November 14, 2021 to purchase

Walmart Great Value Avocado Oil."  *Id.*  Mr. Lyon was not aware of the

discrepancy between the complaint and the interrogatory response until

Walmart raised it at a meet-and-confer before moving to compel arbitration.  APP026-027 ¶ 4 (Lyon Decl. 10/10/25).

The online-purchase information was also available to Walmart through a simple search of its own records.  *See* APP099 ¶¶ 2-3 (Sahay Decl.) (Walmart eventually did such a search in connection with its motion to compel arbitration).  Walmart was suspicious from the beginning that Plaintiff had made online purchases.  *See* Dkt. 44 at 14 (in opposing class certification, Walmart stated that "Golikov herself may be subject to the arbitration agreement" through online purchases).  If Walmart had searched its records for an Edie Golikov living in Tarzana, CA, it would have found her online purchases immediately.

**D.    After the mistake came to light, Plaintiff's counsel made good-faith arguments that the case could continue based on Plaintiff's in-store purchases or a substitute class representative.**

Plaintiff's counsel first learned of the mistake in the complaint when Walmart raised it in a meet-and-confer before moving to compel arbitration.  APP026-027 ¶ 4 (Lyon Decl. 10/10/25).  After reviewing the complaint and conducting legal research, Mr. Lyon believed Plaintiff had a good-faith basis to oppose the motion to compel arbitration.  *Id.*

Plaintiff's opposition did not dispute that the November 14, 2021,
purchase occurred online, or that Walmart's online arbitration provision
covered that purchase. *See* APP104-115. Instead, it argued that
Plaintiff's numerous in-store purchases were not subject to Walmart's
online arbitration provision. APP108-111. Indeed, this Court has
expressly held that Walmart's online arbitration provision does not
apply to in-store purchases, even if the consumer has also made
purchases online. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681-83 (9th
Cir. 2023). So Mr. Lyon believed in good faith that the case could
continue based on Plaintiff's in-store purchases that were not subject to
arbitration. APP027 ¶ 4 (Lyon Decl. 10/10/25).

Similarly, Plaintiff's opposition to Walmart's motion to decertify
the class did not dispute that the November 14, 2021, online purchase
was subject to arbitration. *See* APP122-129. Instead, it proposed
narrowing the class to in-store purchasers and requested that the Court
allow substitution of a new class representative, or allow Ms. Golikov to
continue as class representative based on her in-store purchases. *Id.*

Although the district court did not accept these arguments, they
were made in good faith. APP027 ¶ 4 (Lyon Decl. 10/10/25).

**E.** **The district court imposed $623,738.70 in sanctions against Plaintiff's attorneys for the mistaken allegation.**

After compelling Plaintiff to arbitration, decertifying the class, and staying the case pending the outcome of arbitration, the district court imposed $623,738.70 in sanctions against Ms. Cho and Mr. Lyon under section 1927. APP002 (order granting motion for sanctions); APP008 (order setting the amount at $623,738.70). It concluded that they "acted in subjective bad faith by recklessly raising a frivolous argument"—i.e., by "fail[ing] to catch the false statement of fact in the initial complaint and the FAC." APP003-004. It concluded that this "failure to verify the initial fact led the Court to resolve unnecessary disputes that would not have occurred had they simply stopped to check whether Plaintiff actually purchased the avocado oil on November 14, 2021." *Id.* at 4. And it awarded attorneys' fees for every minute that Walmart's counsel spent litigating this case between the First Amended Complaint and the decertification order (apart from the motion to compel arbitration, which Walmart did not seek fees for). APP010-013.

## ARGUMENT

This Court weighs five factors (the "*Bauman* factors") in considering whether to exercise mandamus jurisdiction:

7

> (1) [W]hether the petitioner has other adequate means, such
> as a direct appeal, to attain the relief he or she desires; (2)
> whether the petitioner will be damaged or prejudiced in a
> way not correctable on appeal; (3) whether the district
> court's order is clearly erroneous as a matter of law; (4)
> whether the district court's order makes an oft-repeated
> error, or manifests a persistent disregard of the federal
> rules; and (5) whether the district court's order raises new
> and important problems, or legal issues of first impression.

*Tillman*, 756 F.3d at 1150 (quotation omitted). Petitioners "need not

establish all five factors"; the Court "will weigh the factors together

based on the facts of the individual case." *Id.* at 1150-51 (quotation

omitted); *see id.* at 1153 (granting mandamus petition when first,

second, and third factors weighed in favor); *In re Williams-Sonoma,

Inc.*, 947 F.3d 535, 540 (9th Cir. 2020) (same).

The third factor—whether the district court clearly erred as a

matter of law—is the "most important." *In re Creech*, 119 F.4th 1114,

1120 (9th Cir. 2024) (quotation omitted). The presence of this factor

alone can be a "sufficient condition for granting the writ." *Id.* at 1121.

Here, the district court clearly erred as a matter of law by imposing

$623,738.70 in sanctions for an inadvertent pleading mistake. The

basis for sanctions—and the amount—contain multiple errors of law

and clear abuses of discretion. So the third factor is satisfied.

And as a result of the erroneous sanctions order, Ms. Cho and Mr. Lyon face ongoing, unwarranted harm to their reputations and careers. They have no adequate means for relief from this ongoing harm other than mandamus. So the first and second factors are satisfied too.

## I.    The district court clearly erred as a matter of law by imposing sanctions for an inadvertent pleading error.

The third *Bauman* factor is satisfied if this Court has "a firm conviction that the district court misinterpreted the law or committed a clear abuse of discretion." *Creech*, 119 F.4th at 1121 (cleaned up). "A clear abuse of discretion is one in which the error is clear to all." *Id.* (quotations omitted). This Court has "found the factor satisfied with respect to discretionary decisions in multiple cases"—including cases involving sanctions. *Id.*; *see, e.g.*, *Tillman*, 756 F.3d at 1151-53.

Sanctions are "an extraordinary remedy, one to be exercised with extreme caution." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996) (quotation omitted). They must be "reserved for the rare and exceptional case." *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (quotation omitted).

The district court imposed sanctions under section 1927, which requires "subjective bad faith," i.e., that an attorney "knowingly or

9

recklessly raises a frivolous argument or argues a meritorious claim for
the purpose of harassing an opponent." *New Alaska Dev. Corp. v.
Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989) (quotation omitted).  It
also requires the "multipli[cation of] proceedings," i.e., "unnecessary
filings and tactics once a lawsuit has begun." *Keegan*, 78 F.3d at 435.

These requirements apply to each "attorney's individual conduct."
*Primus*, 115 F.3d at 650.  "[A]ny sanctions imposed against [an
attorney] should be based solely on his own improper conduct without
considering the conduct of the parties or any other attorney." *Id.*
(quotation omitted); *see Blumberg v. Gates*, 152 F. App'x 652, 654 (9th
Cir. 2005) ("[T]he district court is required to make specific factual
findings that the individual attorney himself was acting maliciously,
vexatiously or in bad faith.").

Here, the sanctions imposed against Ms. Cho and Mr. Lyon were
clearly erroneous, for multiple reasons.

## A.    The district court's recklessness finding was a clear abuse of discretion.

Section 1927 requires, at a minimum, recklessness.  *New Alaska*,
869 F.2d at 1306.  "[C]arelessly, negligently, or unreasonably
multiplying the proceedings is not enough." *In re Girardi*, 611 F.3d

10

1027, 1061 (9th Cir. 2010); *see, e.g.*, *Fink v. Gomez*, 239 F.3d 989, 993
(9th Cir. 2001) ("ignorance or negligence" insufficient); *Blumberg*, 152 F.
App'x at 654 ("[N]egligence—even gross negligence—is not enough.").
So imposing sanctions under section 1927 for anything less than
recklessness—even gross negligence—is a clear error of law.

> **1.    The district court cited no facts indicating that the
> risk of misrepresentation was known or obvious to
> Ms. Cho or Mr. Lyon.**

In this context, recklessness is "a departure from ordinary
standards of care that disregards a known or obvious risk of material
misrepresentation." *Girardi*, 611 F.3d at 1038 n.4.  Recklessness as to
the truth of statements therefore requires more than a mere failure to
verify those statements.  It requires disregard of a "known or obvious"
risk that the statements are false.  *Id.*; *see Recklessly*, Black's Law
Dictionary (12th ed. 2024) ("In such a manner that the actor *knew* that
there was a substantial and unjustifiable risk that the social harm the
law was designed to prevent *would occur* and ignored this risk when
engaging in the prohibited conduct.") (emphasis added).  Failing to
verify statements may sometimes be careless or negligent.  But it is not
reckless unless the actor disregards a known or obvious risk of falsity.

11

Accordingly, "mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth." *Gertz v. Robert Welch*, 418 U.S. 323, 332 (1974). Rather, the actor "must act with a high degree of awareness of probable falsity." *Id.* (cleaned up); *see Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 270-71 (9th Cir. 2013) (applying this standard for recklessness).[1]

The district court ignored the requirement of a known or obvious risk, and found recklessness based on a mere failure to verify: "Counsel's failure to verify a material fact constitutes recklessness under § 1927. Ms. Cho and Mr. Lyon had an obligation to independently verify asserted facts in pleadings to ensure they were not frivolous." APP004. That is precisely what this Court and the Supreme Court have said is insufficient. *New Alaska*, 869 F.2d at 1306; *Girardi*, 611 F.3d at 1038 n.4, 1061; *Gertz*, 418 U.S. at 332; *Makaeff*, 715 F.3d at 270-71. The district court did not identify any facts indicating that the risk of falsity was known or obvious to Ms. Cho or Mr. Lyon. APP004-

---

[1] *Gertz* and *Makaeff* dealt with defamation of public figures, which—like section 1927—requires recklessness as to the truth of a statement. There is no reason that recklessness should require anything less to impose the extraordinary remedy of sanctions.

005.  And the undisputed evidence shows it was not.

Start with Ms. Cho.  Ms. Cho prepared the initial complaint with assistance from a staff member, who filled in the November 14, 2021, date as the date of an in-store purchase.  APP016 ¶ 4.  There was no reason for Ms. Cho to think that the staff member would fill in the date incorrectly, much less for her to have a "high degree of awareness of probable falsity."  *Gertz*, 418 U.S. at 332.  To the contrary, Ms. Cho knew that Plaintiff had made many in-store purchases during the limitations period, so when she reviewed the complaint the sentence identifying November 14, 2021, as an in-store purchase date did not jump out to her as potentially inaccurate.  APP016 ¶¶ 3-4.  At most, Ms. Cho's failure to double-check the date in the complaint was careless or negligent—not reckless.

The district court relied on *Girardi* in finding that Ms. Cho acted recklessly, but the facts of *Girardi* are incomparable.  *Girardi* involved misrepresentations about the parties named on a foreign judgment following a years-long saga with multiple "red flags," including a motion by the other side and an order by a district judge both expressly pointing out the problem.  *Girardi*, 611 F.3d at 1036-37.  There, the

13

culpable lawyers' "states of mind clearly evolved over time" and,

following repeated disregard of red flags, at "some point" became

"willful blindness" constituting recklessness.  *Id.*; *see id.* at 1062 (citing

Girardi's "willful ignorance" following multiple red flags).  Ms. Cho, by

contrast, did not ignore multiple red flags over two years that expressly

pointed out the error to her.  She was not willfully blind.  Instead, she

merely missed the mistake in her review of the complaint.

The recklessness finding for Mr. Lyon is even less supported.  Mr.

Lyon had no involvement with this case leading up to the mistaken

allegation.  APP026 ¶ 2.  Instead, he joined the case later on and

amended the complaint to address an argument raised in Walmart's

motion to dismiss.  *Id.* ¶ 3.  That argument—and the corresponding

amendments—had nothing to do with the date or location of Plaintiff's

purchase.  *Id.*; *see* APP 057-078.  So Mr. Lyon had no reason to revisit

those allegations, especially because he knew that Plaintiff had made

in-store purchases during the limitations period.  APP026-027 ¶¶ 3-4.

Mr. Lyon knew that Ms. Cho, whom he had worked with for over fifteen

years and believed to be an excellent attorney, had overseen the initial

complaint.  APP026 ¶ 2.  He had no reason to think her complaint

14

contained material misrepresentations—much less to have a "high degree of awareness of probable falsity." *Gertz*, 418 U.S. at 332.

The district court relied on *Lake v. Gates*, 130 F.4th 1064 (9th Cir. 2025), in finding Mr. Lyon reckless because "the existence of some supported allegations does not insulate Lead Attorneys from sanctions based on other, unsupported allegations in the FAC." *Id.* at 1068. That is not the issue here. In *Gates*, the attorneys argued that they should not receive Rule 11 sanctions for baseless allegations because other allegations were supported. *Id.* Mr. Lyon is not arguing that he should avoid sanctions for the inaccurate allegation because the amended complaint also contained true allegations. Rather, Mr. Lyon should not be sanctioned because he did not act recklessly with regard to the inaccurate allegation.

In sum, the district court clearly abused its discretion by concluding that Ms. Cho and Mr. Lyon acted recklessly without any facts showing that the risk of misrepresentation was known or obvious to them. It found recklessness based solely on a failure to verify, with no indication that this failure was anything more than—at most— carelessness or negligence.

15

In addition, a finding of recklessness on these facts creates an

unworkable standard.  Under the district court's reasoning, there is a

known or obvious risk of material misrepresentation whenever an

attorney reviews material prepared by a colleague.  That is clearly

incorrect.  And it would make the practice of law virtually impossible.

Attorneys must be able to trust their colleagues without the threat of

sanctions if they do not personally and independently verify every

aspect of their colleagues' work.  *See Primus*, 115 F.3d at 650

("Sanctions not only may have a severe effect on the individual attorney

sanctioned but also may deter future parties from pursuing colorable

claims.").

### 2. The district court improperly relied on the length of the litigation in its recklessness determination.

The district court compounded its error by relying on the length of

the litigation in its determination that Ms. Cho and Mr. Lyon acted

recklessly.  It distinguished cases holding that carelessness or

inadvertence are insufficient for sanctions because those "situations did

not result in months of unnecessary litigation because of a false factual

allegation."  APP004.  But whether the mistake resulted in lengthier

litigation is a separate question from—and irrelevant to—whether it

16

arose from recklessness. Recklessness is about the mental state of the attorney, not the length of the litigation. Multiplication of litigation is a separate requirement in section 1927. So using the purported multiplication of litigation to support a recklessness finding was another clear abuse of discretion. *Stockwell v. City & Cty. of S.F.*, 749 F.3d 1107, 1113 (9th Cir. 2014) ("[R]eliance on an improper factor … qualifies as an abuse of discretion.") (quotation omitted).

### 3. The mistaken allegation was immaterial, further undermining the recklessness finding.

For recklessness, in addition to being "known or obvious," the risk must be of a "material misrepresentation." *Girardi*, 611 F.3d at 1038 n.4. An allegation is "material" if it "is essential to the claim, charge, or defense." *Material allegation*, Black's Law Dictionary (12th ed. 2024).

Here, what mattered for Plaintiff's claims is that she made in-store purchases of avocado oil from Walmart during the limitations period. Under Ninth Circuit law, those in-store purchases were not subject to Walmart's online arbitration provision. *Johnson*, 57 F.4th at 681-83. The dates of those in-store purchases were immaterial, so long as they occurred during the limitations period (which they did).

The mistake in the complaint—that Plaintiff made an in-store

17

purchase on November 14, 2021—was therefore immaterial. Because Plaintiff made in-store purchases during the limitations period, she had non-arbitrable claims and could represent the class regardless whether the November 14, 2021, date corresponded to an online or in-store purchase. The November 14, 2021, date was not essential—or even important—to this lawsuit. Thus, the risk that the November 14, 2021, purchase was online was not a risk of a "material misrepresentation." *Girardi*, 611 F.3d at 1038 n.4. Plaintiff could have simply amended the complaint to correct the mistaken date, with no effect on the case.

## B. The district court's frivolousness finding was a clear abuse of discretion.

Recklessness alone is not enough to impose sanctions under section 1927; the filing must also be "frivolous." *Keegan*, 78 F.3d at 436 (a "reckless, not-entirely-frivolous filing" cannot be sanctioned). "[I]n the contexts of § 1927, frivolousness should be understood as referring to legal or factual contentions so weak as to constitute objective evidence of improper purpose." *Girardi*, 611 F.3d at 1062.

The district court found that the "action was frivolous" because "[t]he merit of Plaintiff's action was based on the false fact that Plaintiff purchased the avocado oil from a Walmart store, and not a website, as

otherwise Plaintiff would be compelled to arbitrate her claim." APP003.

This was a clear abuse of discretion, for three reasons.

### 1.   Plaintiff's claims did not turn on the November 14, 2021, purchase being in-store.

Contrary to the district court's reasoning, the merit of the action did not depend on the November 14, 2021, purchase being from a Walmart store. It is undisputed that Plaintiff made multiple in-store purchases during the limitations period. APP083; APP090 ¶ 2. Each of these purchases was sufficient to support Plaintiff's claims and make her an adequate class representative. *See Johnson*, 57 F.4th at 681-83. So Plaintiff's contention that she had non-arbitrable claims against Walmart was accurate—and certainly not "so weak as to constitute objective evidence of improper purpose." *Girardi*, 611 F.3d at 1062.

The district court rejected this argument because, in its view, "Plaintiff's in-store purchases still do not change the fact that the Complaint and the FAC make a claim that Plaintiff purchased a bottle of avocado oil on November 14, 2021 from a Walmart store, when she actually did not do so." APP004. This misses the point. Petitioners acknowledge that the complaint made the inaccurate allegation. But an inaccurate allegation is not enough for sanctions; the filing must have

been frivolous (among other requirements).  *Keegan*, 78 F.3d at 436.

And none of Plaintiff's filings were frivolous, because she had non-

arbitrable claims against Walmart based on her in-store purchases.

> **2.      There was no plausible improper purpose for
> asserting that the November 14, 2021, purchase was
> in-store.**

For a filing to be "frivolous," it must "constitute objective evidence

of improper purpose."  *Girardi*, 611 F.3d at 1062; *see, e.g.*, *Morgan v.*

*Cty. of Yolo*, 277 F. App'x 735, 736 (9th Cir. 2008) (reversing sanctions

under section 1927 where attorney "appears to have had nothing to gain

by advancing frivolous claims").

Here, Petitioners had nothing to gain by inaccurately alleging that

the November 14, 2021, purchase was in-store, because they could have

just relied on one of Plaintiff's many true in-store purchases.  In fact,

the mistake hurt Petitioners (and helped Walmart) because the district

court compelled Plaintiff to arbitration and decertified the class.  If the

complaint had accurately identified an in-store purchase (as intended),

it is likely that Petitioners would remain class counsel in a class action.

It is implausible that Petitioners acted with improper purpose in

shooting themselves in the foot by alleging the date of an arbitrable

online purchase instead of a non-arbitrable in-store purchase.

### 3.    Petitioners' prompt disclosure of the online purchase confirms there was no improper purpose.

As soon as Walmart asked about Plaintiff's purchases in discovery, Plaintiff truthfully stated that while she typically purchases avocado oil in person, the November 14, 2021, purchase was online. APP083.  That behavior is inconsistent with an improper purpose of concealing the online nature of the November 14, 2021, purchase. There would be no reason for Petitioners to hide the online purchase in the complaint, but promptly disclose it in an interrogatory response.

### C.    The district court's multiplication-of-proceedings finding was a clear abuse of discretion.

### 1.    Ms. Cho cannot be sanctioned under section 1927 because she worked only on the initial complaint.

Section 1927 "authorizes sanctions only for the 'multipli[cation of] proceedings.'"  *Keegan*, 78 F.3d at 435 (quoting 28 U.S.C. § 1927).  "It is only possible to multiply or prolong proceedings after the complaint is filed."  *In re Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986).  So section 1927 "applies only to unnecessary filings and tactics once a lawsuit has begun"; it "cannot be applied to an initial pleading."  *Keegan*, 78 F.3d at

21

435; *see Zaldivar v. City of L.A.*, 780 F.2d 823, 831 (9th Cir. 1986).

Ms. Cho's purported error was her "failure to catch the false statement of fact in the initial complaint." APP004.  That conduct cannot be sanctioned under section 1927 because it occurred before the case was filed and related to the initial pleading. *Keegan*, 78 F.3d at 435; *Yagman*, 796 F.2d at 1187; *Zaldivar*, 780 F.2d at 831.

Moreover, the only work that Ms. Cho did on this case was preparing and filing the initial complaint.  APP019 ¶¶ 1-4.  After the initial complaint was filed, other lawyers took over the litigation. *Id.* ¶ 2.  Ms. Cho had no involvement in the case after the initial pleading until Walmart moved for sanctions against her. *Id.* ¶¶ 3-4.  She was not involved in any of the "excessive litigation" that the district court found, which "beg[an] with the FAC and end[ed] with the decertification of the class." APP010; *see* APP019 ¶¶ 3-4.

Thus, the only work that Ms. Cho did was preparing and filing the initial complaint, which cannot be sanctioned under section 1927.  It was a clear abuse of discretion to impose sanctions on her for work that she had no involvement in. *See Primus*, 115 F.3d at 650 (sanctions must "be based solely on [an attorney's] own improper conduct without

22

considering the conduct of the parties or any other attorney") (quotation omitted); *id.* at 649-50 (instructing district court to consider attorney's argument that "he did not exercise control over the general litigation strategy and that the particular arguments he made did not delay the settlement").

## 2. The same proceedings would have occurred if Plaintiff's counsel had caught the mistake.

Section 1927 applies only to conduct that "unreasonably and vexatiously" "multiplies the proceedings." 28 U.S.C. § 1927. If the same proceedings would have occurred absent the vexatious conduct, then section 1927 does not apply. *See United States v. Associated Convalescent Enters., Inc.*, 766 F.2d 1342, 1347-48 (9th Cir. 1985) ("Section 1927 authorizes the taxing of only excess costs incurred because of an attorney's unreasonable conduct …."); *Larin Corp. v. Alltrade, Inc.*, 2008 U.S. Dist. LEXIS 65193, at *13 (C.D. Cal. July 11, 2008) (sanctions unavailable where the defendant "would have eventually needed to defend against Larin's claims" anyway); *Kailikole v. Palomar Cmty. Coll. Dist.*, 2020 U.S. Dist. LEXIS 196645, at *9 (S.D. Cal. Oct. 22, 2020) (sanctions unavailable for "work that would have been performed, regardless").

23

Here, Petitioners' purportedly vexatious conduct was their "failure to verify" that the November 14, 2021, purchase was in-store.  APP005.  The district court reasoned that this conduct multiplied proceedings because it "led the Court to resolve unnecessary disputes that would not have occurred had they simply stopped to check whether Plaintiff actually purchased the avocado oil on November 14, 2021."  *Id.*  These "proceedings" were "(1) … a motion to dismiss the FAC; (2) a motion opposing class certification; and (3) … discovery."  *Id.*

This reasoning is clearly erroneous.  If Plaintiff's counsel had double-checked the allegation and caught the mistake, they would have alleged one of Plaintiff's many true in-store purchases, as intended.  Then, all the same proceedings—a motion to dismiss, class certification, and discovery—would have occurred.  None of these proceedings were "multiplied" by the mistake.  In fact, if Plaintiff's counsel had caught the mistake, Walmart would likely be worse off: it would likely still be facing a certified class action, rather than an individual arbitration.

The same is true if (for some reason) Plaintiff had based the complaint on the November 14, 2021, purchase and accurately alleged that it was online.  If Walmart had responded with a motion to compel

24

arbitration, Plaintiff would have simply amended the complaint to rely instead on one of her many in-store purchases. *See Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016) ("When justice requires, a district court should 'freely give leave' to amend a complaint.") (quoting Fed. R. Civ. P. § 15(a)(2)). And then all the same proceedings would have occurred.

The district court also concluded that Plaintiff's oppositions to Walmart's motions to compel arbitration and decertify the class "unreasonably multiplied proceedings and 'violated § 1927's duty to correct or withdraw litigation positions after it becomes obvious that they are meritless.'" APP005 (quoting *Girardi*, 611 F.3d at 1064).[2] This too was a clear abuse of discretion.

To begin, these filings were not "vexatious" (i.e., done in bad faith) and therefore are not subject to section 1927. After Plaintiff's counsel realized the mistake in the complaint, they acknowledged that the November 14, 2021, online purchase fell within Walmart's online

---

[2] The only proceedings that these oppositions could have "multiplied" were Walmart's replies to them—not all the litigation that had already occurred. Walmart did not seek fees for its motion to compel arbitration, so that leaves only its response and reply for its motion to decertify the class.

arbitration provision and argued that the case could proceed because "Plaintiff separately made in-store purchases that give rise to the asserted claims." APP111. This argument was made in good faith based on controlling law stating that in-store purchases are not subject to Walmart's online arbitration provision. *Johnson*, 57 F.4th at 681-83.

Similarly, in opposing Walmart's motion to decertify the class, Plaintiff's counsel did not rely on the November 14, 2021, purchase. Instead, they argued that the Court should allow substitution of a new class representative, or allow Ms. Golikov to continue serving as class representative based on her in-store purchases. APP124-129. Again, these arguments were made in good faith and supported by authority.

## D.    The amount of sanctions was a clear abuse of discretion.

Under section 1927, "[a] district court may not sanction an attorney for *more* than the excess costs, expenses and fees incurred by the opposing party" as a result of the vexatious conduct. *Haynes v. City & Cty. of S.F.*, 688 F.3d 984, 987 (9th Cir. 2012).

Here, the district court found that "Plaintiff caused excessive litigation, beginning with the FAC and ending with the decertification of the class," and awarded fees for everything in between. APP010;

26

*compare, e.g.*, *Larin*, 2008 U.S. Dist. LEXIS 65193, at *11-17
(conducting a thorough analysis of which time entries were caused by
the misconduct, and awarding only $6,840 of the $538,020.10 sought).
But all the same litigation would have occurred if Plaintiff's counsel had
caught the mistake and alleged one of the in-store purchases. *Supra* §
I.C.2. Imposing $623,738.70 in sanctions for work that would have been
done anyway absent the purportedly vexatious conduct (failing to catch
the mistake) was a clear abuse of discretion.

In addition, while a district court cannot award more than the
expenses spent on unnecessary litigation, it can award less. *Haynes*,
688 F.3d at 987-88. Failing to adequately consider whether to reduce
the award is an abuse of discretion. *See, e.g.*, *Yagman*, 796 F.2d at 1185
(reversing sanctions award of $250,000 where the district court "fail[ed]
to consider [the attorney's] ability to pay such an immense sum").

Here, the district court gave only nominal consideration—in a
footnote—of its discretion to reduce the award. APP012 n.2. It refused
to do so because "Plaintiff offers no evidence in support of their
contention that they are unable to pay." *Id.* But inability to pay is not
the only reason to reduce sanctions awards. *Haynes*, 688 F.3d at 988

(amount may be reduced for inability to pay "among other reasons").

The district court should have considered reducing the amount because

$623,738.70 is a draconian punishment for an unintentional pleading

mistake. *See, e.g.*, *Yagman*, 796 F.2d at 1185 (calling $250,000 "an

immense sum"). Such an award for an unintentional error "would send

shivers through the bar." *Id.*

## II. Petitioners have no other adequate means for relief from the continuing reputational and professional harm.

The first and second *Bauman* factors are related and "usually

considered together." *In re Mersho*, 6 F.4th 891, 902 (9th Cir. 2021).

The first factor is present when the petitioner "has no other adequate

means for relief available to it at this time." *Williams-Sonoma*, 947

F.3d at 540. The second factor is present when there is "continuing

harm … that is not correctable on appeal." *Tillman*, 756 F.3d at 1151.

This Court has recognized that sanctions cause "immediate and

ongoing harm to [an attorney's] professional reputation" that cannot be

adequately corrected on appeal. *Id.* at 1151. Lawyers' "professional

reputations are the essence of their livelihood. Reputations matter—to

the court, to clients, to colleagues, and to the public." *Id.*

Ms. Cho and Mr. Lyon face immediate and continuing

reputational and professional harm because of the erroneous sanctions order.  APP021-023 (Cho Decl. 1/13/26); APP031-033 (Lyon Decl. 1/13/26).  There are already several articles in the public domain about the sanctions award against Ms. Cho and Mr. Lyon.  APP022 ¶ 3; APP032-033 ¶ 5.  And Ms. Cho and Mr. Lyon must report the sanctions to the California bar.  APP023 ¶ 5; APP033 ¶ 7.  Mandamus is necessary to stop this ongoing reputational and professional harm.

The professional harm is especially acute for class action attorneys like Ms. Cho and Mr. Lyon, whose livelihoods depend on courts appointing them class counsel.  *See* APP021 ¶ 1; APP031 ¶ 1. The sanctions order—finding that Ms. Cho and Mr. Lyon misled the court in subjective bad faith—may make judges think twice before appointing them to represent a class or lead a mass tort litigation.  *See Tillman*, 756 F.3d at 1151 ("We agree that the existence of the sanctions order may influence judges to think twice before appointing Grele as counsel, despite his qualifications.").

Ms. Cho and Mr. Lyon have no other adequate means for relief from this ongoing harm.  Appeal under the collateral order doctrine is not available for sanctions under section 1927. *Stanley v. Woodford*,

449 F.3d 1060, 1065 (9th Cir. 2006). "Without the availability of an interlocutory appeal, it is fair to conclude that [Petitioners] do not have an adequate remedy, other than mandamus, from the district court's order." *Mersho*, 6 F.4th at 902 (quotation omitted).

Appeal following a final judgment is also inadequate. The district court stayed this case pending individual arbitration. Dkt. No. 81 at 5. So for direct appeal, Petitioners and Plaintiff would have to pursue an individual arbitration for the price of a bottle of avocado oil, and wait until that arbitration is done to appeal the $623,738.70 sanctions order. That is not only absurd; it would do nothing to remedy the ongoing reputational and professional harm. *See Tillman*, 756 F.3d at 1151.

## CONCLUSION

The inaccurate allegation in the complaint should have been caught. But a mistake—even a serious mistake—is not enough for sanctions. The district court's award of $623,738.70 in sanctions for an inadvertent pleading error flouts the clear limits this Court has placed on section 1927. Petitioners respectfully request that this Court issue a writ of mandamus reversing the erroneous sanctions orders below.

30

Dated: January 16, 2026                  Respectfully submitted,

                                         */s/ Richard Lyon*
                                         Richard Lyon
                                         Christin Cho
                                         (310) 656-7066
                                         rick@dovel.com
                                         christin@dovel.com

                                         *Petitioners*

# ATTESTATION

I, Christin Cho, attest concurrence in the filing of this document.

Dated: January 16, 2026                         */s/ Christin Cho*
                                                Christin Cho

# CERTIFICATE OF COMPLIANCE

This petition for a writ of mandamus complies with the type-volume limitation of Ninth Circuit Rule 21-2(c) because it does not exceed 30 pages, excluding the parts exempted by Federal Rules of Appellate Procedure 21(a)(2)(C) and 32(f).

The petition also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Century Schoolbook font.

Dated: January 16, 2026              */s/ Richard Lyon*
                                     Richard Lyon

No. _____

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

*In re* CHRISTIN CHO and RICHARD LYON,

*Petitioners,*

v.

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT
OF CALIFORNIA,

*Respondent,*

WALMART INC.,

*Real Party in Interest.*

---

On Appeal from the United States District Court
for the Central District of California
The Honorable R. Gary Klausner Presiding
Case No. 2:24-cv-08211-RGK-MAR

---

## APPENDIX

---

Richard Lyon
Christin Cho
(310) 656-7066
rick@dovel.com
christin@dovel.com

*Petitioners*

# APPENDIX TABLE OF CONTENTS

*In re Christin Cho and Richard Lyon v. USDC-CDCA, Walmart Inc.*

| Exhibit | Description | Page |
|---------|-------------|------|
| A | Order Granting Motion for Sanctions | APP001 |
| B | Order Setting Amount of Sanctions | APP007 |
| C | Declaration of Christin Cho (October 10, 2025) | APP014 |
| D | Declaration of Christin Cho (December 5, 2025) | APP017 |
| E | Declaration of Christin Cho (January 13, 2026) | APP020 |
| F | Declaration of Richard Lyon (October 10, 2025) | APP024 |
| G | Declaration of Richard Lyon (January 13, 2026) | APP030 |
| H | Initial Complaint | APP034 |
| I | Redline Amended Complaint | APP055 |
| J | Plaintiff's Response to First Set of Interrogatories | APP079 |

| K | Declaration of Edie Golikov | APP088 |
|---|---|---|
| L | Receipt Showing November 14, 2021 Purchase | APP093 |
| M | Declaration of Kartikay Sahay | APP097 |
| N | Plaintiff's Opposition to Motion to Compel Arbitration | APP103 |
| O | Plaintiff's Opposition to Motion to Decertify the Class | APP116 |

# EXHIBIT A

APP001

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | November 6, 2025 |
|---|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Motion for Sanctions Pursuant to 28 U.S.C. Section 1927 and the Court's Inherent Authority [DE 94]**

## I. INTRODUCTION

On December 30, 2024, Edie Golikov ("Plaintiff") filed a First Amended Class Action Complaint ("FAC") against Walmart Inc. ("Defendant") alleging: (1) violation of California's False Advertising Law; (2) violation of California's Consumer Legal Remedies Act; (3) violation of California's Unfair Competition Law; (4) breach of express warranty; (5) negligent misrepresentation; (6) intentional misrepresentation; and (7) quasi contract. (ECF No. 31.) Plaintiff sought injunctive relief, restitution, damages, and punitive damages.

On February 27, 2025, the Court certified the class. (ECF No. 62.) Also on February 27, 2025, following Defendant's Motion to Dismiss, the Court dismissed the claim for punitive damages. (ECF No. 63.) On June 10, 2025, the Court granted Defendant's Motion to Compel Arbitration and Stay Proceedings. (ECF No. 81.)

Presently before the Court is Defendant's Motion for Sanctions in the form of attorney's fees under 28 U.S.C. § 1927. (ECF No. 94.) For the following reasons, the Court **GRANTS** the Motion for Sanctions in the form of attorney's fees against Plaintiff's attorneys.

## II. FACTUAL BACKGROUND

Defendant's Motion for Sanctions stems from Plaintiff's continued assertion that Plaintiff purchased avocado oil on November 14, 2021 "from a Walmart store." (*See* Compl. ¶ 6, ECF No. 1; FAC ¶ 6, ECF No. 31; Opp. Mot. Dismiss at 11, ECF No. 41.) However, on April 17, 2025, in response to Defendant's first set of interrogatories, Plaintiff revealed that she used a Walmart.com "online account on November 14, 2021 to purchase Walmart Great Value Avocado Oil." (Harper Decl., Ex. B at 2, ECF No. 66-3.) This revelation was made four months after Plaintiff filed the FAC. By using a Walmart.com online account to buy the avocado oil, Plaintiff agreed to Defendant's Privacy Policy and

APP002

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | November 6, 2025 |
|---|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | | |

Terms of Use, which entered Plaintiff into a binding arbitration agreement and waived class action. (*See* Krsulic Decl., Ex. A ¶ 20, ECF No. 66-9.)

### III.   JUDICIAL STANDARD

Under § 1927, an attorney may be required to pay "excess costs, expenses, and attorneys' fees" for "multipl[ying] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Sanctions under § 1927 apply after the initial pleadings to that which prolongs proceedings. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986). "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015). Bad faith is shown by (1) knowingly or recklessly raising a frivolous argument or (2) arguing a meritorious claim for the purpose of harassment. *Id*. An action is frivolous when "the result is obvious or the arguments of error advanced are wholly without merit." *Int'l Union of Petroleum & Industrial Workers v. W. Indus. Maint., Inc.,* 707 F.2d 425, 430 (9th Cir. 1983).

Recklessness can be established when a leading attorney fails to check a subordinate's work and independently verify the facts and law. *See In re Girardi*, 611 F.3d 1027, 1062 (9th Cir. 2010); *see also In re Mitchell*, 901 F.2d 1179, 1188 (3d Cir. 1990) ("The fact that an attorney of record may make an agreement with some other person, attorney or layman, regarding a division of labor, does not diminish the attorney's *personal responsibility* for compliance with the rules of this court, *and liability for discipline if those rules are not complied with*." (emphasis in original)).

### IV.   DISCUSSION

Here, Defendant argues that Plaintiff's attorneys, Ms. Cho and Mr. Lyon, acted in subjective bad faith by recklessly raising a frivolous argument. Defendant also argues that Ms. Cho and Mr. Lyon unreasonably multiplied proceedings. The Court agrees.

#### A.   Frivolousness

First, the action was frivolous because the argument that Plaintiff purchased a bottle of Great Value Refined Avocado Oil "[o]n November 14, 2021 . . . from a Walmart store," was without factual basis. (Compl. ¶ 6; FAC ¶ 6.) Plaintiff actually purchased the avocado oil from Defendant's website. (*See* Harper Decl., Ex. B at 2, ECF No. 66-3.) Plaintiff even had a printed-out receipt five days before filing the Complaint, showing that the avocado oil was delivered from Walmart.com. (Harper Decl., Ex. D, ECF No. 94-5.) The merit of Plaintiff's action was based on the false fact that Plaintiff purchased the avocado oil from a Walmart store, and not a website, as otherwise Plaintiff would be compelled to arbitrate her claim per Walmart's Terms of Use for website orders. Because of this false fact, Plaintiff's claims were advanced through the litigation phase without merit and therefore were frivolous. *See Int'l Union of Petroleum & Industrial Workers v. W. Indus. Maint., Inc.,* 707 F.2d 425, 430 (9th Cir. 1983).

APP003

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | November 6, 2025 |
|---|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | | |

    Plaintiff argues that the claim was not frivolous and not made in bad faith because Plaintiff actually made numerous in-store purchases, and that Plaintiff simply entered the wrong date corresponding to the in-store purchase in the Complaint. (Opp. Motion for Sanctions at 7–8.) The Court disagrees. Plaintiff's in-store purchases still do not change the fact that the Complaint and the FAC make a claim that Plaintiff purchased a bottle of avocado oil on November 14, 2021 from a Walmart store, when she actually did not do so. Accordingly, the action was based on an argument advanced without factual merit.

### B.    Recklessness

    Second, Plaintiff's attorneys acted with recklessness. Ms. Cho stated that she prepared the initial Complaint with assistance from a staff member, a staff member included the November 4, 2021 date in the Complaint, that Ms. Cho "did not realize that the November 14 date corresponded to an online purchase, and not an in-store purchase, and did not double-check that fact," and therefore the complaint was filed "with that inadvertent error." (Cho Decl. ¶ 4, ECF No. 95-1.) Mr. Lyon claims that he only oversaw preparation of the amendments of the FAC and that "[he] never had reason to go back and check the Complaint or Amended Complaint to confirm that her in-store purchases were specifically identified until the April 24, 2025 meet and confer." (Opp. Motion for Sanctions at 3; Lyon Decl. ¶ 4, ECF No. 95-2.)

    Counsel's failure to verify a material fact constitutes recklessness under § 1927. Ms. Cho and Mr. Lyon had an obligation to independently verify asserted facts in pleadings to ensure they were not frivolous. Just because Ms. Cho had a staff member prepare the date of purchase for the complaint does not undermine her responsibility to the Court to ensure the claim's truthfulness. *See In re Girardi*, 611 F.3d at 1062; Fed. R. Civ. P. 11(b). Furthermore, Mr. Lyon's argument that he did not catch the mistake in the FAC because he only oversaw the amendments in the FAC is not persuasive as "the existence of some supported allegations does not insulate Lead Attorneys from sanctions based on other, unsupported allegations in the FAC." *Lake v. Gates*, 130 F.4th 1064, 1068 (9th Cir. 2025).

    Plaintiff argues that Ms. Cho and Mr. Lyon's failure to catch the false statement of fact in the initial complaint and the FAC was due to a mistake, or what Plaintiff claims to be "advertent oversight," and not bad faith. (Opp. Motion for Sanctions at 3–4). In support, Plaintiff cites a variety of cases that deal with incomparable situations. *See, e.g., Whelan v. BDR Thermea*, No. C-11-02146 EDL, 2011 WL 6182329, at *7 (N.D. Cal. Dec. 13, 2011) (excusing counsel's mistake in early-stage litigation for failure to file timely notice and declining to dismiss a claim with prejudice); *Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989) (finding counsel did not act in bad faith by failing to apply for admission to the bar before appearing). These situations did not result in months of unnecessary litigation because of a false factual allegation. In fact, the court in *Whelan* even admits that attorney's fees may be an appropriate award: "there are other disciplinary ways to deal with any willful disregard of the law, such as attorney's fees awards to name just one." *Whelan*, 2011 WL 6182329, at *7.

APP004

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | November 6, 2025 |
|---|---|---|---|---|
| Title | ***Eddie Golikov v. Walmart Inc.*** | | | |

Accordingly, the Court finds that Ms. Cho and Mr. Lyon acted recklessly when they failed to verify a material fact in the litigation.

### C.    Unreasonable and Vexatious Multiplication of Proceedings

Third, due to Plaintiff's failure to correct the fact that Plaintiff did not purchase avocado oil in store, and instead purchased it online, the parties engaged in multiple proceedings that unnecessarily augmented litigation. This false material fact led the parties to (1) litigate a motion to dismiss the FAC; (2) a motion opposing class certification; and (3) engage in discovery. (*See* Mot. to Dismiss, ECF No. 24; Mot. to Oppose Class Certification, ECF No. 44; Harper Decl. at 2, ECF No. 1-1.) This is evidence of "unnecessary filings and tactics once [the] lawsuit has begun." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). Although counsel cannot be sanctioned due to the filing of the complaint alone, Ms. Cho and Mr. Lyon continued to represent to the Court, in proceedings beyond the complaint, that Plaintiff purchased the avocado oil in a Walmart store. *Id.* (*See, e.g.*, Opp. Mot. Dismiss at 11 ("[o]n November 14, 2021, Plaintiff . . . purchased a bottle of Great Value Refined Avocado Oil from a Walmart *store*.") (emphasis added). Simply put, Ms. Cho and Mr. Lyon's failure to verify the initial fact led the Court to resolve unnecessary disputes that would not have occurred had they simply stopped to check whether Plaintiff actually purchased the avocado oil on November 14, 2021.

Furthermore, after it was revealed that Plaintiff purchased the avocado oil on Walmart.com instead of in a Walmart store, rather than correcting the error, Plaintiff continued to advance her litigation position through an Opposition to a Motion to Compel Arbitration (DE No. 69) and an Opposition to a Motion to Decertify the Class (DE No. 86.) This again unreasonably multiplied proceedings and "violated § 1927's duty to correct or withdraw litigation positions after it becomes obvious that they are meritless." *In re Girardi*, 611 F.3d at 1064.

Therefore, Ms. Cho and Mr. Lyon acted in subjective bad faith by recklessly raising a frivolous argument and unreasonably multiplying proceedings. Accordingly, sanctions awarding attorney's fees are appropriate under § 1927.

APP005

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | Date | November 6, 2025 |
|----------|------------------------|------|-------------------|
| Title | ***Eddie Golikov v. Walmart Inc.*** | | |

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Sanctions in the form of attorney's fees against Ms. Cho and Mr. Lyon. Defendant should submit a brief on the reasonability of attorney's fees no later than **ten days** from this Order's entry.


**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer                                                JRE/sh

# EXHIBIT B

closed

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-08211-RGK-MAR | Date | December 19, 2025 |
| Title | *Eddie Golikov v. Walmart Inc.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**     **(IN CHAMBERS) Order Re: Defendant's Supplement to Order on Motion for Sanctions [DE 99]**

## I.     INTRODUCTION

On December 30, 2024, Eddie Golikov ("Plaintiff") filed a First Amended Class Action Complaint ("FAC") against Walmart Inc. ("Defendant") alleging: (1) violation of California's False Advertising Law; (2) violation of California's Consumer Legal Remedies Act; (3) violation of California's Unfair Competition Law; (4) breach of express warranty; (5) negligent misrepresentation; (6) intentional misrepresentation; and (7) quasi contract. (ECF No. 31.) Plaintiff sought injunctive relief, restitution, and actual and punitive damages.

On February 27, 2025, the Court certified the class. (ECF No. 62.) Also on February 27, 2025, following Defendant's Motion to Dismiss, the Court dismissed the claim for punitive damages. (ECF No. 63.) On June 10, 2025, the Court granted Defendant's Motion to Compel Arbitration and Stay Proceedings. (ECF No. 81.) Thereafter, the Court decertified the class on August 12, 2025. (ECF No. 92.) On November 6, 2025, the Court granted Defendant's Motion for Sanctions pursuant to 28 U.S.C. § 1927 in the form of attorney's fees against Plaintiff's attorneys, Ms. Cho and Mr. Lyon. (ECF No. 98.) In the Sanctions Order, the Court ordered the parties to brief the reasonability of attorney's fees. (*Id.*)

Presently before the Court is Defendant's Supplemental Brief on the Reasonability of Attorney's fees. (ECF No. 99.) For the following reasons, the Court **AWARDS** Defendant a total of **$623,738.70** in attorney's fees.

## II.     JUDICIAL STANDARD

Under 28 U.S.C. § 1927, an attorney may be required to pay "excess costs, expenses, and attorneys' fees" for "multipl[ying] the proceedings in any case unreasonably and vexatiously." If sanctions are awarded, § 1927 "authorizes the taxing of only excess costs incurred because of an attorney's unreasonable conduct; it does not authorize imposition of sanctions to reimburse a party for

---

APP008

Case: 26-364, 01/16/2026, DktEntry: 1.1, Page 50 of 180
Case 2:24-cv-08211-RGK-MAR Document 107 Filed 12/09/25 Page 2 of 6 Page ID #:2915

closed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | December 19, 2025 |
|---|---|---|---|---|
| Title | ***Eddie Golikov v. Walmart Inc.*** | | | |

the ordinary costs of trial." *United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1347 (9th Cir. 1985).

After a party shows that they are entitled to attorney's fees, the Court determines a reasonable fee award. In the Ninth Circuit, district courts calculate an award of attorney's fees by calculating the "lodestar." *See Caudle v. Bristow Optical Co. Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000). The "lodestar" amount is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Id.*

III. **DISCUSSION**

A. **Defendant's Estimate of Attorney's Fees is Reasonable**

Pursuant to the Court's Sanctions Order, Defendant is entitled to its reasonable attorney's fees for Plaintiff's multiplication of proceedings. Defendant requests $745,422.75 in attorney's fees, representing 1,009.5 hours total in litigating the case. Defendant was represented by three partners, one counsel, and ten associates. The Court addresses the reasonableness of Defendant's hourly rates and hours expended in turn.

B. **Hourly Rates**

Defendant "bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). Such evidence can include attorney declarations and rate determinations in other cases. *Harlow v. Metro. Life Ins. Co.*, 379 F. Supp. 3d 1046, 1053 (C.D. Cal. 2019). Plaintiff has "the burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted." *Gates*, 987 F.2d at 1397–98.

Plaintiff does not contest that Defendant's hourly rates are reasonable. The partners and counsel who represent Defendant have substantial experience. Jacob Harper is a partner at Davis Wright Tremaine ("DWT") with over sixteen years of experience defending consumer product mislabeling cases. (Harper Decl. ¶ 7, ECF No. 99-1.) James Siegal is a partner at DWT and co-chair of DWT's appellate practice. (*Id.* ¶ 8.) James H. Moon is a partner at DWT and has extensive litigation experience. (*Id.* ¶ 9.) Finally, Heather Canner is a counsel at DWT and has over six years of experience representing retailers in consumer product mislabeling class actions in at least seven states. (*Id.* ¶ 10.)

Courts in this District have regularly awarded partners with comparable experience hourly rates exceeding $800 and associates hourly rates exceeding $600. *See, e.g., Amazon Content Servs. LLC v. DeBarr*, 2025 WL 2553333, at *1 (C.D. Cal. Aug. 8, 2025) (finding rates of $885–$1,090 an hour for partners and a rate of $620–$680 an hour for a fourth-year associate to be "reasonable and in line with

closed

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | December 19, 2025 |
|---|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | | |

the prevailing market rates"); *Providence Publ'ns, LLC v. NBC Universal Media, LLC*, 2025 WL 1766338, at \*4 (C.D. Cal. June 18, 2025) (finding partner rate of $845.75 an hour and associate rate of $663 an hour to be reasonable); *AK Futures LLC v. Smoke Tokes, LLC*, 2022 WL 3574280, at \*1–2 (C.D. Cal. Jan. 13, 2022) (finding rates ranging from $590.63 to $809.38 reasonable for associates). Defendant has further discounted its rates by an additional 10%. (Harper Decl. ¶ 6.) The Court finds Defendant's requested rates in range with previously awarded fees in this District.

### C.    Hours Expended

In litigating this case, Defendant filed a Motion to Dismiss the FAC, an Answer to the FAC, an Opposition to Class Certification, a Rule 23(f) Petition, a Motion to Decertify the Class, and a Motion for Sanctions. In addition, Defendants also engaged in Discovery.

As a preliminary matter, the Court excludes from the hours expended calculation the time associated with filing the Motion for Sanctions and the Supplemental Brief on the reasonability of attorney's fees. In its original Motion for Sanctions, Defendant wrote that it "intends to seek no less than $545,000 in attorney's fees, representing the fees incurred in moving to dismiss the FAC; opposing class certification; preparing a petition for interlocutory review under Rule 23(f); engaging in extensive discovery practice and briefing; and moving to decertify the plaintiff classes." (Mtn. Sanctions at 18.) However, in its Supplemental Brief on the reasonability of fees, Defendant requests an additional $121,368.15 for the costs incurred in moving for sanctions and filing the present Supplemental Brief on attorney's fees.

"If an award of attorneys' fees and costs is appropriate under 28 U.S.C. § 1927, the Court must first determine how much the attorneys' fees and costs are due to 'excessive' litigation." *Larin Corp. v. Alltrade, Inc.*, 2008 WL 2745881, at \*4 (C.D. Cal. July 11, 2008), *aff'd sub nom. Larin Corp. v. Mueller*, 364 F. App'x 380 (9th Cir. 2010). The Court's authority under § 1927 "authorizes an award only for excess costs incurred by the multiplication of the proceedings." *Kailikole v. Palomar Cmty. Coll. Dist.*, 2020 WL 6203097, at \*4 (S.D. Cal. Oct. 22, 2020). The Court previously found that Plaintiff unreasonably multiplied proceedings by continuing to represent a false fact throughout the case. (*See* Sanctions Order.) Plaintiff caused excessive litigation, beginning with the FAC and ending with the decertification of the class. Yet, Defendant's filing of a Motion for Sanctions was not part of Plaintiff's unreasonable multiplication because it was Defendant itself who chose to file this Motion for Sanctions. Although "the costs of obtaining sanctions *may* be included in a sanctions award under § 1927," *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 630 (9th Cir. 2017) (emphasis added), such an award is discretionary. The Court does not view the Motion for Sanctions and the litigation following the motion as part of the Plaintiff's multiplication of the proceedings. Therefore, the Court declines to award Defendant the costs associated with obtaining sanctions.

APP010

closed

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | December 19, 2025 |
|----------|----------------------|---|------|-------------------|
| Title | ***Eddie Golikov v. Walmart Inc.*** | | | |

The Court finds Defendant's 842.8[1] hours spent to be reasonable.

Plaintiff argues that Defendant's time entries are unreasonable because of duplication and overstaffing. Plaintiff also argues that Defendant's time entries are excessive and that the time entries are too vague. In response, Defendant argues that Plaintiff fails to meet her burden to identify which time entries are duplicative, that the time Defendant's attorneys spent was reasonable, and that its time entries are sufficiently detailed.

First, the Court disagrees that Defendant's time entries are duplicative simply because Defendant staffed multiple attorneys on the same task. Especially considering that attorneys on the same case need to communicate with each other, "[o]ne certainly expects some degree of duplication as an inherent part of the [litigation] process." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Although Plaintiff contends that "it is impossible to determine based on the entries why so many hours and people were necessary," (Opp'n Supp. Brief at 4, ECF No. 101), courts in this district have determined it is reasonable to have multiple attorneys perform one task. *See, e.g.*, *DCR Mktg. Inc. v. U.S. All. Grp., Inc.*, 2023 WL 3149277, at *2 (C.D. Cal. Mar. 9, 2023) ("[M]ultiple attorneys working on the same task is not inherently inappropriate."). Furthermore, the Court will not "impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests." *Moreno*, 534 F.3d at 1115. Absent more reasoning from Plaintiff, the Court finds Defendant's decision regarding staffing the case to be appropriate.

Second, Plaintiff argues that the amount of time that Defendant spent on each task was excessive for this case. Defendant spent 76.2 on the motion to dismiss, 10.3 hours in answering the FAC, 147 hours in opposing class certification, 51 hours in drafting the Rule 23(f) Petition, 418.8 hours engaging in discovery, and 139.5 hours in moving to decertify the class. These time records are presumptively correct. *See Ortega v. BMW of N. Am., LLC*, 2019 WL 6792798 at *3 (C.D. Cal. Oct. 24, 2019) ("Verified attorney time records are presumptively correct."). Furthermore, Plaintiff provides no direct support for the claim that Defendant's time spent was excessive, beyond providing its own estimate that "the total should be no more than 130 hours." (Opp'n Supp. Brief Reasonability Atty's Fees at 4.)

The cases that Plaintiff cites in support of her notion that Defendant's time entries are excessive are inapposite to this case. In *Scalia v. County of Kern*, the court found that 70 hours preparing a spoliation motion and reply was "excessive and not reasonable," because counsel had previously briefed those issues and facts. 2023 WL 3124385, at *3 (E.D. Cal. Apr. 27, 2023). In addition, the Court in that case found that spending 2 hours, instead of 4.1 hours, would be more reasonable in preparing a reply,

---

[1] Defendant spent 1,009.5 total hours litigating this case, however, 166.7 of them were a result of moving for sanctions and filing the Supplemental Brief on the reasonability of attorney's fees. (Def.'s Supp. Brief Regarding Fees at 3.) Because the Court declines to award sanctions for the hours associated with obtaining sanctions, the Court finds Defendant's total hours spent to be 842.8 (1,009.5 hours less 166.7 hours).

APP011

Case: 26-364, 01/16/2026, DktEntry: 1.1, Page 53 of 180
Case 2:24-cv-08211-RGK-MAR   Document 107-1   Filed 12/31/25   Page 5 of 54   Page ID
Page #:2692918

closed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08211-RGK-MAR | | Date | December 19, 2025 |
|---|---|---|---|---|
| Title | ***Eddie Golikov v. Walmart Inc.*** | | | |

"because the issues addressed in this pleading were straightforward and not complex." *Id.* Plaintiff does not indicate that the factors present in *Kern* are present here, such as Defendant having previously briefed issues or that the facts or issues here were straightforward. In addition, in *Kailikole v. Palomar Community College District.*, the Court found that ten hours was a reasonable amount of time to spend on a fee application and reply for a case that involved a single anti-SLAPP motion, unlike this case which involved a complex class action and multiple phases of litigation. 2020 WL 6203097, at *4–5 (S.D. Cal. Oct. 22, 2020).

Third, Plaintiff argues that Defendant's time entries are too vague, as they contain generic words like "draft," "work on," and "revise." (Opp'n Supp. Brief at 7.) "[C]ounsel . . . is not required to record in great detail how each minute of his time was expended" in order to support a fee award, as long as counsel "identif[ies] the general subject matter of his time expenditures." *Trs. of Directors Guild of Am.- Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000) (quoting *Hensley v. Eckherhart*, 461 U.S. 424, 437 n.12 (1983)). Here, the billing records are sufficiently detailed to meet this standard, "as they specify the time spent down to the tenth of an hour and provide descriptions of the services that were performed." *Patagonia, Inc. v. 18A Chrons. LLC*, 2023 WL 5505805, at *2 (C.D. Cal. July 11, 2023).

In sum, the Court finds the 842.8 hours Defendant spent to be reasonable.

**D.    Lodestar Calculation**

The Court finds that awarding Defendant $623,738.70 in attorney's fees to be reasonable.[2] In so finding, the Court adopts the following lodestar calculation:[3]

| Attorney | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| J. Siegel | 22.5 | $1,237.50 | $27,843.75 |
| J. Harper | 131.8 | $891 | $117,433.80 |
| J. Moon | 23.4 | $891 | $20,849.40 |
| H. Canner | 2024: 0.4<br>2025: 131.5<br>Total: 131.9 | 2024: $733.50;<br>2025: $805.50 | 2024: $293.40<br>2025: $105,923.25<br>Total: $106,216.65 |

---

[2] Plaintiff also argues that two individual lawyers are unable to pay such high sanctions. Although it is within the Court's discretion to reduce § 1927 sanctions because of inability to pay, *see Haynes v. City & Cnty. of San Francisco*, 688 F.3d 984, 989 (9th Cir. 2012), Plaintiff offers no evidence in support of their contention that they are unable to pay.

[3] The Court notes that the lodestar calculation was calculated after subtracting the 166.7 hours associated with Defendant moving for sanctions and filing the Supplemental Brief on the reasonableness of attorney's fees.

closed

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-08211-RGK-MAR | Date | December 19, 2025 |
|---|---|---|---|
| Title | *Eddie Golikov v. Walmart Inc.* | | |

| | | | |
|---|---|---|---|
| J. Elie-Meyers | 152.4 | $720 | $109,728 |
| C. Whitten | 19 | $720 | $13,680.00 |
| P. Bae | 19.0 | $684 | $12,996.00 |
| M. Drell | 108 | $684 | $73,872.00 |
| M. Ladew | 33.8 | $684 | $23,119.20 |
| B. Stoffers | 62.5 | $652.50 | $40,781.25 |
| K. Feliciano | 2.2 | $612 | $1,346.40 |
| M. Gibbons | 40 | $576 | $23,040.00 |
| N. Traver | 36.9 | $562.50 | $20,756.25 |
| D. Imakyure | 59.4 | $540 | $32,076.00 |
| **Total** | **842.8** | - | **$623,738.70** |

## IV.   CONCLUSION

For the foregoing reasons, the Court **AWARDS** Defendant $623,738.70 in attorney's fees as a form of sanctions under § 1927 against Ms. Cho and Mr. Lyon.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer                JRE/sh

APP013

# EXHIBIT C

1  Richard Lyon (Cal. Bar No. 229288)
   rick@dovel.com
2  Christin Cho (Cal. Bar No. 238173)
3  christin@dovel.com
   DOVEL & LUNER, LLP
4  201 Santa Monica Blvd., Suite 600
5  Santa Monica, California 90401
   Telephone: (310) 656-7066
6  Facsimile: +1 (310) 656-7069
7
8  *Attorneys for Plaintiff*
9

10              **UNITED STATES DISTRICT COURT**
11              **CENTRAL DISTRICT OF CALIFORNIA**
12

13  EDIE GOLIKOV, individually and          Case No. 2:24-cv-08211-RGK-MAR
    on behalf of all others similarly
14  situated,                                **DECLARATION OF CHRISTIN CHO**
15                                           **IN SUPPORT OF PLAINTIFF'S**
          *Plaintiff*,                       **OPPOSITION TO DEFENDANT**
16                                           **WALMART'S MOTION FOR**
17  v.                                       **SANCTIONS**

18  WALMART INC.,                            Date: November 3, 2025
19                                           Time: 9:00 a.m.
          *Defendant*.                       Dept.: Courtroom 850
20
21                                           Assigned to the Hon. R. Gary Klausner
22
23                                           Complaint filed: September 24, 2024
24
25
26
27
28

APP015

## <u>DECLARATION OF CHRISTIN CHO</u>

I, Christin Cho, declare and state as follows:

      1.    I am a member in good standing of the bar of the state of California and a partner in the law firm of Dovel & Luner, LLP. I represent Plaintiff Edie Golikov in the above-referenced matter.

      2.    In September 2024, I was working on a number of potential avocado oil cases with my team. One of the cases I was working on was this case.

      3.    I was aware that the Plaintiff, Ms. Golikov, had purchased Great Value avocado oil both online and in-store at Walmart.

      4.    I prepared the initial complaint for this case, with assistance from my staff. A staff member filled in November 14, 2021, as the date of an in-store purchase. Because I knew that Ms. Golikov had made in-store purchases during the class period, the sentence identifying the November 14, 2021, purchase as in-store did not jump out at me as potentially inaccurate. I did not realize that the November 14 date corresponded to an online purchase, and not an in-store purchase, and did not double-check that fact. The initial complaint was therefore filed with that inadvertent error.

      I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of October, 2025, in Santa Monica, California.

Christin Cho: 

# EXHIBIT D

APP017

Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated, | Case No. 2:24-cv-08211-RGK-MAR |
| *Plaintiff*, | **DECLARATION OF CHRISTIN CHO IN SUPPORT OF OPPOSITION TO DEFENDANT WALMART'S SUPPLEMENTAL BRIEF ON THE REASONABILITY OF ATTORNEY'S FEES** |
| v. | |
| WALMART INC., | Assigned to the Hon. R. Gary Klausner |
| *Defendant*. | Complaint filed: September 24, 2024 |

## DECLARATION OF CHRISTIN CHO

I, Christin Cho, declare and state as follows:

     1.    On September 24, 2024, I prepared and filed the initial complaint in this case, *Golikov v. Walmart Inc.*

     2.    After the complaint was filed, other lawyers at my firm were assigned to litigate the case, and they took over the litigation.

     3.    Preparing the initial complaint was my only involvement in this litigation until after the case had been stayed and Defendant's sanctions motion had already been filed.

     4.    I had no involvement in amending the complaint, the motion to dismiss briefing, the certification briefing, the Rule 23(f) petition, discovery, the decertification briefing, or any other aspect of the case that took place between the filing of the amended complaint and the filing of Defendant's sanctions motion.

     I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of December, 2025, in Santa Monica, California.

Christin Cho:

APP019

# EXHIBIT E

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

*In re* CHRISTIN CHO and RICHARD LYON,

                *Petitioners,*

    v.

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,

                *Respondent,*

WALMART INC.,

                *Real Party in Interest.*

Case No. _____

## **DECLARATION OF CHRISTIN CHO**

I, Christin Cho, declare and state as follows:

1.     I am a partner at Dovel & Luner. Dovel & Luner specializes in class actions and mass torts. My own practice has focused primarily on class actions for the last few years.

2.     I have been a member of the California bar since December 2005. I have worked throughout my career to establish a reputation for ethical conduct and professionalism. Prior to the sanctions order in this

APP021

case, I had never been disciplined or sanctioned in any way by any court or state bar.  I strive to practice law with integrity and honesty.

3.    The sanctions order has caused immediate and continuing harm to my reputation and practice. The sanctions order is published and publicly available.  In addition, several news articles have been written about the sanctions order, which have been circulated and can be located online.  The articles can be found by potential clients, judges, opposing counsel, and the public by simply searching for my name with "Dovel & Luner" in Google.  Colleagues have already reached out to me after seeing the articles.  Potential clients may also Google me in deciding whether to retain me for a potential matter, and find the articles about the sanctions order.  These potential clients may reasonably choose not to retain a lawyer who has previously been sanctioned.

4.    The reputational and professional harm is especially severe because of the amount of the award.  Because the amount is so high ($623,738.70), lawyers, judges, and potential clients who learn of the sanctions order may believe that it was the result of particularly egregious, unethical conduct, further harming my reputation.

5.      The sanctions order is especially harmful because it may result in further action by the California bar.  My understanding is that the California Business and Professions Code requires that I report the sanctions order to the California bar, and that it may result in further bar action. This would further harm my professional reputation, ability to litigate cases, and livelihood.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of January, 2026, in Santa Monica, California.

Christin Cho:

# EXHIBIT F

APP024

1   Richard Lyon (Cal. Bar No. 229288)
2   rick@dovel.com
    Christin Cho (Cal. Bar No. 238173)
3   christin@dovel.com
4   DOVEL & LUNER, LLP
    201 Santa Monica Blvd., Suite 600
5   Santa Monica, California 90401
6   Telephone: (310) 656-7066
    Facsimile: +1 (310) 656-7069
7
8   *Attorneys for Plaintiff*

9

10              **UNITED STATES DISTRICT COURT**
11              **CENTRAL DISTRICT OF CALIFORNIA**

12

13   EDIE GOLIKOV, individually and        Case No. 2:24-cv-08211-RGK-MAR
     on behalf of all others similarly
14   situated,                             **DECLARATION OF RICK LYON IN**
                                           **SUPPORT OF PLAINTIFF'S**
15                                         **OPPOSITION TO DEFENDANT**
              *Plaintiff*,                 **WALMART'S MOTION FOR**
16                                         **SANCTIONS**
17   v.
                                           Date: November 3, 2025
18   WALMART INC.,                         Time: 9:00 a.m.
19                                         Dept.: Courtroom 850
              *Defendant*.
20                                         Assigned to the Hon. R. Gary Klausner
21
22                                         Complaint filed: September 24, 2024
23

24

25

26

27

28

_____
Declaration of Rick Lyon                    Case No. 2:24-cv-08211-RGK-MAR

## DECLARATION OF RICK LYON

I, Rick Lyon, declare and state as follows:

1.      I am a member in good standing of the bar of the state of California and a partner in the law firm of Dovel & Luner, LLP. I represent Plaintiff Edie Golikov in the above-referenced matter.

2.      I first appeared in this case on September 30, 2024. Dkt. 10. Prior to my appearance, I had no involvement with this matter. I was not involved with the pre-filing investigation or the preparation of the initial Complaint, which was filed on September 24, 2024. The pre-filing investigation and initial Complaint were overseen by my partner, Christin Cho, whom I have worked with for over 15 years and whom I believe to be an excellent attorney.

3.      After I joined the case, Defendant filed a motion to dismiss the Complaint on December 9, 2024. Dkt. 24. I reviewed Defendant's motion and determined that Defendant's primary argument could be addressed by amending the Complaint. In its motion, Defendant argued that the "allegations that the avocado oil was advertised as 'pure' were 'conclusory.'" *Id*. (quoting *McConnon v. The Kroger Co*., U.S. Dist. LEXIS 110016 (C.D. Cal. June 21, 2024)). I amended the Complaint to address this argument, illustrating the distinction between our case and *McConnon*. I clarified that our allegations focus on "adulteration," not the "purity," of the avocado oil. *See* Exhibit 1 (redline showing changes made in the Amended Complaint), ¶¶ 4-6, 15-21, 23-27. I also added additional detail supporting the allegations of adulteration. *Id*. None of these amendments had anything to do with the date or location of Ms. Golikov's purchase, so I had no reason to revisit, or second-guess, those allegations. Instead, I addressed the issues raised in the motion to dismiss and focused on making sure that the amendments were accurate.

4.      During the course of the litigation, I was aware that Ms. Golikov had purchased Walmart's avocado oil both in person at physical Walmart stores and online at Walmart.com. And because of her in-store purchases, I did not believe arbitration

APP026

could be an issue in this case. I never had reason to go back and check the Complaint or Amended Complaint to confirm that her in-store purchases were specifically identified until the April 24, 2025, meet and confer when counsel for Walmart informed me that they intended to file a motion to compel arbitration. After we met and conferred and I reviewed the Complaint, I still believed we had a good-faith basis to oppose Defendant's motion to compel arbitration—and in fact fully expected to prevail on that motion—for the reasons set forth in our Opposition to the motion (Dkt. 69) and in our Response to Defendant's motion to decertify (Dkt. 86). Also, when I saw that the Complaint referenced a purchase from a "Walmart store," I looked into whether this could plausibly be interpreted as encompassing a purchase from Walmart.com. And I found evidence supporting this interpretation. *See* Dkt. 69 at 5, n.2 (citing CNN article referring to "Walmart's online store" and Walmart's website referring to its "Online Walmart Store"). Although the Court did not adopt our arguments and ruled against us, all of the arguments and submissions were made in good faith.

5.      Defendant argues that it "[n]oticed Ms. Golikov's deposition on three occasions," but she "never sat for deposition." Mot. 7. But the reason Ms. Golikov did not sit for a deposition is because, the first two times, Defendant confirmed it did not intend to proceed with the noticed deposition. And the third time, the deposition was noticed for a date after the Court stayed all proceedings. The Court already acknowledged that the first deposition notice (Exhibit 2) was deficient. When Walmart argued that Ms. Golikov failed to appear for this deposition (like it does again in this motion), the Court held that "Defendant appears to grossly misrepresent the facts." Dkt. 62 (Order) at 7. This is because "Plaintiff objected" to the notice on the basis that "Defendant gave only three business days' notice." *Id*. And "Defendant not only acknowledged these objections, but seemingly agreed that Plaintiff was not obligated to appear, writing: 'We absolutely understand and appreciate the objections. We will work with [counsel] to try to get a more appropriate schedule.'" *Id*. (quoting counsel

communications). When the parties attempted to find a more appropriate schedule, and Defendant served its second notice of deposition (Exhibit 3), Defendant changed course and elected not to proceed with Ms. Golikov's deposition. Defendant's second notice, served on March 28, noticed the deposition for April 17. *Id*. Because Ms. Golikov was unavailable on April 17, Plaintiff provided Defendant with four alternative dates. *See* Exhibit 4 (April 10 email) (Ms. Golikov is "available April 25, 28, 29, or 30"). Defendant, however, did not depose Ms. Golikov on these dates; nor did Defendant request alternative dates. When Defendant later determined that it did want to proceed with Ms. Golikov's deposition, it served a third notice on May 23, noticing the deposition for June 20. *See* Exhibit 5. But before that deposition could proceed, the Court granted Defendant's motion to compel arbitration and stayed all proceedings on June 10. Dkt. 81.

      6.    Defendant's suggestion that I improperly avoided my own deposition (concerning a class certification declaration I submitted attaching laboratory testing results) is likewise not true. During meet and confers, I repeatedly informed Defendant that, if they intended to proceed with my deposition, I would move to quash. Defendant informed me they did not intend to proceed, and there was no need to file such a motion. *See, e.g.*, Exhibit 6 (April 25 email) ("To confirm our call yesterday, my understanding is that you do not intend to pursue my deposition at this time and there is no need for me to file a motion to quash."). Defendant's reference to the noticed depositions of the class certification experts, Mr. Imel and Mr. Maronick, is similarly misplaced. Because "class certification … ended up being fully briefed prior to the date[s]" noticed for these "deposition[s]" due to "extension requests" being "denied," "the parties agreed to revisit [these depositions] after the class certification Order was entered." Exhibit 4 (April 10 email). And when they did, Defendant elected not to pursue Mr. Imel's deposition further, and Plaintiff offered April 25, 2025 for Mr. Maronick's deposition. *Id*. But Defendant elected not to depose Mr. Maronick on April 25 and did not request alternative dates.

I declare under penalty of perjury that the foregoing is true and correct.
Executed this 10th day of October, 2025, in Santa Monica, California.

Rick Lyon:

# EXHIBIT G

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| *In re* CHRISTIN CHO and RICHARD LYON, | |
| *Petitioners*, | Case No. _____ |
| v. | |
| UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, | |
| *Respondent*, | |
| WALMART INC., | |
| *Real Party in Interest.* | |

## <u>DECLARATION OF RICHARD LYON</u>

I, Richard Lyon, declare and state as follows:

1.    I am a partner in Dovel & Luner. My practice focuses primarily on commercial class actions.

2.    I have been practicing law for twenty-two years. During this time, I have worked hard to develop my reputation as a diligent, hard-working, and ethical attorney.

APP031

3.      I pride myself on practicing law with integrity,

professionalism, and respect for the courts, opposing counsel, and my

clients. Maintaining a reputation for honesty and ethical conduct is of

paramount importance to me, both personally and professionally.

4.      I regularly appear before courts throughout the country and,

prior to the Order at issue here, my ethics have never been questioned.

No court has ever held (or even suggested) that I acted in bad faith,

unethically, or improperly. I have never been sanctioned, disciplined by

any bar authority, or otherwise had my professional integrity

questioned.

5.      The Order is deeply distressing and has already caused

significant harm to my professional reputation. If not reversed, it will

continue to cause ongoing harm my professional reputation. Several

news organizations wrote articles about the Order. These news articles

(and the Order) are publicly available online. They can be found by

potential clients, judges, opposing counsel, and the public by simply

searching for my name with "Dovel & Luner" in Google. Several of my

professional peers have already seen these articles and reached out to

me, expressing concern. And numerous reputation management firms

have contacted me, offering their services to help repair my damaged reputation.

6.    As an attorney, my credibility before courts, clients, and colleagues is one of my most valuable professional assets, and one that I have worked my whole career to develop. The Order casts an immediate shadow over that credibility. It threatens to impair my standing before other courts in which I regularly practice, as well as my relationships with current and prospective clients, co-counsel, and professional peers.

7.    Also, the California Business and Professions Code requires that I report the sanctions order to the California bar. My status with the bar is essential to my reputation, and my livelihood.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of January, 2026, in Santa Monica, California.

Richard Lyon:

# EXHIBIT H

Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>     *Plaintiff*,<br><br>v.<br><br>WALMART INC.,<br><br>     *Defendant*. | Case No. 2:24-cv-08211<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# Table of Contents

I.      Introduction. .................................................................................................1

II.     Parties...........................................................................................................2

III.    Jurisdiction and Venue.................................................................................2

IV.     Facts. ............................................................................................................3

        A.      Consumers want pure avocado oil, and are willing to pay more for it. ...........3

        B.      Scientific research reveals problems with avocado oil labeling..........................3

        C.      Defendant's avocado oil labeling is false and misleading. ................................4

        D.      Defendant overcharges its consumers. ................................................6

        E.      Plaintiff was misled and harmed by Defendant's false and misleading
                labeling. .................................................................................................7

        F.      No adequate remedy at law. .................................................................8

V.      Class Action allegations. .............................................................................8

VI.     Claims. .......................................................................................................10

        First Cause of Action: Violation of California's False Advertising Law Bus.
                & Prof. Code §§ 17500 & 17501 et. seq.......................................10

        Second Cause of Action: Violation of California's Consumer Legal Remedies
                Act.................................................................................................11

        Third Cause of Action: Violation of California's Unfair Competition Law ............13

        Fourth Cause of Action: Breach of Express Warranty.................................15

        Fifth Cause of Action: Negligent Misrepresentation...................................15

        Sixth Cause of Action: Intentional Misrepresentation................................16

        Seventh Cause of Action: Quasi-Contract ..................................................17

VII.    Relief. .........................................................................................................18

VIII.   Demand for Jury Trial. ...............................................................................18

## I.   Introduction.

1.     Supermarkets today are stocked with a variety of cooking oils.  Customers can choose different cooking oils based on factors such as taste, uses, health benefits, and price.

2.     "Avocado oil is a rising star in the culinary world."[1]  It "has generated growing interest among consumers due to its nutritional and technological characteristics."[2]  Avocado oil "is delicious, nutritious, and easy to use.  It's rich in oleic acid, polyunsaturated fats, carotenoids, and other antioxidant-rich nutrients that are linked to improved heart, skin, and eye health."[3]  It has a variety of health benefits, and may reduce arthritis and improve skin.  It also has a high heat point, which makes it suitable for high heat cooking.[4]  "[A]vocado oil has established itself as an oil that has a very good nutritional value at low and high temperatures."[5]

3.     Because of its many benefits, consumers seek out avocado oil, and are willing to pay more for it.  And, avocado oil can command prices four times more expensive than its competitor, canola oil.[6]

4.     But because avocado oil is more expensive to produce, some makers cut corners.  They substitute other oils, or mix avocado oil with cheaper seed oils.  They sell avocado oil that is impure and adulterated.  Consumers are harmed.  They buy products labeled "avocado oil," believing that they are buying pure avocado oil, and in fact receive impure oil that is mixed and adulterated.

---

[1] https://www.washingtonpost.com/wellness/2024/08/27/avocado-oil-adulteration-tests/

[2] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6600360/

[3] https://www.healthline.com/nutrition/9-avocado-oil-benefits

[4] https://www.healthline.com/nutrition/9-avocado-oil-benefits#TOC_TITLE_HDR_2

[5] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6600360/; https://healthnews.com/nutrition/healthy-eating/why-you-should-start-replacing-canola-oil-with-avocado-oil/

[6] *Id.*

5.      Defendant Walmart Inc. ("Walmart" or "Defendant") makes, markets and sells Great Value brand avocado oil.  The bottle prominently states that it contains only avocado oil. The bottle is labeled "Refined Avocado Oil," and has pictures of avocados. The ingredient list also lists only "avocado oil." But the truth is, it is not pure avocado oil. Instead, testing has shown that the oil is adulterated and impure.

6.      On November 14, 2021 Plaintiff Edie Golikov purchased a bottle of Great Value Refined Avocado Oil from a Walmart store while living in Tarzana, California. When Ms. Golikov purchased the product, the package prominently stated "Avocado Oil."  She read and relied on this statement, and believed she was purchasing pure avocado oil.  But a recent study shows that this is not true; Defendant's avocado oil is adulterated and impure. Plaintiff was harmed, and brings this lawsuit on behalf of herself and a class of consumers that purchased Defendant's avocado oil.

## II.     Parties

7.      Plaintiff Edie Golikov is a citizen of California, domiciled in Los Angeles County.

8.      The proposed class includes citizens of every state.

9.      Defendant Walmart, Inc. is a Delaware Corporation with its principal place of business at 702 SW 8th St., Bentonville, AR 72716.

## III.    Jurisdiction and Venue.

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

11.     The Court has personal jurisdiction over Defendant because Defendant sold Great Value Products to consumers in California, including to Plaintiff.

12.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Great Value Products to

consumers in this District, including Plaintiff. Venue is also proper under 28 U.S.C. §
1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims
occurred in this District, including Defendant's sale to Plaintiff.

## IV.   Facts.

### A.   Consumers want pure avocado oil, and are willing to pay more for it.

13.    Avocado oil is quickly gaining popularity in the culinary world. It has
attracted increasing attention from consumers due to its nutritional benefits and
versatility. Avocado oil has mild flavor, making it easy to cook with. In addition, it is
packed with healthful nutrients like oleic acid, polyunsaturated fats, carotenoids, and
antioxidants, which have been linked to better heart, skin, and eye health.  Avocado oil
may also improve arthritis and promote healthy skin.  Additionally, avocado oil's high
smoke point makes it ideal for cooking at high temperatures. This makes it a versatile oil
with excellent nutritional value, whether used at low or high heat.

14.    Due to its numerous health benefits, avocado oil is highly sought after by
consumers, who are often willing to pay a premium for it. In fact, avocado oil can be
priced up to four times higher than its competitor, canola oil.[7]

### B.   Scientific research reveals problems with avocado oil labeling.

15.    Unfortunately, "due to the lack of enforceable standards, consumers are
unprotected from fraud (i.e., economic motivated adulteration)" in the avocado oil
marketplace.[8]  Because it costs a lot more to make 100% pure avocado oil than an impure
or adulterated  oil (e.g. one containing a mix of avocado and other oils), bad actors can
increase their profits by selling impure or mixed oils as pure avocado oil.[9]  "Oils that are

---

[7] https://healthnews.com/nutrition/healthy-eating/why-you-should-start-replacing-canola-oil-with-avocado-oil/

[8] Green, H. S.; Wang, S. C. Food Control, 2020, 116, 107328: "First report on quality and purity evaluations of avocado oil sold in the US", available at https://www.sciencedirect.com/science/article/pii/S0956713520302449

[9] Green, H. S.; Wang, S. C. Food Control 2023, 152, 109837 "Purity and quality of private labelled avocado oil," available at https://www.sciencedirect.com/science/article/pii/S0956713523002372

of poor quality or blended with cheaper edible oil can be traded and sold"[10] to unknowing consumers. Consumers purchase the inauthentic products and pay the higher prices, believing that they are purchasing pure avocado oil with its corresponding benefits.

16.    A group of scientists at University of California, Davis recently tested a variety of commercially available avocado oil for purity. They found that many retailers were selling adulterated avocado oil.  Almost 70% of the avocado oils tested were "rancid or mixed with other oils."[11]

**C.    Defendant's avocado oil labeling is false and misleading.**

17.    Defendant sells Great Value Avocado Oil (the "Product").  Defendant's labels prominently state that the Product is avocado oil. The front of the bottle prominently states "Avocado Oil," and includes images of avocados.



_____

[10] Green, H. S.; Wang, S. C. Food Control, 2020, 116, 107328: "First report on quality and purity evaluations of avocado oil sold in the US", available at https://www.sciencedirect.com/science/article/pii/S0956713520302449

[11] https://www.ucdavis.edu/food/news/70%25-private-label-avocado-oil-rancid-or-mixed-other-oils

18.    The ingredients lists only a single ingredient: Avocado Oil.



19.    Based on each of these representations, reasonable consumers believe that the bottle contains avocado oil, and *only* avocado oil. Reasonable consumers expect that the words "Avocado Oil" means that the bottles contain avocado oil, not some oil that is adulterated, mixed with other oils, or is impure.  Similarly, when reasonable consumers see the sole ingredient: "avocado oil," they expect that the product only includes that sole ingredient: avocado oil.  No reasonable consumer expects that a bottle labeled "Avocado Oil," has photos of avocados, and lists only "avocado oil" as its ingredient contains other, cheaper, non-avocado oils. In short, reasonable consumers reasonably believe that they are receiving a product that contains pure avocado oil.

20.     But, scientific testing shows that the avocado oil is impure.  The University of California, Davis researchers who study avocado oil purity recently revealed the names of the avocado oils that had tested impure in their study.  The list included Defendant's Great Value avocado oil. [12]

21.     The inaccurate labeling of Defendant's product is highly material to reasonable consumers.  Consumers who purchase avocado oil are choosing it and paying more for it, because they believe it has benefits over other oils.  They are choosing to pay more because they believe that the product they are receiving is pure avocado oil, and not an oil that is adulterated with cheaper oils.

22.     Defendant knows, or reasonably should know, that its labeling is misleading customers. Since at least 2020, the avocado oil industry has been aware that there are problems with adulteration and purity of avocado oils. *See, e.g.,* https://www.sciencedirect.com/science/article/pii/S0956713520302449?.

23.     As a distributor and seller of cooking oils, Defendant is aware of industry studies and trends, and aware of the problems with impurity and adulteration in the avocado oil market. Defendant is aware of, willfully blind to, or negligent with respect to the fact that the avocado oils that it sells are impure. Indeed, if Defendant tested its own avocado oils before putting them on the market, it would know that its avocado oils are impure and adulterated.  Given the pervasive problems with avocado oil adulteration, any reasonable maker, seller, or distributor of avocado oil would test its own products.

**D.     Defendant overcharges its consumers.**

24.     Defendant's false and misleading labeling allows Defendant to charge higher prices for its products.  As explained above, consumers are willing to pay substantially higher prices for avocado oil.  If Defendant told the truth— that its oils are impure, and adulterated with other oils— the price of its avocado oil would drop dramatically.  If consumers knew the truth— that the product did not contain 100% pure avocado oil—

---

[12] https://www.washingtonpost.com/wellness/2024/08/27/avocado-oil-adulteration-tests/

they would not pay the current prices for the products. Indeed, as described above, other oils sell for substantially less than pure avocado oil. Accordingly, if Defendant accurately labeled its products, it would have had to lower the price, and Plaintiff and class members would have paid less.

25. Thus, Plaintiff and each class member paid a substantial price premium because of Defendant's false and misleading labeling. Plaintiff paid more for a superior product worth more, and received an inferior product that was inaccurately labeled. Plaintiff and the class therefore sustained an economic injury and paid a price premium as result of Defendant's false and misleading labels.

**E.    Plaintiff was misled and harmed by Defendant's false and misleading labeling.**

26. On November 14, 2021 Plaintiff Edie Golikov purchased a bottle of Great Value Refined Avocado Oil from a Walmart store while living in Tarzana, California. The package prominently stated "Avocado Oil" and had pictures of avocados. The ingredient list also listed only avocado oil. Ms. Golikov read and relied on these statements when purchasing the Product. She would not have purchased the Product at the price she paid if she had known that the Product was contaminated with other oils, and that it was not pure avocado oil.

27. Plaintiff wants Walmart to fix its practices and sell avocado oil with accurate labeling. If Walmart fixes their Products, so that the avocado oil is actually pure and not contaminated with other oils, she would buy them again. But given Walmart's past deception, Plaintiff cannot rely on Walmart's word alone that it has fixed the problem. Plaintiff faces an imminent threat of harm because she will not be able to rely on Walmart's labels in the future, and will not be able to buy Great Value Avocado Oil, even if Walmart claims to have fixed the issue. To buy Walmart's Products again, Plaintiff needs the Court to enter an order forbidding Walmart from claiming that its avocado oil contains only "avocado oil," unless the avocado oil actually is pure and not contaminated with other oils.

F.      **No adequate remedy at law.**

28.     Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law.

29.     A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. As one example, to obtain damages under the CLRA, a plaintiff must show that they complied with the CLRA's notice requirement for damages. No such requirements exist to obtain restitution. Because a plaintiff must make this additional showing to obtain damages, rather than restitution, the legal remedies are more uncertain.

30.     In addition, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

**V.      Class Action allegations.**

31.     Plaintiff brings the asserted claims on behalf of the proposed class of:

- <u>Nationwide Class</u>: all persons who, within the applicable statute of limitations period, purchased Great Value Avocado Oil.

- <u>California Subclass</u>: all persons who, while in the state of California and within the applicable statute of limitations period, purchased Great Value Avocado Oil.

32.     The following people are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and

Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### Numerosity & Ascertainability

33.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

34.    Class members can be identified through Defendant's sales records and public notice.

### Predominance of Common Questions

35.    There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

### Typicality & Adequacy

36.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased Defendant's Great Value Avocado Oil Products.  There are no conflicts of interest between Plaintiff and the class.

### Superiority

37.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims.

### First Cause of Action:

### Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq.

### (By Plaintiff and the California Subclass)

38.    Plaintiff incorporates each and every factual allegation set forth above.

39.    Plaintiff brings this cause of action individually and on behalf of herself and members of the California Subclass.

40.    Defendant has violated Sections 17500 and 17501 of the Business and Professions Code.

41.    Defendant has violated, and continues to violate, Section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and subclass members.

42.    As alleged in detail above, Defendant falsely advertised its products by falsely representing that Great Value Avocado Oil is pure avocado oil.  It did this by prominently labeling the bottle "Avocado Oil," featuring avocados on the bottle, and also by listing only "Avocado Oil" in the ingredients list.

43.    Defendant's misrepresentations were likely to deceive, and did deceive, Plaintiff and other reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were false and misleading.

44.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Defendant's Products. Classwide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the products.

45.    Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decisions of subclass members.

46.     Plaintiff and the subclass were injured as a direct and proximate result of
Defendant's conduct because: (a) they would not have purchased Great Value Avocado
Oil if they had known that the Product is impure and contaminated with a different oil or
oils, and (b) they overpaid for the Product because it was sold at a price premium due to
the representation.

### Second Cause of Action:

### Violation of California's Consumer Legal Remedies Act
### (by Plaintiff and the California Subclass)

47.     Plaintiff incorporates each and every factual allegation set forth above.

48.     Plaintiff brings this cause of action individually and on behalf of herself and
members of the California Subclass.

49.     Plaintiff and the class are "consumers," as the term is defined by California
Civil Code § 1761(d).

50.     Plaintiff and the subclass have engaged in "transactions" with Defendant as
that term is defined by California Civil Code § 1761(e).

51.     The conduct alleged in this Complaint constitutes unfair methods of
competition and unfair and deceptive acts and practices for the purpose of the CLRA,
and the conduct was undertaken by Defendant in transactions intended to result in, and
which did result in, the sale of goods to consumers.

52.     As alleged more fully above, Defendant has violated the CLRA by falsely
representing that Great Value Avocado Oil contains only avocado oil, when in fact the
products are impure and contaminated with a different oil or oils. Defendant knew, or
should have known through the exercise of reasonable care, that these statements were
false and misleading.

53.     Defendant violated, and continues to violate, Section 1770(a)(5) of the
California Civil Code by representing that goods have "characteristics, ingredients, uses,
benefits, or quantities which they do not have." Defendant represents that its Products
have the characteristic of being avocado oil and only avocado oil, when in reality they are

impure and mixed or substituted with a different oil or oils. Defendant represents that its Product contains only avocado oil, when in fact it is adulterated with other oils.

54. Defendant violated, and continues to violate, Section 1770(a)(7) of the California Civil Code by "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are another." Defendant represents that its Products meet the standard of containing only avocado oil, when in reality they are impure and mixed or substituted with a different oil or oils. Defendant represents that its Product contains only avocado oil, when in fact it is adulterated with other oils.

55. Defendant violated, and continues to violate, Section 1770(a)(9) of the California Civil Code by advertising "goods…with intent not to sell them as advertised." Defendant advertises that its Product contains only avocado oil, when in fact it is adulterated with other oils.

56. Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

57. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

58. In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

59. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

60. Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Great Value Avocado Oil if they had known that the Product is impure and contaminated with a different oil or oils, and (b) they overpaid for the Product because it was sold at a price premium due to the representation.

61. Accordingly, pursuant to California Civil Code § 1780(a)(2), Ms. Golikov, on behalf of herself and all other members of the subclass, seeks injunctive relief.

62. CLRA § 1782 NOTICE. On September 20, 2024, a CLRA demand letter was sent to Defendant's California registered agent and Arkansas headquarters via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. If Defendant does not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA.

63. A CLRA venue declaration is attached.

### Third Cause of Action:

### Violation of California's Unfair Competition Law

### (by Plaintiff and the California Subclass)

64. Plaintiff incorporates each and every factual allegation set forth above.

65. Plaintiff brings this cause of action individually and on behalf of herself and members of the California Subclass.

66. Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

*The Unlawful Prong.*

67. Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

*The Fraudulent Prong.*

68. As alleged in detail above, Defendant's representations that its Products contained only avocado were false and misleading. Its labeling is likely to deceive, and did deceive, Plaintiff and other reasonable consumers

*The Unfair Prong.*

69.     Defendant's conduct, as detailed above, also violated the "unfair" prong of the UCL.

70.     Defendant's conduct caused substantial injury to Plaintiff and subclass members. The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct (which is none). Inaccurately labeled avocado oil has no public utility. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading labels only injure healthy competition and harm consumers.

71.     Plaintiff and the subclass could not have reasonably avoided this injury. As alleged above, Defendant's labeling is false and misleading. Its labeling is likely to deceive, and did deceive reasonable consumers like Plaintiff.

72.     Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

73.     Defendant's conduct violated the public policy against false and misleading labels, which is tethered to the CLRA and the FAL.

*  *  *

74.     For all prongs, Defendant's misrepresentations and omissions were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products. In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

75.     Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of subclass members.

76.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Great Value Avocado Oil if they had known that the Product is impure and contaminated with a different oil or oils, and (b) they overpaid for the Product because it was sold at a price premium due to the representation.

**Fourth Cause of Action:**

**Breach of Express Warranty**

**(by Plaintiff and the Nationwide Class**)

77.  Plaintiff incorporates each and every factual allegation set forth above.

78.  Plaintiff brings this cause of action individually and on behalf of herself and the Nationwide class. In the alternative, Plaintiff brings this claim on behalf of herself and members of the California Subclass.

79.  Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Great Value Avocado Oil, issued material, written warranties by representing that the Products contain only "Avocado Oil." These were affirmations of fact about the Products (i.e., that they contained only avocado oil) and a promise relating to the goods.

80.  This warranty was part of the basis of the bargain and Plaintiff and class members relied on this warranty.

81.  In fact, Great Value Avocado Oil does not conform to the above-referenced representation because, as alleged in detail above, Defendant's labeling is inaccurate and the Products have been shown to be impure and contaminated with a different oil or oils. It is not pure avocado oil. Thus, the warranty was breached.

82.  Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on September 20, 2024.

83.  Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Great Value Avocado Oil if they had known that the Product is impure and contaminated with a different oil or oils, and (b) they overpaid for the Product because it was sold at a price premium due to the representation.

**Fifth Cause of Action:**

**Negligent Misrepresentation**

**(by Plaintiff and the California Subclass)**

84.  Plaintiff incorporates each and every factual allegation set forth above.

85.     Plaintiff brings this cause of action individually and on behalf of herself and the California Subclass.

86.     As alleged more fully above, Defendant made false representations to Plaintiff and class members concerning its statements that the Products contain only avocado oil, and that they only contain avocado oil.

87.     These representations were false.

88.     When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

89.     Defendant intended that Plaintiff and class members rely on these representations, and Plaintiff and class members read and reasonably relied on them.

90.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Great Value Avocado Oil.

91.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

92.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Great Value Avocado Oil if they had known that the Product is impure and contaminated with a different oil or oils, and (b) they overpaid for the Product because it was sold at a price premium due to the representation.

### <u>Sixth Cause of Action</u>:

### Intentional Misrepresentation

### (by Plaintiff and the Nationwide Class)

93.     Plaintiff incorporates each and every factual allegation set forth above.

94.     Plaintiff brings this cause of action individually and on behalf of herself and the Nationwide class. In the alternative, Plaintiff brings this claim on behalf of herself and members of the California Subclass.

95.     As alleged more fully above, Defendant made false representations to Plaintiff and class members concerning its statements that the Products contained only avocado oil.

96.     These representations were false.

97.     When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

98.     Defendant intended that Plaintiff and class members rely on these representations, and Plaintiff and subclass members read and reasonably relied on them.

99.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Great Value Avocado Oil.

100.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

101.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Great Value Avocado Oil if they had known that the Product is impure and contaminated with a different oil or oils, and (b) they overpaid for the Product because it was sold at a price premium due to the representation.

### Seventh Cause of Action:

### Quasi-Contract

### (by Plaintiff and the Nationwide Class)

102.    Plaintiff incorporates each and every factual allegation set forth above.

103.    Plaintiff brings this cause of action in the alternative to her Breach of Express Warranty claim (Count 5) on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this claim on behalf of herself and members of the California Subclass.

104.     As alleged in detail above, Defendant's false and misleading representations caused Plaintiff and the class to pay a price premium for the Products.

105.     In this way, Defendant received a direct and unjust benefit, at the expense of Plaintiff and the class.

106.     Plaintiff and the class seek the equitable return of this unjust benefit.

## VII.  Relief.

107.     Plaintiff seeks the following relief for himself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## VIII.  Demand for Jury Trial.

108.     Plaintiff demands the right to a jury trial on all claims so triable.

Dated: September 24, 2024                    Respectfully submitted,

By: /s/ *Christin Cho*
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorney for Plaintiff*

# EXHIBIT I

# EXHIBIT 1

APP056

Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Stephen D. Andrews (Cal. Bar No. 354327)
stephen@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated, | Case No. 2:24-cv-08211 |
| *Plaintiff*, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| WALMART INC., | |
| *Defendant*. | |

**Table of Contents**

I.      Introduction. ............................................................................................1

II.     Parties. ....................................................................................................2

III.    Jurisdiction and Venue. ............................................................................2

IV.     Facts. .......................................................................................................3

        A.      Consumers want unadulterated avocado oil, and are willing to pay
                more for it. ....................................................................................3

        B.      Scientific research reveals problems with avocado oil labeling. ........3

        C.      Defendant's avocado oil labeling is false and misleading. ...............5

        D.      Defendant overcharges its consumers. .............................................8

        E.      Plaintiff was misled and harmed by Defendant's false and misleading
                labeling. ........................................................................................8

        F.      No adequate remedy at law. ...........................................................9

V.      Class Action allegations. .......................................................................109

VI.     Claims. ..................................................................................................11

        First Cause of Action: Violation of California's False Advertising Law Bus.
                & Prof. Code §§ 17500 & 17501 et. seq. ........................................11

        Second Cause of Action: Violation of California's Consumer Legal Remedies
                Act. ..............................................................................................12

        Third Cause of Action: Violation of California's Unfair Competition Law .........1514

        Fourth Cause of Action: Breach of Express Warranty. ...............................16

        Fifth Cause of Action: Negligent Misrepresentation ..................................17

        Sixth Cause of Action: Intentional Misrepresentation. ...............................18

        Seventh Cause of Action: Quasi-Contract ................................................19

VII.    Relief. ....................................................................................................19

VIII.   Demand for Jury Trial. ...........................................................................20

## I. Introduction.

1. Supermarkets today are stocked with a variety of cooking oils. Customers can choose different cooking oils based on factors such as taste, uses, health benefits, and price.

2. "Avocado oil is a rising star in the culinary world."[1] It "has generated growing interest among consumers due to its nutritional and technological characteristics."[2] Avocado oil "is delicious, nutritious, and easy to use. It's rich in oleic acid, polyunsaturated fats, carotenoids, and other antioxidant-rich nutrients that are linked to improved heart, skin, and eye health."[3] It has a variety of health benefits, and may reduce arthritis and improve skin. It also has a high heat point, which makes it suitable for high heat cooking.[4] "[A]vocado oil has established itself as an oil that has a very good nutritional value at low and high temperatures."[5]

3. Because of its many benefits, consumers seek out avocado oil, and are willing to pay more for it. And, avocado oil can command prices four times more expensive than its competitor, canola oil.[6]

4. But because avocado oil is more expensive to produce, some makers cut corners. They substitute other oils, or mix avocado oil with cheaper seed oils. They sell avocado oil that is ~~impure and~~ adulterated. Consumers are harmed. They buy products labeled "avocado oil," believing that they are buying ~~pure~~ unadulterated avocado oil, and in fact receive impure oil that is ~~mixed and~~ adulterated.

---

[1] https://www.washingtonpost.com/wellness/2024/08/27/avocado-oil-adulteration-tests/
[2] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6600360/
[3] https://www.healthline.com/nutrition/9-avocado-oil-benefits
[4] https://www.healthline.com/nutrition/9-avocado-oil-benefits#TOC_TITLE_HDR_2
[5] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6600360/; https://healthnews.com/nutrition/healthy-eating/why-you-should-start-replacing-canola-oil-with-avocado-oil/
[6] *Id.*

First Amended Class Action Complaint          1                    Case No. 2:24-cv-08211

5.      Defendant Walmart Inc. ("Walmart" or "Defendant") makes, markets and sells Great Value brand avocado oil.  The bottle prominently states that it contains only avocado oil.  The bottle is labeled "Refined Avocado Oil," and has pictures of avocados. The ingredient list also lists only "avocado oil."  But the truth is, it is not ~~pure~~ unadulterated avocado oil.  Instead, testing has shown that the oil is adulterated ~~and impure~~.

6.      On November 14, 2021 Plaintiff Edie Golikov purchased a bottle of Great Value Refined Avocado Oil from a Walmart store while living in Tarzana, California. When Ms. Golikov purchased the product, the package prominently stated "Avocado Oil."  She read and relied on this statement, and believed she was purchasing ~~pure~~ unadulterated avocado oil.  But a recent study shows that this is not true; Defendant's avocado oil is adulterated ~~and impure~~.  Plaintiff was harmed, and brings this lawsuit on behalf of herself and a class of consumers that purchased Defendant's avocado oil.

**II.     Parties**

7.      Plaintiff Edie Golikov is a citizen of California, domiciled in Los Angeles County.

8.      The proposed class includes citizens of every state.

9.      Defendant Walmart, Inc. is a Delaware Corporation with its principal place of business at 702 SW 8th St., Bentonville, AR 72716.

**III.    Jurisdiction and Venue.**

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

11.     The Court has personal jurisdiction over Defendant because Defendant sold Great Value Products to consumers in California, including to Plaintiff.

12.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this

First Amended Class Action Complaint      2          Case No. 2:24-cv-08211

1   District were a separate state, given that Defendant sold Great Value Products to

2   consumers in this District, including Plaintiff. Venue is also proper under 28 U.S.C. §

3   1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims

4   occurred in this District, including Defendant's sale to Plaintiff.

5   **IV.   Facts.**

6        **A.   Consumers want ~~pure~~ <u>unadulterated</u> avocado oil, and are willing to**

7        **pay more for it.**

8        13.   Avocado oil is quickly gaining popularity in the culinary world.  It has

9   attracted increasing attention from consumers due to its nutritional benefits and

10  versatility.  Avocado oil has mild flavor, making it easy to cook with.  In addition, it is

11  packed with healthful nutrients like oleic acid, polyunsaturated fats, carotenoids, and

12  antioxidants, which have been linked to better heart, skin, and eye health.  Avocado oil

13  may also improve arthritis and promote healthy skin.  Additionally, avocado oil's high

14  smoke point makes it ideal for cooking at high temperatures.  This makes it a versatile oil

15  with excellent nutritional value, whether used at low or high heat.

16       14.   Due to its numerous health benefits, avocado oil is highly sought after by

17  consumers, who are often willing to pay a premium for it.  In fact, avocado oil can be

18  priced up to four times higher than its competitor, canola oil.[7]

19       **B.   Scientific research reveals problems with avocado oil labeling.**

20       15.   Unfortunately, "due to the lack of enforceable standards, consumers are

21  unprotected from fraud (i.e., economic motivated adulteration)" in the avocado oil

22  marketplace.[8]  <u>In a statement, the Food and Drug Administration acknowledged that</u>

23  <u>"high value oils" such as avocado oil "are potential targets for economically motivated</u>

24  <u>adulteration."</u>  Because it costs a lot more to make ~~100% pure~~<u>unadulterated</u> avocado oil

25  than an ~~impure or~~ adulterated ~~oil~~ (e.g. one containing a mix of avocado and other oils <u>or</u>

26       _____

27       [7] https://healthnews.com/nutrition/healthy-eating/why-you-should-start-
     replacing-canola-oil-with-avocado-oil/

28       [8] Green, H. S.; Wang, S. C. Food Control, 2020, 116, 107328: "First report on
     quality and purity evaluations of avocado oil sold in the US", available at
     https://www.sciencedirect.com/science/article/pii/S0956713520302449

<u>First Amended</u> Class Action Complaint        3              Case No. 2:24-cv-08211

ingredients), bad actors can increase their profits by selling impure or mixed oils as ~~pure unadulterated~~ avocado oil.[9]  "Oils that are of poor quality or blended with cheaper edible oil can be traded and sold"[10] to unknowing consumers.  Consumers purchase the inauthentic products and pay the higher prices, believing that they are purchasing ~~pure unadulterated~~ avocado oil with its corresponding benefits.

16.     A group of scientists at University of California, Davis recently tested a variety of commercially available avocado oil for ~~purity~~ adulteration.  They noted that "the most effective way to determine [avocado oil] purity is to use both sterols and fatty acid profile" tests.[11]  Sterols are plant-based compounds unique to certain oils.  Avocado oil has a characteristic sterol profile, and if the sterol composition of a product deviates from the norm for avocado oil, that deviation indicates adulteration.  The fatty acid profile test includes the proportions of various fatty acids present in the tested oil, such as oleic acid, stearic acid, and others.  Unadulterated avocado oil has a specific range of fatty acids that reflect its natural composition.  Adulterated avocado oil exhibits fatty acid levels outside this expected range.  Specific patterns in fatty acid profiles help pinpoint which oils (e.g., canola oil) have been mixed with the avocado oil.  Based on these and other tests, the UC Davis researchers found that many retailers were selling adulterated avocado oil.  Almost 70% of the avocado oils tested were "rancid or mixed with other oils."[12]

---

[9] Green, H. S.; Wang, S. C. Food Control 2023, 152, 109837 "Purity and quality of private labelled avocado oil," available at https://www.sciencedirect.com/science/article/pii/S0956713523002372

[10] Green, H. S.; Wang, S. C. Food Control, 2020, 116, 107328: "First report on quality and purity evaluations of avocado oil sold in the US", available at https://www.sciencedirect.com/science/article/pii/S0956713520302449

[11] Green, H. S.; Wang, S. C. Food Control 2023, 152, 109837 "Purity and quality of private labelled avocado oil," available at https://www.sciencedirect.com/science/article/pii/S0956713523002372

[12] https://www.ucdavis.edu/food/news/70%25-private-label-avocado-oil-rancid-or-mixed-other-oils

1  **C.     Defendant's avocado oil labeling is false and misleading.**

2       17.     Defendant sells Great Value Avocado Oil (the "Product"). Defendant's

3  labels prominently state that the Product is avocado oil. The front of the bottle

4  prominently states "Avocado Oil," and includes images of avocados.

5

6

7

8

9

10

11

12

13

14                                       

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18.     The ingredients lists only a single ingredient: Avocado Oil.



19.     Based on each of these representations, reasonable consumers believe that the bottle contains avocado oil, and *only* avocado oil.  Reasonable consumers expect that the words "Avocado Oil" means that the bottles contain avocado oil, not some oil that is adulterated with other oils or substances., mixed with other oils, or is impure.  Similarly, when reasonable consumers see the sole ingredient: "avocado oil," they expect that the product only includes that sole ingredient: avocado oil.  No reasonable consumer expects that a bottle labeled "Avocado Oil," has featuring photos of avocados, and listings only "avocado oil" as its ingredient contains other, cheaper, non-avocado oils.  A reasonable consumer would attach importance to the accuracy of the ingredients listed on a product

1   when deciding whether to purchase it.  In short, reasonable consumers reasonably believe
2   that they are receiving a product that contains ~~pure~~ only avocado oil.

3       20.     But, scientific testing shows that the avocado oil is ~~impure~~adulterated.  The
4   University of California, Davis researchers who study avocado oil purity recently revealed
5   the names of the avocado oils that had tested ~~impure~~ adulterated in their study.  The list
6   included Defendant's Great Value ~~avocado~~ Avocado ~~oil~~Oil.[13]  According to the
7   researchers, Defendant's Great Value Avocado Oil contains high levels of other oils,
8   including oleic sunflower or safflower oils—two oils that are less expensive than avocado
9   oil and that have different health and culinary properties.  And Great Value Avocado Oil
10  failed both a fatty acid profile and sterol test—the two test that the researchers found to
11  be the most important to determine whether avocado oil is adulterated.[14]

12      21.     The inaccurate labeling of Defendant's product is highly material to
13  reasonable consumers.  Consumers who purchase avocado oil attach importance to the
14  representation that the products contain only avocado oil, because they ~~are choosing it~~
15  ~~and paying more for it, because they~~ believe ~~it~~avocado oil has benefits over other oils.
16  That importance is reflected in the fact that consumers choose~~They are choosing~~ to pay
17  more for avocado oil products, because they believe that th~~e products that~~e ~~product~~ they
18  are receiving ~~is~~ are ~~pure~~ unadulterated avocado oil, and not an oil that is adulterated with
19  cheaper oils.

20      22.     Defendant knows, or reasonably should know, that its labeling is misleading
21  customers.  Since at least 2020, the avocado oil industry has been aware that there are
22  problems with adulteration and purity of avocado oils.  *See, e.g.,*
23  https://www.sciencedirect.com/science/article/pii/S0956713520302449?.

24      23.     As a distributor and seller of cooking oils, Defendant is aware of industry
25  studies and trends, and aware of the problems with ~~impurity and~~adulteration in the

26  _____

27      [13] https://www.washingtonpost.com/wellness/2024/08/27/avocado-oil-
    adulteration-tests/

28      [14] *Id.*

First Amended Class Action Complaint       7              Case No. 2:24-cv-08211

avocado oil market.  Defendant is aware of, willfully blind to, or negligent with respect to the fact that the avocado oils that it sells are ~~impure~~adulterated.  Indeed, if Defendant tested its own avocado oils before putting them on the market, it would know that its avocado oils are ~~impure and~~ adulterated.  Given the pervasive problems with avocado oil adulteration, any reasonable maker, seller, or distributor of avocado oil would test its own products.

**D.    Defendant overcharges its consumers.**

24.    Defendant's false and misleading labeling allows Defendant to charge higher prices for its ~~products~~Products.  As explained above, consumers are willing to pay substantially higher prices for avocado oil.  If Defendant told the truth—that its oils are ~~impure, and~~adulterated with other oils—the price of its avocado oil would drop dramatically.  If consumers knew the truth—that the ~~P~~products did not contain ~~100% pure~~only avocado oil—they would not pay the current prices for the ~~P~~products and, in fact, would not purchase the Products at all.  Indeed, as described above, other oils sell for substantially less than ~~pure~~ unadulterated avocado oil, and consumers purchase avocado oil because of its unique health and culinary benefits.  Accordingly, if Defendant accurately labeled its ~~P~~products, consumers would not have purchased the Products or would have paid less for the Products.~~it would have had to lower the price, and Plaintiff and class members would have paid less.~~

25.    Thus, Plaintiff and each class member purchased a product they wouldn't have otherwise purchased and paid a substantial price premium because of Defendant's false and misleading labeling.  Plaintiff paid ~~more~~for a superior product worth more, and received an inferior product that was inaccurately labeled.  Plaintiff and the class therefore sustained an economic injury and purchased a Product they would not have otherwise purchased and paid a price premium as result of Defendant's false and misleading labels.

**E.    Plaintiff was misled and harmed by Defendant's false and misleading labeling.**

26.     On November 14, 2021 Plaintiff Edie Golikov purchased a bottle of Great Value Refined Avocado Oil from a Walmart store while living in Tarzana, California.  The package prominently stated "Avocado Oil" and had pictures of avocados.  The ingredient list also listed only avocado oil.  Ms. Golikov read and relied on these statements when purchasing the Product.  She would not have purchased the Product ~~at the price she paid~~ if she had known that the Product was contaminated with other oils, or she would have paid less for it. ~~and that it was not pure avocado oil.~~

27.     Plaintiff wants Walmart to fix its practices and sell avocado oil with accurate labeling.  If Walmart fixes their Products, so that the avocado oil is actually ~~pure~~ unadulterated and not contaminated with other oils, she would buy them again.  But given Walmart's past deception, Plaintiff cannot rely on Walmart's word alone that it has fixed the problem.  Plaintiff faces an imminent threat of harm because she will not be able to rely on Walmart's labels in the future, and will not be able to buy Great Value Avocado Oil, even if Walmart claims to have fixed the issue.  To buy Walmart's Products again, Plaintiff needs the Court to enter an order forbidding Walmart from claiming that its avocado oil contains only "avocado oil," unless the avocado oil actually is ~~pure~~ unadulterated and not contaminated with other oils.

**F.     No adequate remedy at law.**

28.     Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law.

29.     A legal remedy is not adequate if it is not as certain as an equitable remedy.  The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.  As one example, to obtain damages under the CLRA, a plaintiff must show that they complied with the CLRA's notice requirement for damages.  No such requirements exist to obtain restitution.  Because a plaintiff must make this additional showing to obtain damages, rather than restitution, the legal remedies are more uncertain.

First Amended Class Action Complaint      9                    Case No. 2:24-cv-08211

30.     In addition, the remedies at law available to Plaintiff are not equally prompt
or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury
trial will take longer, and be more expensive, than a bench trial.

**V.    Class Action allegations.**

31.     Plaintiff brings the asserted claims on behalf of the proposed class of:

- <u>Nationwide Class</u>: all persons who, within the applicable statute of
  limitations period, purchased Great Value Avocado Oil.
- <u>California Subclass</u>: all persons who, while in the state of California and
  within the applicable statute of limitations period, purchased Great Value
  Avocado Oil.

32.     The following people are excluded from the class: (1) any Judge or
Magistrate Judge presiding over this action and the members of their family; (2)
Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in
which the Defendant or its parents have a controlling interest and their current
employees, officers, and directors; (3) persons who properly execute and file a timely
request for exclusion from the class; (4) persons whose claims in this matter have been
finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and
Defendant's counsel, and their experts and consultants; and (6) the legal representatives,
successors, and assigns of any such excluded persons.

### *Numerosity & Ascertainability*

33.     The proposed class contains members so numerous that separate joinder of
each member of the class is impractical.  There are tens or hundreds of thousands of
class members.

34.     Class members can be identified through Defendant's sales records and
public notice.

### *Predominance of Common Questions*

35.     There are questions of law and fact common to the proposed class.
Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

### *Typicality & Adequacy*

36.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased Defendant's Great Value Avocado Oil Products.  There are no conflicts of interest between Plaintiff and the class.

### *Superiority*

37.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI.    Claims.**

### <u>First Cause of Action:</u>

### **Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq.**

### **(By Plaintiff and the California Subclass)**

38.    Plaintiff incorporates each and every factual allegation set forth above.

39.    Plaintiff brings this cause of action individually and on behalf of herself and members of the California Subclass.

40.    Defendant has violated Sections 17500 and 17501 of the Business and Professions Code.

41. Defendant has violated, and continues to violate, Section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and subclass members.

42. As alleged in detail above, Defendant falsely advertised its products by falsely representing that Great Value Avocado Oil is pure avocado oil. It did this by prominently labeling the bottle "Avocado Oil," featuring avocados on the bottle, and also by listing only "Avocado Oil" in the ingredients list.

43. Defendant's misrepresentations were likely to deceive, and did deceive, Plaintiff and other reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were false and misleading.

44. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Defendant's Products. Classwide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the products.

45. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decisions of subclass members.

46. Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Great Value Avocado Oil if they had known that the Product is impure and contaminated with a different oil or oils, and (b) they overpaid for the Product because it was sold at a price premium due to the representation.

## **Second Cause of Action:**

### **Violation of California's Consumer Legal Remedies Act**

### **(by Plaintiff and the California Subclass)**

47. Plaintiff incorporates each and every factual allegation set forth above.

48. Plaintiff brings this cause of action individually and on behalf of herself and members of the California Subclass.

49.     Plaintiff and the class are "consumers," as the term is defined by California Civil Code § 1761(d).

50.     Plaintiff and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

51.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

52.     As alleged more fully above, Defendant has violated the CLRA by falsely representing that Great Value Avocado Oil contains only avocado oil, when in fact the products are impure and contaminated with a different oil or oils. Defendant knew, or should have known through the exercise of reasonable care, that these statements were false and misleading.

53.     Defendant violated, and continues to violate, Section 1770(a)(5) of the California Civil Code by representing that goods have "characteristics, ingredients, uses, benefits, or quantities which they do not have." Defendant represents that its Products have the characteristic of being avocado oil and only avocado oil, when in reality they are impure and mixed or substituted with a different oil or oils.  Defendant represents that its Product contains only avocado oil, when in fact it is adulterated with other oils.

54.     Defendant violated, and continues to violate, Section 1770(a)(7) of the California Civil Code by "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are another." Defendant represents that its Products meet the standard of containing only avocado oil, when in reality they are impure and mixed or substituted with a different oil or oils.  Defendant represents that its Product contains only avocado oil, when in fact it is adulterated with other oils.

55.     Defendant violated, and continues to violate, Section 1770(a)(9) of the California Civil Code by advertising "goods…with intent not to sell them as advertised."

First Amended Class Action Complaint     13          Case No. 2:24-cv-08211

1  Defendant advertises that its Product contains only avocado oil, when in fact it is

2  adulterated with other oils.

3       56.    Defendant's representations were likely to deceive, and did deceive, Plaintiff

4  and reasonable consumers. Defendant knew, or should have known through the exercise

5  of reasonable care, that these statements were inaccurate and misleading.

6       57.    Defendant's misrepresentations were intended to induce reliance, and

7  Plaintiff saw, read, and reasonably relied on them when purchasing the Products.

8  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

9       58.    In addition, subclass-wide reliance can be inferred because Defendant's

10  misrepresentations were material, i.e., a reasonable consumer would consider them

11  important in deciding whether to buy the Products.

12       59.    Defendant's misrepresentations were a substantial factor and proximate

13  cause in causing damages and losses to Plaintiff and the subclass.

14       60.    Plaintiff and the subclass were injured as a direct and proximate result of

15  Defendant's conduct because: (a) they would not have purchased Great Value Avocado

16  Oil if they had known that the Product is impure and contaminated with a different oil or

17  oils, and (b) they overpaid for the Product because it was sold at a price premium due to

18  the representation.

19       61.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Ms. Golikov, on

20  behalf of herself and all other members of the subclass, seeks injunctive relief.

21       62.    CLRA § 1782 NOTICE. On September 20, 2024, a CLRA demand letter

22  was sent to Defendant's California registered agent and Arkansas headquarters via

23  certified mail (return receipt requested), that provided notice of Defendant's violations of

24  the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or

25  deceptive practices alleged here. If Defendant does not fully correct the problem for

26  Plaintiff and for each member of the California Subclass within 30 days of receipt,

27  Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA.

28       63.    A CLRA venue declaration is attached.

First Amended Class Action Complaint    14          Case No. 2:24-cv-08211

**Third Cause of Action:**

**Violation of California's Unfair Competition Law**

**(by Plaintiff and the California Subclass)**

64.     Plaintiff incorporates each and every factual allegation set forth above.

65.     Plaintiff brings this cause of action individually and on behalf of herself and members of the California Subclass.

66.     Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong.***

67.     Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

***The Fraudulent Prong.***

68.     As alleged in detail above, Defendant's representations that its Products contained only avocado were false and misleading. Its labeling is likely to deceive, and did deceive, Plaintiff and other reasonable consumers

***The Unfair Prong.***

69.     Defendant's conduct, as detailed above, also violated the "unfair" prong of the UCL.

70.     Defendant's conduct caused substantial injury to Plaintiff and subclass members. The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct (which is none). Inaccurately labeled avocado oil has no public utility. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading labels only injure healthy competition and harm consumers.

71.     Plaintiff and the subclass could not have reasonably avoided this injury. As alleged above, Defendant's labeling is false and misleading. Its labeling is likely to deceive, and did deceive reasonable consumers like Plaintiff.

72.     Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

73.     Defendant's conduct violated the public policy against false and misleading labels, which is tethered to the CLRA and the FAL.

*   *   *

74.     For all prongs, Defendant's misrepresentations and omissions were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products. In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

75.     Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of subclass members.

76.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Great Value Avocado Oil if they had known that the Product is impure and contaminated with a different oil or oils, and (b) they overpaid for the Product because it was sold at a price premium due to the representation.

## Fourth Cause of Action:

### Breach of Express Warranty

### (by Plaintiff and the Nationwide Class)

77.     Plaintiff incorporates each and every factual allegation set forth above.

78.     Plaintiff brings this cause of action individually and on behalf of herself and the Nationwide class. In the alternative, Plaintiff brings this claim on behalf of herself and members of the California Subclass.

79.     Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Great Value Avocado Oil, issued material, written warranties by representing that the Products contain only "Avocado Oil." These were affirmations of fact about the Products (i.e., that they contained only avocado oil) and a promise relating to the goods.

80.     This warranty was part of the basis of the bargain and Plaintiff and class members relied on this warranty.

81.     In fact, Great Value Avocado Oil does not conform to the above-referenced representation because, as alleged in detail above, Defendant's labeling is inaccurate and the Products have been shown to be impure and contaminated with a different oil or oils. It is not pure avocado oil. Thus, the warranty was breached.

82.     Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on September 20, 2024.

83.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Great Value Avocado Oil if they had known that the Product is impure and contaminated with a different oil or oils, and (b) they overpaid for the Product because it was sold at a price premium due to the representation.

## Fifth Cause of Action:

### Negligent Misrepresentation

### (by Plaintiff and the California Subclass)

84.     Plaintiff incorporates each and every factual allegation set forth above.

85.     Plaintiff brings this cause of action individually and on behalf of herself and the California Subclass.

86.     As alleged more fully above, Defendant made false representations to Plaintiff and class members concerning its statements that the Products contain only avocado oil, and that they only contain avocado oil.

87.     These representations were false.

88.     When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

89.     Defendant intended that Plaintiff and class members rely on these representations, and Plaintiff and class members read and reasonably relied on them.

90.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Great Value Avocado Oil.

91.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

92.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Great Value Avocado Oil if they had known that the Product is impure and contaminated with a different oil or oils, and (b) they overpaid for the Product because it was sold at a price premium due to the representation.

### Sixth Cause of Action:

### Intentional Misrepresentation

### (by Plaintiff and the Nationwide Class)

93.     Plaintiff incorporates each and every factual allegation set forth above.

94.     Plaintiff brings this cause of action individually and on behalf of herself and the Nationwide class. In the alternative, Plaintiff brings this claim on behalf of herself and members of the California Subclass.

95.     As alleged more fully above, Defendant made false representations to Plaintiff and class members concerning its statements that the Products contained only avocado oil.

96.     These representations were false.

97.     When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

98.     Defendant intended that Plaintiff and class members rely on these representations, and Plaintiff and subclass members read and reasonably relied on them.

99.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Great Value Avocado Oil.

100.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

101.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Great Value Avocado Oil if they had known that the Product is impure and contaminated with a different oil or oils, and (b) they overpaid for the Product because it was sold at a price premium due to the representation.

**Seventh Cause of Action:**

**Quasi-Contract**

**(by Plaintiff and the Nationwide Class)**

102.     Plaintiff incorporates each and every factual allegation set forth above.

103.     Plaintiff brings this cause of action in the alternative to her Breach of Express Warranty claim (Count 5) on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this claim on behalf of herself and members of the California Subclass.

104.     As alleged in detail above, Defendant's false and misleading representations caused Plaintiff and the class to pay a price premium for the Products.

105.     In this way, Defendant received a direct and unjust benefit, at the expense of Plaintiff and the class.

106.     Plaintiff and the class seek the equitable return of this unjust benefit.

**VII.   Relief.**

107.     Plaintiff seeks the following relief for himself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;

1       •   Restitution;

2       •   Rescission;

3       •   Disgorgement, and other just equitable relief;

4       •   Pre- and post-judgment interest;

5       •   An injunction prohibiting Defendant's deceptive conduct, as allowed by

6          law;

7       •   Reasonable attorneys' fees and costs, as allowed by law;

8       •   Any additional relief that the Court deems reasonable and just.

9 **VIII.  Demand for Jury Trial.**

10       108.   Plaintiff demands the right to a jury trial on all claims so triable.

11

12 Dated: <u>December 30</u>, 2024          Respectfully submitted,

13                           By: <u>/s/</u> ~~Christin Cho~~ <u>Richard Lyon</u>

14                           <u>Richard Lyon (Cal. Bar No. 229288)</u>

15                           <u>rick@dovel.com</u>

16                           <u>Stephen D. Andrews (Cal. Bar No. 354327)</u>

17                           <u>stephen@dovel.com</u>

                          Christin Cho (Cal. Bar No. 238173)

18                           christin@dovel.com

19                           DOVEL & LUNER, LLP

                          201 Santa Monica Blvd., Suite 600

20                           Santa Monica, California 90401

21                           Telephone: (310) 656-7066

                          Facsimile: (310) 656-7069

22

23                           *Attorney<u>s</u> for Plaintiff*

24

25

26

27

28

# EXHIBIT J

# EXHIBIT B

Richard Lyon (Cal Bar No. 229288)
rick@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>WALMART INC.,<br><br>*Defendant*. | Case No. 2:24-cv-08211-RGK-MAR<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT WALMART INC.'S FIRST SET OF INTERROGATORIES** |

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff Edie Golikov ("Plaintiff") provides the following objections and responses to Defendant's first set of interrogatories.

Plaintiff responds based on information currently known and available to Plaintiff and her counsel as of the date of these objections and responses. Plaintiff may amend or supplement these responses as additional discovery is taken, facts are learned, research is completed, and arguments are made.

By answering an interrogatory, Plaintiff does not concede that the information given is properly discoverable or admissible. Plaintiff reserves the right to object to the introduction of responses into evidence for any purpose.

## General Objections

Plaintiff objects to the extent that any interrogatory requests information that is protected from discovery under the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privilege or other immunity. Plaintiff will not provide privileged information.

Certain definitions, when incorporated into the interrogatories below, render the requests overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiff objects specifically to the breadth of such interrogatories below and states the scope to which Plaintiff will respond.

Plaintiff will respond as required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and this Court's orders, but will not comply with any instructions that exceed those requirements.

## Objections and Responses to Each Interrogatory

**INTERROGATORY NO. 1:** Identify all accounts that HOUSEHOLD MEMBERS, including YOU, have created on Walmart.com during the past 6 years, including the account numbers, username, email addresses, and telephone numbers associated with the account, when the account was created, and the date of any purchases made through that account.

**Response to 1:** Plaintiff incorporates the General Objections recited above as if fully stated here. Plaintiff objects to this request as overbroad and seeking information that is not relevant to any party's claims or defenses. Except as objected to, Plaintiff identifies the following information: Plaintiff created an account on Walmart.com associated with username: egolikov@cs.com, email: egolikov@cs.com, and phone number: (818) 943-6390. Plaintiff typically shops in person at Walmart stores, including when she would purchase Walmart Great Value Avocado Oil. Plaintiff is aware of using the online account on November 14, 2021 to purchase Walmart Great Value Avocado Oil.

**INTERROGATORY NO. 2:** Identify all HOUSEHOLD MEMBERS' (including YOU) club, membership, loyalty, and/or rewards cards with WALMART during the past 6 years, including the associated name, telephone number, email address, and physical address; the account or rewards number; the date the HOUSEHOLD MEMBER signed up for the card and whether it was done online, over the phone, or in person; and the date of any purchases made through or associated with that card.

**Response to 2:** Plaintiff incorporates the General Objections recited above as if fully stated here. Plaintiff objects to this request as overbroad and seeking information that is not relevant to any party's claims or defenses. Except as objected to, Plaintiff incorporates its response to Interrogatory No. 1. Plaintiff further states that, other than her general online account, Plaintiff has not signed up for a Walmart club, membership, loyalty, or rewards card.

**INTERROGATORY NO. 3:** Identify all contact information for HOUSEHOLD MEMBERS, including YOU, during the past 6 years, including all email addresses, telephone numbers, WhatsApp numbers, Google Voice numbers, Slack ID, Telegram ID, Facebook messenger accounts, or any other communication platform identification, such as a screenname.

**Response to 3:** Plaintiff incorporates the General Objections recited above as if fully stated here. Plaintiff objects to this request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information that is not relevant to any party's claims or defenses.

Except as objected to, Plaintiff responds as follows: (i) Plaintiff's email address is egolikov@cs.com; (ii) Plaintiff's telephone number is (818) 943-6390; (iii) Plaintiff's WhatsApp number is (818) 943-6390; and (iv) Plaintiff's Facebook username is egolikov@cs.com. Plaintiff's Household Members include Alex Golikov. Alex Golikov's email address is agolikov13@cs.com; (ii) Alex Golikov's telephone number is (818) 481-0466; and (iii) Alex Golikov's WhatsApp number is (818) 481-0466.

**INTERROGATORY NO. 4:**

Identify all addresses where YOU have resided over the past 15 years.

**Response to 4:**

Plaintiff incorporates the General Objections recited above as if fully stated here. Plaintiff objects to this request as seeking information that is not relevant to any party's claims or defenses, including for periods of time not relevant here.

Except as objected to, Plaintiff responds as follows: Plaintiff's has resided at the following address since 1993: 18322 Collins Street, Unit #C, Tarzana, CA 91356.

Dated: April 17, 2025

Respectfully submitted,

By: /s/ *Richard Lyon*

Richard Lyon (Cal Bar No. 229288)
rick@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorney for Plaintiff*

# CERTIFICATE OF SERVICE

     I hereby certify that on April 17, 2025, the foregoing document is being served by

e-mail on counsel of record.

                                           /s/ *Richard Lyon*
                                         Richard Lyon

## <u>Verification</u>

I declare under penalty of perjury under the laws of the United States of American that the foregoing is true and correct, to the best of my knowledge, as to my personal responses to these interrogatories.

Dated:   **04/17/2025**                 Signature:_____

Edie Golikov

# EXHIBIT K

APP088

APP089

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated, | Case No. 24-cv-08211-RGK-MAR |
| Plaintiff, | **DECLARATION OF EDIE GOLIKOV IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART'S MOTION TO COMPEL ARBITRATION** |
| vs. | |
| WALMART INC., | |
| Defendant. | |

## <u>DECLARATION OF EDIE GOLIKOV</u>

I, Edie Golikov, declare and state as follows:

    1.    I am the named Plaintiff in this action. I live in Los Angeles County, California. I make this declaration from my own personal knowledge and could competently testify to the following facts.

    2.    I have purchased bottles of Great Value Avocado Oil from both the online Walmart store and physical Walmart stores. I have purchased Great Value Avocado Oil in person from brick-and-mortar Walmart stores multiple times a year for years (including between 2021 and 2024), including from the Walmart store in West Hills, California, near my home in Tarzana, California. Each time I purchased the product, the package prominently stated "Avocado Oil." I read and relied on this statement, and believed I was purchasing pure unadulterated avocado oil. Since becoming aware that Walmart Great Value Avocado Oil is adulterated, I stopped purchasing avocado oil from Walmart.

    3.    I have an account with Walmart.com. I set up the account under my name "Edie Golikov" with my "Tarzana" address. On the following pages are two photos of my computer screen I took while on my Walmart.com account to show this identifying information from my account.

1

APP090

Docusign Envelope ID: 4B35A1A7...

# Contact Info and Password

## Your personal information

Full name

Edie Golikov                                                    Edit

Email address

egolikov@cs.com                                                 Edit

✓ Verified

Phone number

(xxx) xxx-6390                                                  Edit

✓ Verified

Password

••••••••••••                                                    Edit

GOLIKOV DECLARATION

APP091

Docusign Envelope ID: 4B4634A7-E2C3-4FE2-855A-1AF7CCE0F9BA

**Addresses**

+ Add address

Edie Golikov
18322 Collins Street Unit#C, Tarzana, CA 91356

I declare under penalty of perjury that the foregoing is true and correct.
Executed this 19th day of May, 2025, at Tarzana, California.

Dated: 5/19/2025

By: _Edie Golikov_
4599E24D18334C2...

Edie Golikov

3

APP092

# EXHIBIT L

APP093

# EXHIBIT D

   

# Order details

#102000234915620
Placed at 11:30 PM on Oct 9, 2023

**Fix an issue**
Get help with missing or
damaged items and more

**Start a return**
Return to a store or print a free
return label

**Buy it again**
Choose items from this
purchase to buy again

**Get help**
Find relevant help content or
contact us

## Picked up
Order Pickup at Woodland Hills



**Roma Toma...**
$1.39
Qty 1



**Sandwich B...**
$1.39
Qty 1



**Chosen Foods 1...**
$13.79

APP095    1/1

GOLIKOV000001

# Nov 14, 2021 order | Order# 5892143-705357

Print | Have an issue with your order? Get help

---



**Delivery**
## Delivered on Nov 16

Delivery

**1 item**

---



Great Value Refined Avocado Oil, 25.5 fl oz          **$8.23**

Qty 1

( **Add to cart** )

Review item

---

## More from this order

---



Delivery from store
## Delivered on Nov 16

**1 item**

---



Great Value Fresh Seal Double Zipper Storage          **$2.97**
Bags, Gallon, 60 Count

5.0¢/ea

Qty 1

---

GOLIKOV000002

# EXHIBIT M

APP097

JACOB M. HARPER (State Bar No. 259463)
  jacobharper@dwt.com
HEATHER F. CANNER (State Bar No. 292837)
  heathercanner@dwt.com
JOSEPH ELIE-MEYERS (State Bar No. 325183)
  josepheliemeyers@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
WALMART INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>WALMART INC.,<br><br>        Defendant. | Case No. 2:24-CV-08211-RGK-MAR<br><br>Assigned to Honorable R. Gary Klausner<br><br>**DECLARATION OF KARTIKAY SAHAY IN SUPPORT OF DEFENDANT WALMART INC.'S MOTION TO COMPEL ARBITRATION**<br><br>Date:    June 9, 2025<br>Time:    9:00 a.m.<br>Ctrm.:   850<br><br>[*Notice of Motion and Motion to Compel Arbitration with Memorandum of Points and Authorities; Declarations of Jacob M. Harper and Stacey Krsulic; and Proposed Order filed concurrently*]<br><br>Action Filed: September 24, 2024 |

DECLARATION OF KARTIKAY SAHAY ISO
WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

APP098

Docusign Envelope ID: FC1B9E1E-5F3C-4C25-88B6-B843448F1489

## <u>DECLARATION OF KARTIKAY SAHAY</u>

I, Kartikay Sahay, declare and state as follows:

1.      I am employed as a Senior Manager, Product Management at Walmart Inc. (Walmart).  I make this declaration in support of Walmart's Motion to Compel Arbitration.  The facts set forth below are based upon my personal knowledge, my familiarity with Walmart's practices, and my review of records kept in the ordinary course of Walmart's business, and if called as a witness, I could and would competently testify to them.

2.      I have worked at Walmart since June 2016.  My job responsibilities have involved, among other things, leading the teams responsible for the cart and checkout process on Walmart.com.  As part of my job responsibilities, I am familiar with the checkout processes on Walmart's website.  Walmart, in its ordinary course of doing business, keeps and maintains records of its customers and their online accounts.  Based on information provided to me by counsel (including information provided by plaintiff Edie Golikov on April 17, 2025, relating to her product purchases in this case), I have searched for and reviewed the records regarding Ms. Golikov's Walmart account.  In particular, I searched Walmart's records using Ms. Golikov's purported email address associated with her Walmart account to assess the design of the website when she made her Great Value Avocado Oil purchases.

3.      Walmart's records show Ms. Golikov purchased Great Value Avocado Oil from Walmart.com on November 14, 2021.  Walmart's records show Ms. Golikov has made at least 53 purchases from Walmart.com, including 11 total purchases of Great Value Avocado Oil.  Her account remains active, making online purchases as of April 2025.

4.      In making all her Walmart.com purchases, Ms. Golikov—like all other online purchasers—necessarily undertook one of the two purchase processes set forth below.  In particular, as detailed further below, to purchase an item through

1

APP099

Walmart.com, a customer must either (1) click a "Buy now" button, or (2) add the item to her cart and complete a checkout process (Check Out Process). For the entirety of the period from January 1, 2021, to the present, there has been no other method of making a purchase on Walmart.com except the two methods detailed below. Through either method, the customer must signify her agreement to Walmart's online Terms of Use. Ms. Golikov did so every time she purchased something on Walmart's website.

5. Clicking "Buy now" allows a customer to purchase a single item quickly. When a customer clicks "Buy now" on the item's listing on Walmart.com, a pop-up screen appears on the right side of the page. The pop-up screen includes the item name, arrival time estimate, shipping address, payment method, and estimated total. At the bottom of the pop-up screen, the customer is presented with the following sentence and a blue "Place order" button: "By placing this order, you agree to our Privacy Policy and Terms of Use" (Acknowledgement Language). The Acknowledgement Language is located directly adjacent to the blue "Place order" button, as shown in this example image:



6. The words "Privacy Policy" and "Terms of Use" within the Acknowledgement Language are hyperlinks to Walmart's Privacy Policy and Walmart's Terms of Use. If a customer clicks on the words "Privacy Policy" or "Terms of Use"—which are underlined—the customer is taken to Walmart's Privacy Policy or Terms of Use, respectively. To complete the order, the customer must click the blue "Place order" button.

2

DECLARATION OF KARTIKAY SAHAY ISO
WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899
APP-100

7.      The other way to shop on Walmart.com is through the shopping cart feature, allowing a customer to gather multiple items before checking out.  The shopping cart feature requires undergoing the Check Out Process.

8.      During the first step of the Check Out Process, the customer is presented with a list of the items the customer has in her shopping cart and an estimated total for the order.  To proceed with the order, the customer must click a "Continue to checkout" button.  After clicking "Continue to checkout," the customer is taken through the next step of the Check Out Process.  The customer is presented with information on delivery or pickup options, payment method, and a summary of other order details, including subtotal and any delivery charges, taxes, or fees.

9.      At the final stage of the Check Out Process, the customer is presented with the Acknowledgement Language, located directly adjacent to the blue "Place order" button, as shown in this example image:



10.      As with a "Buy now" purchase, the words "Privacy Policy" and "Terms of Use" within the Acknowledgement Language are hyperlinks to Walmart's Privacy Policy and Walmart's Terms of Use.  If a customer clicks on the underlined words "Privacy Policy" or "Terms of Use," the customer is taken to Walmart's Privacy Policy or Terms of Use, respectively.  To complete the Check Out Process, the customer must click the blue "Place order" button.

//

//

//

3

DECLARATION OF KARTIKAY SAHAY ISO
WALMART'S MOTION TO COMPEL ARBITRATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899
APP-101

Docusign Envelope ID: FC188F1E-5E3A-44E5-868B-99E9B414889C

Docusign Envelope ID: FC188F1E-5FBB...

11.     Based on my review of Walmart's records, I understand the Acknowledgement Language for the respective purchase processes was first added in 2015 and that it has remained in substantially identical format since it was introduced.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 8, 2025, at Sunnyvale, California.

_____
Kartikay Sahay

4

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

APP-102

# EXHIBIT N

Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>WALMART INC.,<br><br>*Defendant*. | Case No. 2:24-cv-08211-SSS-MAR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART'S MOTION TO COMPEL ARBITRATION**<br><br>Date: June 9, 2025<br>Time: 9:00 a.m.<br>Dept.: Courtroom 850<br><br>Assigned to the Hon. R. Gary Klausner<br>Complaint filed:  September 24, 2024 |

# Table of Contents

I.   Introduction. ...................................................................................1

II.  Argument. ......................................................................................1

A.   Plaintiff purchased Walmart avocado oil in person at physical
     Walmart stores, and did not assent to arbitrate claims relating to in-
     store purchases. ............................................................................1

B.   Walmart waived its alleged right to compel arbitration. ...........................4

1.   Walmart had knowledge of its alleged right to compel
     arbitration. ................................................................................5

2.   Walmart acted inconsistently with its alleged right to compel
     arbitration. ................................................................................6

III. Conclusion. .....................................................................................8

# Table of Authorities

**Cases**

*Hill v. Xerox Bus. Servs., Ltd. Liab. Co.*,
  59 F.4th 457 (9th Cir. 2023)...................................................................4, 5, 6, 7

*Hoffman Constr. Co. v. Active Erectors & Installers, Inc.*,
  969 F.2d 796 (9th Cir. 1992)..............................................................................5

*Johnson v. Walmart Inc.*,
  57 F.4th 677 (9th Cir. 2023).......................................................................1, 2, 3

*Kelly v. Pub. Util. Dist. No. 2*,
  552 Fed. App'x 663 (9th Cir. 2014) ...................................................................7

*Martin v. Yasuda*,
  829 F.3d 1118 (9th Cir. 2016).......................................................................1, 4, 6, 7

*Plows v. Rockwell Collins, Inc.*,
  812 F. Supp. 2d 1063 (C.D. Cal. 2011)...............................................................7

APP106

### Certificate of Compliance with Word Limitation

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 2,373 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 19, 2025                    By: */s/ Richard Lyon*_____
                                            Richard Lyon

# I.    Introduction.

Walmart's motion to compel arbitration fails for two reasons: (1) it fails to establish assent for Plaintiff's in-store purchases, and (2) it is waived.

First, controlling Ninth Circuit law (omitted from Walmart's motion) holds that there is no assent here: Walmart's arbitration agreement is "clear" that "by agreeing to the Terms of Use" in the online purchasing process, a Plaintiff does "not assent to arbitrate claims that might arise out of a separate, in-store purchase." *Johnson v. Walmart Inc*., 57 F.4th 677, 682 (9th Cir. 2023).  Plaintiff Golikov made purchases online, but she also routinely made separate, in-store purchases of Walmart avocado oil during the statutory period.  There is no assent for her claims arising out of these purchases.

Second, Walmart waived any ability to arbitrate.  When this lawsuit was filed, Walmart had a choice.  It could move to compel arbitration, or it could take advantage of being in federal court.  It chose the latter.  It litigated its motion to dismiss (and lost) and litigated class certification (and lost).  And when, like here, a defendant "delay[s] seeking arbitration until after the district court rules against it in whole or in part," it "waive[s] [its] right to compel arbitration." *Martin v. Yasuda*, 829 F.3d 1118, 1128 (9th Cir. 2016).

# II.    Argument.

## A.    Plaintiff purchased Walmart avocado oil in person at physical Walmart stores, and did not assent to arbitrate claims relating to in-store purchases.

"As the party seeking to compel arbitration, Walmart bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson v. Walmart Inc*., 57 F.4th 677, 681 (9th Cir. 2023) (citation omitted). Walmart cannot meet its burden.  Controlling Ninth Circuit law precludes it.

Plaintiff Golikov routinely purchased Walmart avocado oil during the statutory period in person at physical Walmart stores. Dkt. 66-4 (Plaintiff's Responses to

Second Set of Interrogatories) at 3 ("Plaintiff purchased Walmart Great Value Avocado Oil multiple times a year for years (including between 2021 and 2024) primarily in person at Walmart stores, including the Walmart store in West Hills, California (near her Tarzana home)"); Declaration of Edie Golikov, ¶ 2 (same).

So the relevant question for this motion is: Does the online arbitration agreement (entered as part of the click-through process for Walmart.com purchases) also apply to separate in-store purchases made at Walmart?  The Ninth Circuit addressed this exact issue, and held that the answer is No.  Walmart.com's online arbitration agreement does not apply to "claims that might arise out of a separate, in-store purchase." *Johnson*, 57 F.4th at 681-83.  Remarkably, although this case is directly on point, Walmart's motion makes no mention of it.

In *Johnson*, "Walmart maintains that because [plaintiff] agreed to the arbitration provision of the Terms of Use when he purchased [products] from Walmart.com, those Terms encompass this lawsuit, which concerns his in-store purchase."  *Id. at* 680.  "By Walmart's logic, the Terms of Use trigger the existence of an independent, broad arbitration agreement between Walmart and users of Walmart Sites that applies to any interaction between Walmart and the customer, regardless of whether the dispute arises out of an online purchase or any provision of the Terms of Use."  *Id.*

The Ninth Circuit rejected Walmart's argument because the "language and subject matter of the [online] contract make clear that by agreeing to the Terms of Use, [the plaintiff] did not assent to arbitrate claims that might arise out of a separate, in-store purchase."  *Id.* at 682.  This case concerns the same online Terms of Use, and the same language and subject matter considered by the *Johnson* court are present here. *See* Lyon Decl., Ex. A (Walmart.com's 2017 Terms of Use at issue in *Johnson* case); Ex. B (Walmart.com's 2021 Terms of Use at issue here); Ex. C (comparison showing changes between the two).

*Johnson* explained: "The Terms of Use have a clear, delineated purpose—to regulate use of Walmart's online resources and content. The introductory text of the

Terms of Use provides: "'These Terms of Use govern your access to and use of all Walmart Sites.'  Section 20 of the Terms of Use contains a mandatory arbitration provision requiring that '. . . all disputes arising out of or related to these Terms of Use or any aspect of the relationship between you and Walmart . . . will be resolved through final and binding arbitration.'"  *Johnson*, 57 F.4th at 679.  This is the same language reproduced, and relied upon, by Walmart in its motion.  Mot. 6-7; Lyon Decl., Ex. B, ¶¶ 1, 20 (highlighting language).

Analyzing this language, *Johnson* held: "The agreement's provisions, therefore, apply only to a consumer's use of and access to Walmart Sites." *Johnson*, 57 F.4th at 682.  And a physical Walmart store "is not a 'Walmart Site' under th[e] definition" of "Walmart Sites" in the Terms of Use.  *Id.*; Lyon Decl., Ex. B, ¶ 1 (showing same definition for Walmart sites in 2021 Terms of Use).  So, the physical Walmart stores where Plaintiff Golikov purchased Walmart avocado oil in this case are likewise not Walmart Sites.

Also, Walmart cannot assert that the language "among other things" in the statement, "These Terms of Use govern your access to and use of all Walmart Sites among other things" (Dkt. 66-9), encompasses in-store purchases because the Terms never mention in-store purchases as an "other thing."  As *Johnson* explains, "the Terms of Use cover subject matter such as online user accounts, the content of Walmart Sites and their use, monitoring of user activity on Walmart Sites, the placing of online transactions, and the shipping and delivery of online orders. No provision of the Terms of Use addresses any form of in-store engagement with Walmart." *Johnson,* 57 F.4th at 682; Lyon Decl., Ex. C (redline of changes made to 2021 Terms of Use, showing no additions relating to in-store engagement).

*Johnson* therefore concluded—in a holding that controls here—the "language and subject matter of the contract make clear that by agreeing to the Terms of Use, [plaintiff] did not assent to arbitrate claims that might arise out of a separate, in-store purchase." *Johnson*, 57 F.4th at 681-83.

Walmart argues that "Courts across the country have compelled arbitration based on these same Terms of Use." Mot. 1; *id.* at 12. But none compelled arbitration when, like here, the Plaintiff separately made in-store purchases that give rise to the asserted claims. And, in this District, it would be error to do so because controlling law precludes it. Walmart's motion to compel arbitration should be denied.

### B.   Walmart waived its alleged right to compel arbitration.

Walmart's motion should be denied for a second, independent reason: waiver.

"A party may not delay seeking arbitration until after the district court rules against it in whole or in part; nor may it belatedly change its mind after first electing to proceed in what it believed to be a more favorable forum. Allowing it to do so would result in a waste of resources for the parties and the courts and would be manifestly unfair to the opposing party." *Martin v. Yasuda*, 829 F.3d 1118, 1128 (9th Cir. 2016). Walmart delayed seeking arbitration until after the Court ruled against it on its motion to dismiss and on class certification, and then changed its mind into seeking a new forum. Allowing arbitration after this delay would be a waste of the parties' and court's resources, and prejudicial to Plaintiff.

Ninth Circuit law holds that a "party waives its right to compel arbitration when (1) it has knowledge of the right, and (2) it acts inconsistently with that right." *Hill v. Xerox Bus. Servs., Ltd. Liab. Co.*, 59 F.4th 457, 460 (9th Cir. 2023).[1] As shown below, Walmart knew about the arbitration provision and acted inconsistently with its alleged right to compel arbitration.

---

[1] The Ninth Circuit used to impose a third requirement of prejudice to the nonmoving party, but removed that element after the Supreme Court rejected it in *Morgan v. Sundance, In*c., 596 U.S. 411 (2022). *See Hill*, 59 F.4th at 460.

### 1. Walmart had knowledge of its alleged right to compel arbitration.

Walmart bases its motion to compel arbitration on an arbitration provision in the Terms of Use on its website. Mot. 1. Walmart had knowledge of that arbitration provision, because the provision was in Walmart's own Terms of Use on Walmart's own website. *See, e.g., Hoffman Constr. Co. v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992) (knowledge requirement satisfied where the "contract itself called for arbitration"). Moreover, although not necessary to satisfy this requirement, Walmart had the ability to move to enforce its arbitration provision from the outset of this case. *See Hill*, 59 F.4th at 469 (knowledge requirement satisfied even where there was no "present ability to move to enforce an arbitration agreement"). Instead, Walmart chose to wait until the parties had already spent significant resources litigating this case in federal court.

In a failed attempt to explain its delay in seeking arbitration, Walmart argues that it was unaware that Ms. Golikov purchased Walmart products online until she "contradicted" the allegation that she purchased "from a Walmart store" by providing further details of her purchases (both online and in person) in her interrogatory response. Mot. 3. Every part of this argument is wrong.

To begin, there is no contradiction here. The Complaint did not say Ms. Golikov purchased avocado oil in person at a physical Walmart store. Instead, it referred generally to a "Walmart store," which encompasses both physical in-person Walmart stores and the online Walmart store.[2] Dkt. 1 (Complaint) ¶ 6. And Walmart was well aware that Ms. Golikov may have purchased from the Walmart online store. *See* Dkt. 44 at 14 (stating in its class certification opposition brief, filed months before

---

[2] Consumers, media, and Walmart itself regularly refer to Walmart.com as a Walmart store. https://www.cnn.com/2021/05/04/business/walmart-marketplace-amazon (referring to "Walmart's online store"); https://www.walmart.com/global/seller/101016462 ("Welcome to our Online Walmart Store").

receiving Plaintiff's interrogatory response, that "Golikov herself may be subject to the arbitration agreement" due to online purchases). Walmart's suggestion that it could not know this until she provided her "email address and phone number" (Mot. 3) is absurd. Although "email address and phone number" are identifying information for Walmart.com accounts, so too are "name" and "address." Golikov Decl., ¶ 3 (showing images illustrating information required to set up Ms. Golikov's online account). Ms. Golikov set up her Walmart.com account under her name "Edie Golikov" and her home address in "Tarzana." *Id.* This is uniquely identifying information Walmart has possessed since this lawsuit was filed. See Dkt. 1 (Complaint), ¶ 6 ("Plaintiff Edie Golikov … liv[es] in Tarzana, California.") Walmart's suggestion that it could not run a simple Google search (which reveals the existence of one "Edie Golikov" living in "Tarzana") is not credible. The truth is Walmart preferred litigating this case in district court until adverse rulings caused it to change its mind. This is not allowed.

## 2. Walmart acted inconsistently with its alleged right to compel arbitration.

Inconsistent acts resulting in waiver are not limited to "express denials of the right to arbitrate." *Hill*, 59 F.4th at 471. Rather, courts consider "the totality" of the party's actions. *Id.* (quotation omitted). And when those actions show a choice to "take advantage of being in federal court" and "delay [the] right to compel arbitration," a party cannot later seek to compel arbitration. *Id.* (quotation omitted). Actions that are "implicitly inconsistent" with arbitration rights, and therefore waive them, include "filing a motion to dismiss, engaging in discovery, and drafting a joint stipulation to structure the litigation." *Id.* at 471 n.17 (citing *Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016)). *Walmart* did all of these things, and more, without ever moving to compel arbitration.

Start with its motion to dismiss. With no mention of an intent to arbitrate, Walmart filed its motion to dismiss (Dkt. 37), the parties fully briefed it (Dkt. 41, 53) and the Court ruled on it (Dkt. 63). None of this is consistent with a party intending to

arbitrate rather than litigate in federal court.

Walmart's other actions reaffirmed its intent that this case would remain in this Court.  In a Joint Status Report, Walmart proposed a case schedule for litigating this case in this Court.  Dkt. 40-1; *see Hill*, 59 F.4th at 471 n.17 (proposing to "structure the litigation" in federal court is "implicitly inconsistent with … arbitration right[s]"). It did not "seek relief from case management and discovery obligations" based on its alleged right to arbitration.  *Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 943 (9th Cir. 2019).  And it litigated class certification in this Court, without seeking such relief.  *See Hill v. Xerox Bus. Servs., Ltd. Liab. Co.*, 59 F.4th 457, 469-470 (9th Cir. 2023) (defendant waived ability to compel arbitration after opposing class certification).  Throughout this case, Walmart has acted exactly as it would if this case were going to proceed in this Court.

In short, the totality of Walmart's actions up until a few weeks ago demonstrated a lack of intent to invoke its arbitration provision. Walmart took advantage of being in federal court by proceeding to litigate this case as any litigant in federal court would, with no indication that the Court or the parties should avoid expending resources because Walmart planned to move to compel arbitration. These actions show that Walmart's intent to compel arbitration was—at most—a "backup" plan. *Hill*, 59 F.4th at 465 n.11. The Court should "not reward [Walmart's] attempt to take a second bite from the apple in this manner." *Id.*; *Martin v. Yasuda*, 829 F.3d 1118, 1128 (9th Cir. 2016) (defendant "waived their right to compel arbitration" by waiting to move until after engaging in discovery and filing a motion to dismiss); *Kelly v. Pub. Util. Dist. No.* 2, 552 Fed. App'x 663, 663-664 (9th Cir. 2014) (the "district court properly determined that [defendants] waived their right to compel arbitration" when the parties "conducted discovery and litigated motions, including … a motion to dismiss"); *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1067-68 (C.D. Cal. 2011) (denying motion to compel arbitration where parties actively litigated in federal court).

## III. Conclusion.

For the foregoing reasons, this Court should deny Walmart's Motion to Compel Arbitration.

Dated: May 19, 2025

Respectfully submitted,

By: */s/ Richard Lyon*
Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

# EXHIBIT O

Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Christin Cho (CBN 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDIE GOLIKOV, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff,*<br><br>v.<br><br>WALMART INC.,<br><br>    *Defendant*. | Case No. 2:24-cv-08211-RGK-MAR<br><br>**PLAINTIFF'S RESPONSE TO WALMART'S MOTION TO CLARIFY OR TO DECERTIFY CLASS**<br><br>Date: July 28, 2025<br>Time: 9:00 a.m.<br>Ctrm.: 850<br><br>Assigned to the Hon. R. Gary Klausner<br><br>Complaint filed: September 24, 2024 |

# Table of Contents

I.  Introduction. .................................................................................................... 1

II.  The Court should reject Walmart's proposed clarification and, instead,
    adopt Plaintiff's proposed clarification. .................................................... 1

    A.  The Arbitration Order concerns Ms. Golikov and her individual
        claims, not the certified class and the class claims. The certified
        class and the class claims remain intact. ...................................... 1

    B.  Plaintiff's counsel should be permitted to substitute in a new class
        member as the named Plaintiff. ..................................................... 3

    C.  Alternatively, Ms. Golikov can continue to represent the certified
        class. ............................................................................................... 5

III.  Walmart's decertification request should be denied. ............................. 8

    A.  Legal standard. .............................................................................. 8

    B.  The lynchpin of Walmart's decertification request—that
        commonality and predominance are precluded by the arbitration
        agreement for online purchases—was already considered and
        rightly rejected by the Court. ....................................................... 9

    C.  Walmart's other decertification arguments also fail. ................. 13

V.  Conclusion. ...................................................................................................15

# Table of Authorities

## Cases

*Avilez v. Pinkerton Gov't Servs.*,
  596 F. App'x 579 (9th Cir. 2015)..................................................................3, 10, 11

*Bah. Surgery Ctr. v. Kimberly-Clark Corp.*,
  2018 U.S. Dist. LEXIS 242677 (C.D. Cal. Apr. 11, 2018)........................................8

*Bates v. UPS*,
  511 F.3d 974 (9th Cir. 2007)....................................................................................2, 3

*Birmingham Steel Corp. v. TVA*,
  353 F.3d 1331 (11th Cir. 2003)...................................................................................3

*Brewster v. City of Los Angeles*,
  2022 U.S. Dist. LEXIS 213156 (C.D. Cal. Jul. 27, 2022) .........................................8

*City of Grants Pass, Oregon v. Johnson*,
  603 U.S. 520 (2024) ...................................................................................................5

*Conde v. Sensa*,
  2019 U.S. Dist. LEXIS 154439 (S.D. Cal. Sept. 10, 2019) .....................................11

*Cornn v. United Parcel Service, Inc.*,
  2006 U.S. Dist. LEXIS 9013 (N.D. Cal. Feb. 22, 2006)..........................................11

*Davis v. Four Seasons Hotel*,
  2011 U.S. Dist. LEXIS 112386 (D. Haw. Sept. 30, 2011) .......................................12

*Dean v. United of Omaha Life Ins. Co.*,
  2008 U.S. Dist. LEXIS 112692 (C.D. Cal. Oct. 14, 2008).........................................4

*E. Tex. Motor Freight Sys. v. Rodriguez*,
  431 U.S. 395 (1977) ................................................................................................2, 3

*Ehret v. Uber Techs., Inc.*,
  148 F. Supp. 3d 884 (N.D. Cal. 2015) .....................................................................10

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003)..................................................................................13

*Estrella v. Freedom Fin. Network, LLC*,
  2012 U.S. Dist. LEXIS 7947 (N.D. Cal. Jan. 24, 2012) ............................................. 8

*Fishon v. Premier Nutrition Corp.*,
  2022 U.S. Dist. LEXIS 58655 (N.D. Cal. Mar. 30, 2022) ........................................... 4

*Franks v. Bowman Transp. Co.*,
  424 U.S. 747 (1976) .................................................................................................2, 3

*Heffelfinger v. Elec. Data Sys. Corp.*,
  580 F. Supp. 2d 933 (C.D. Cal. 2008) ........................................................6, 9, 11, 15

*Herrera v. LCS Fin. Servs. Corp.*,
  274 F.R.D. 666 (N.D. Cal. 2011) ............................................................................... 10

*Honda Idle Stop Litig.*,
  2024 U.S. Dist. LEXIS 235303 (C.D. Cal. Nov. 22, 2024) ......................................... 4

*In re Lidoderm Antitrust Litig.*,
  2017 U.S. Dist. LEXIS 24097 (N.D. Cal. Feb. 21, 2017) ........................................... 5

*In re MyFord Touch Consumer Litig.*,
  2018 U.S. Dist. LEXIS 129261 (N.D. Cal. Aug. 1, 2018) ........................................... 8

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
  2011 U.S. Dist. LEXIS 55033 (N.D. Cal. May 9, 2011) ........................................... 12

*Johnson v. City of Grants Pass*,
  72 F.4th 868 (9th Cir. 2023) ................................................................................5, 6, 7

*Johnson v. Walmart Inc.*,
  57 F.4th 677 (9th Cir. 2023) ............................................................................7, 13, 15

*Lambert v. Nutraceutical Corp.*,
  870 F.3d 1170 (9th Cir. 2017) .................................................................................... 8

*Magallon v. Robert Half Int'l, Inc.*,
  311 F.R.D. 625 (D. Or. 2015) .................................................................................... 11

*Midland Funding, LLC v. Brent*,
  2010 U.S. Dist. LEXIS 117501 (N.D. Ohio Nov. 4, 2010) ........................................ 12

*Miller v. Mercedes-Benz USA*,

    2009 U.S. Dist. LEXIS 45512 (C.D. Cal., May 15, 2009) .........................................4

*Mora v. Harley-Davidson Credit Corp.*,

    2012 U.S. Dist. LEXIS 49636 (E.D. Cal. Apr. 6, 2012)...........................................10

*Myers v. Intuit, Inc.*,

    2018 U.S. Dist. LEXIS 84180 (S.D. Cal. May 18, 2018)...........................................4

*Nat'l Fed'n of the Blind v. Target Corp.*,

    582 F. Supp. 2d 1185 (N.D. Cal. 2007) ......................................................................5

*Nevarez v. Forty Niners Football Co., LLC*,

    326 F.R.D. 562 (N.D. Cal. 2018) ..............................................................................11

*Nguyen v. Coinbase Inc.*,

    2024 U.S. Dist. LEXIS 211282 (C.D. Cal. Nov. 20, 2024).......................................6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,

    31 F.4th 651 (9th Cir. 2022).....................................................................................11

*Patton v. Experian Data Corp.*,

    2019 U.S. Dist. LEXIS 240863 (C.D. Cal. Jan. 22, 2019) ........................................4

*Ruiz Torres v. Mercer Canyons Inc.*,

    835 F.3d 1125 (9th Cir. 2016)..................................................................................12

*Sanchez v. Wal Mart Stores, Inc.*,

    2009 U.S. Dist. LEXIS 89057 (E.D. Cal. Sept. 11, 2009).........................................4

*Sosna v. Iowa*,

    419 U.S. 393 (1975) ........................................................................................2, 3, 13

*Velazquez v. GMAC Mortg. Corp.*,

    2009 U.S. Dist. LEXIS 88574 (C.D. Cal. Sept. 10, 2009).........................................4

## I.    Introduction.

After certifying a consumer class, the Court held that the individual claims of named plaintiff Edie Golikov are subject to arbitration and not redressable in this Court.  Dkt. 81 (Order). Walmart asks the Court to clarify that this means the previously certified class is also foreclosed from pursuing relief in this Court.  But controlling law compels the opposite clarification: the certified class remains intact and the class claims can be adjudicated in this Court.

We demonstrate below that the proper clarifications are the following: The class claims remain intact. And Plaintiff may propose a substitute class representative, or alternatively Ms. Golikov can remain as the class representative.

Walmart alternatively moves for decertification. But its decertification argument—that Walmart.com purchasers signed arbitration agreements while brick-and-mortar Walmart purchasers did not—was already before the Court when it certified the class. The Court rejected the argument then, and it should do so again.[1]

## II.   The Court should reject Walmart's proposed clarification and, instead, adopt Plaintiff's proposed clarification.

### A.    The Arbitration Order concerns Ms. Golikov and her individual claims, not the certified class and the class claims. The certified class and the class claims remain intact.

Walmart argues that the Order compelling arbitration on Ms. Golikov's individual claims automatically results in decertification and dismissal of the certified classes and their claims. Mot. 10, 15 ("the Order … sub silentio dissolved the classes" and "implies the classes have been decertified by automatic operation of law").

---

[1] The parties cooperated on the briefing schedule for this motion, and both parties believed the hearing date had been re-noticed for August 4, making this response due today. *See* Declaration of Richard Lyon ("Lyon Decl."), ¶¶2-4.  We respectfully request that this response be deemed timely and considered in its entirety. *Id*. (explaining confusion over briefing schedule and providing caselaw for like circumstances).

But U.S. Supreme Court and Ninth Circuit law precludes the relief Walmart seeks. When the "named plaintiff['s]" "claim is [deemed] not redressable" after "the class was … certified," "the remaining class members are not foreclosed from attaining relief." *Bates v. UPS*, 511 F.3d 974, 986 (9th Cir. 2007). That is, when "the District Court ha[s] certified a class and only later … it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives" the "claims of the class members" are not "mooted or destroyed." *E. Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 406 n.12 (1977). This is because "once a class action has been certified, 'the class of unnamed persons described in the certification acquire[s] a legal status separate from the representative.'" *Bates* at 987 (quoting *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)).  And so previously certified claims remain intact even when "the named representative no longer ha[s] a personal stake in the outcome." *Franks v. Bowman Transp. Co*., 424 U.S. 747, 753 (1976).

 For this reason, "it would be error for a district court to dismiss class allegations where it had already certified a class and 'only later had it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives.'" *Bates* at 987 (quoting *E. Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 406 n.12 (1977).

Here, the Court already certified a class. Dkt. 62 at 13 ("The Court certifies a Rule 23(b)(2) injunction subclass and a Rule 23(b)(3) damages subclass."). And because these classes have "legal status separate" from Ms. Golikov's individual claims, *Sosna*, 419 U.S. at 399, the Court's conclusion that Ms. Golikov's individual claims are "not redressable" in this Court" does not "foreclose[]" the claims of the certified class.  *Bates*, 511 F.3d at 986.  And the relief that Walmart asks the Court to impose—automatic "decertification" and "dismissal'" of the class claims based on the non-redressability of Ms. Golikov's individual claims, Dkt. 82— "would be error." *E. Texas Motor Freight*, 431 U.S. 395 at 406 n.12.

Instead, any clarification should follow the law of *Bates*, *E. Tex. Motor Freight*, *Sosna*, and *Franks*, and clarify that the class claims remain intact and are redressable in this Court. The Court should further clarify that there are two options going forward—either substituting in another class member as the class representative or proceeding with Ms. Golikov as the class representative. We address these two options in turn.

## B.  Plaintiff's counsel should be permitted to substitute in a new class member as the named Plaintiff.

As demonstrated in Section III below, and as presented to the Court in Plaintiff's original class certification briefing (Dkt. 51 at 6), the arbitration issue can be readily resolved by modifying the class definition to exclude online purchases and include only customers who made purchases at brick-and-mortar Walmart stores. *Avilez v. Pinkerton Gov't Servs.*, 596 F. App'x 579, 579 (9th Cir. 2015) (ordering lower court to proceed with claims of certified class but to modify class definition to exclude individuals who signed class action waivers).

We demonstrate in this Section II(B) that the class claims should proceed with a substitute class representative who is an in-store purchaser. We also demonstrate in Section II(C) that, alternatively, the class claims could proceed with Ms. Golikov as the class representative.

The Court should clarify that Plaintiff's counsel is permitted to propose a new class representative. Because a certified class has "legal status separate from that of the named plaintiffs," when the named plaintiff is deemed an "inadequate class representative," it is an "abuse of discretion" to order "simultaneous dismissal of the [case]" without "giving [the class] an opportunity for the intervention of a newly named plaintiff who would have standing to pursue the action." *Birmingham Steel Corp. v. TVA*, 353 F.3d 1331, 1336 (11th Cir. 2003) (citing *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)).

This is why "Courts in this circuit and elsewhere … permit[] [substitution

of class representatives] after class certification." *Honda Idle Stop Litig.*, No. 2:22-cv-04252-MCS-SK, 2024 U.S. Dist. LEXIS 235303, at *8 (C.D. Cal. Nov. 22, 2024) (listing cases); *Velazquez v. GMAC Mortg. Corp.*, No. CV 08-05444 DDP (PLAx), 2009 U.S. Dist. LEXIS 88574, at *9 (C.D. Cal. Sept. 10, 2009) ("Courts regularly allow replacement of the named plaintiff after class certification."); *Fishon v. Premier Nutrition Corp.*, No. 16-cv-06980-RS, 2022 U.S. Dist. LEXIS 58655, at *4 (N.D. Cal. Mar. 30, 2022) (rejecting defendant's automatic "decertification" argument and allowing substitution of new plaintiff as "the proper course of action" after original named plaintiff deemed inadequate); *id.* (there are "numerous cases in which a district court has permitted substitution of the class representative following certification") (listing cases); *Miller v. Mercedes-Benz USA*, 2009 U.S. Dist. LEXIS 45512, at *3 (C.D. Cal., May 15, 2009) ("after a class has been certified, Courts regularly allow replacement of the named plaintiff"); *Sanchez v. Wal Mart Stores, Inc*., 2009 U.S. Dist. LEXIS 89057, at *8 (E.D. Cal. Sept. 11, 2009) ("leave to substitute a different class representative may be granted when there is a certified class already in place"); *Patton v. Experian Data Corp.*, No. SACV 17-01559-JVS(DFMx), 2019 U.S. Dist. LEXIS 240863, at *6 (C.D. Cal. Jan. 22, 2019) ("substitution of a class representative after certification is permissible because once certified, a class acquires a legal status separate from that of the named plaintiffs") (internal citations and quotations omitted); *Myers v. Intuit, Inc*., No. 17cv1228-WQH-BLM, 2018 U.S. Dist. LEXIS 84180, at *20-21 (S.D. Cal. May 18, 2018) (same) (listing cases).

Accordingly, we request clarification that we may propose a substitute class representative that does not have the same arbitration obligations as Ms. Golikov—e.g. one of the thousands of purchasers of Great Value Avocado Oil from Walmart's brick and mortar stores. *See, e.g., Dean v. United of Omaha Life Ins. Co.*, No. CV 05-6067-GHK (FMOx), 2008 U.S. Dist. LEXIS 112692, at *10 (C.D. Cal. Oct. 14, 2008) (deeming class representative to be inadequate, but expressly allowing "Plaintiff's counsel [to] propose a substitute class representative who does not have" the same

disqualifying problem as the original class representative); *Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1201 (N.D. Cal. 2007) (holding that plaintiff's counsel cannot proceed with its class claims with the named plaintiff but expressly providing "plaintiffs' leave to substitute another class representative"); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 U.S. Dist. LEXIS 24097, at *108 (N.D. Cal. Feb. 21, 2017) (holding that the named plaintiff is inadequate, but expressly ordering that plaintiffs "may substitute in a new class representative").

**C.      Alternatively, Ms. Golikov can continue to represent the certified class.**

In the alternative, or in addition to, allowing a substitute class representative, the Court should clarify that Ms. Golikov can continue as a class representative. A "class representative may pursue the live claims of a properly certified class—without the need to remand for substitution of a new representative—even after his own claims become moot, provided that several requirements are met." *Johnson v. City of Grants Pass*, 72 F.4th 868, 884 & n.18 (9th Cir. 2023), *rev'd and remanded sub nom. on other grounds, City of Grants Pass, Oregon v. Johnson*, 603 U.S. 520, 144 (2024). And, in this case, each of these requirements are met.

The requirements are (1) the "class must be properly certified," (2) the "class representative must be a member of the class with standing to sue at the time certification is granted," (3) the "unnamed class members must still have a live interest in the matter throughout the duration of the litigation," and (4) "the court must be satisfied that the named representative will adequately pursue the interests of the class even though their own interest has expired." *Grants Pass*, 72 F.4th at 884 n.18 (9th Cir. 2023). We address each requirement in turn.

(1) The class was "properly certified." *Id*. The Court issued a well-reasoned Order certifying the class. Dkt. 62. Each of the asserted reasons for certification provided in the Order remains true today. As demonstrated below, Walmart's

decertification request repeats the same arguments it made when it opposed Plaintiff's original class certification motion. *See infra* Section III(B)-(C) (rebutting Walmart's decertification arguments). And "repetition of arguments that the court declined to accept in deciding plaintiffs' motion for certification [is] not adequate to support a decertification request." *Heffelfinger v. Elec. Data Sys. Corp.*, 580 F. Supp. 2d 933, 968 n.119 (C.D. Cal. 2008).

Also, at Walmart's request, the Court's class certification Order is currently being reviewed by the Ninth Circuit pursuant to Walmart's 23(f) Petition. Dkt. 67-4 (Walmart's 23(f) Petition, filed March 13, 2025). The parties and the Court can gain certainty that the class was properly certified by awaiting the Ninth Circuit's Order.

(2) Ms. Golikov is "a member of the class." *Grants Pass*, 72 F.4th at 884 n.18. The certified class, as currently defined, is "all persons who, while in the state of California and within the applicable statute of limitations period, purchased [Great Value Avocado Oil]." Dkt. 62 at 13. While in California, Ms. Golikov "purchased Great Value Avocado Oil in person from brick-and-mortar Walmart stores multiple times a year for years" throughout the statutory period, "including between 2021 and 2024." Dkt. 69-1 (Golikov Decl., ¶2).

Ms. Golikov had "standing to sue at the time class certification was granted." *Grants Pass*, 72 F.4th at 884 n.18. Walmart contends that she lacks standing because of the arbitration provision in the "Terms of Use" governing the online purchase identified in her Complaint. But she also purchased Great Value Avocado Oil "in person from brick-and-mortar Walmart stores." *Id*. To begin, Walmart confuses standing with arbitrability. Whether one's claims are subject to arbitration is not a question of standing. *Nguyen v. Coinbase Inc.*, No. 2:24-cv-02818-ODW (JPRx), 2024 U.S. Dist. LEXIS 211282, at *7 (C.D. Cal. Nov. 20, 2024). Regardless, Walmart's arbitration agreement is "clear" that "by agreeing to the Terms of Use" in the online purchasing process, a Plaintiff does "not assent to arbitrate claims that might arise out of a separate, in-store purchase." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681-83 (9th

Cir. 2023). So Ms. Golikov assuredly has standing both now and at the time of class certification to assert her claims based on these purchases.

Also, if the class definition is modified to exclude claims arising from online purchases (*see infra* Section III(B)), Ms. Golikov is still a member of the class (due to her "separate, in-store purchase[s]") with standing to pursue the claims arising out of these "separate, in-store purchase[s]." *Id.*

(3) The "unnamed class members … still have a live interest in the matter throughout the duration of the litigation." *Grants Pass*, 72 F.4th at 884 n.18. Whether Ms. Golikov must arbitrate claims arising from her online purchase in no way affects the litigation interests of the thousands of unnamed class members who purchased their products at brick-and-mortar Walmart stores. *See* Lyon Decl., Ex. 1 (Declaration of Tommy Reed, Walmart Merchandising Director), ¶3 ("Walmart has generated more than $3,000,000 in sales revenue from the sale of Great Value Avocado Oil in California brick-and-mortar stores from February 29, 2020, through February 29, 2024").

(4) Ms. Golikov would continue to "adequately pursue the interests of the class" regardless of whether she was foreclosed from pursuing claims based on her online purchases. *Grants Pass*, 72 F.4th at 884 n.18. Ms. Golikov's interests (and their alignment with the class) remain unchanged because, like all other class members with claims redressable in their Court, she purchased from brick-and-mortar Walmart stores, and paid an unfair premium due to their misleading label.

Accordingly, because the four "requirements are met," Ms. Golikov can continue to "pursue the live claims of [the] properly certified class." *Grants Pass*, 72 F.4th at 884 n.18.

\*     \*     \*

In sum, the Court should reject Walmart's proposed clarification. Instead, the Court should clarify that the class claims remain intact, and Plaintiff's counsel can

either propose a substitute class representative or continue with Ms. Golikov as the class representative.

## III. Walmart's decertification request should be denied.

### A. Legal standard.

"The party seeking decertification has the burden of establishing that the requirements of FRCP 23 have not been met" and that this "burden is substantial, as doubts regarding the propriety of class certification should be resolved in favor of certification." *Bah. Surgery Ctr. v. Kimberly-Clark Corp.*, No. CV 14-8390-DMG (PLAx), 2018 U.S. Dist. LEXIS 242677, at *70 (C.D. Cal. Apr. 11, 2018) (internal citations and quotations omitted); *Estrella v. Freedom Fin. Network, LLC*, No. CV 09-03156 SI, 2012 U.S. Dist. LEXIS 7947, at *14 (N.D. Cal. Jan. 24, 2012) ("The party seeking decertification must show that the class no longer meets [the] certification requirements. … Doubts should be resolved in favor of certification."). Walmart contends that *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017) shifted the burden. Mot. 16. But post-*Lambert*, district courts continue to "impose the burden on a defendant to show that decertification is warranted" because "the question of burden" was not "squarely before the [*Lambert*] Court," and "decertification and modification should theoretically only take place after some change, unforeseen at the time of the class certification, that makes alteration of the initial certification decision necessary.'" *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2018 U.S. Dist. LEXIS 129261, at *5 (N.D. Cal. Aug. 1, 2018) (citing authority and cases); *Brewster v. City of Los Angeles*, No. EDCV 14-2257 JGB (SPx), 2022 U.S. Dist. LEXIS 213156, at *11 (C.D. Cal. Jul. 27, 2022) (same). But, as shown below, regardless of which party has the burden, Walmart's decertification motion should be denied.

**B.** **The lynchpin of Walmart's decertification request—that commonality and predominance are precluded by the arbitration agreement for online purchases—was already considered and rightly rejected by the Court.**

Walmart argues that the certified classes must be decertified because online purchasers (as opposed to brick-and-mortar purchasers) "are bound by arbitration agreements and class action waivers that forbid their participation in this action." Mot. at 16; *id*. at 22 (the presence of both "individual[s] [that] agreed to the arbitration agreement in Walmart.com's Terms of Use" (online purchasers) and those that did not (brick-and-mortar purchasers) leads to "[d]issimilarities within the proposed class").

But this cannot be a basis for decertification because "repetition of arguments that the court declined to accept in deciding plaintiffs' motion for certification are not adequate to support a decertification request." *Heffelfinger v. Elec. Data Sys. Corp*., 580 F. Supp. 2d 933, 968 n.119 (C.D. Cal. 2008). And this argument repeats the exact same argument Walmart made in opposing Plaintiff's motion for class certification. Plaintiff explained why this argument cannot preclude certification. The Court agreed with Plaintiff and declined to accept it.

Just as it does here, Walmart argued in its original opposition to Plaintiff's certification motion, that the proposed class "includes any buyers of the Avocado Oil … whether in brick-and-mortar stores or online" but the online purchasers are subject to "an arbitration agreement and class action waiver." Dkt. 44 (Walmart's Class Certification Opposition) at 13; *id*. at 2 (arguing that "Golikov's putative class includes customers bound by Walmart's arbitration and class waiver provisions, which creates numerous problems precluding class certification"); *id*. at 5 (the proposed class "include[s] consumers who must arbitrate their claims individually"). Indeed, Walmart even relies on the same authorities to support its argument. *Compare* Dkt. 44 at 9 *with*

Mot. 9 (both relying on *Avilez v. Pinkerton Gov't Servs., Inc*., 596 F. App'x 579, 579 (9th Cir. 2015)).[2]

Plaintiff addressed this argument in the original class certification briefing in a Section entitled "Walmart's online Terms of Use do not preclude certification." Dkt. 51 at 6. For example:

> 6    Walmart's argues that some members of the proposed class (online purchasers)
> 7    may have agreed to arbitrate their claims under the Terms of Use for online purchases,
> 8    and that this presents an individualized issue that predominates over common ones.
> 9    Opp. 13-14. Walmart is wrong. "The fact that some members of a putative class may
> 10    have signed arbitration agreements or released claims against a defendant does not bar
> 11    class certification." *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 681 (N.D. Cal. 2011);
> 12    *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 902 (N.D. Cal. 2015) (same). "The
> 13    possibility that [defendant] may seek to compel arbitration against individual Class
> 14    members does not predominate over the many common issues necessary to determine
> 15    [defendant's] liability to the Class." *Mora v. Harley-Davidson Credit Corp.*, 2012 U.S. Dist.
> 16    LEXIS 49636, at *40 (E.D. Cal. Apr. 6, 2012) (collecting cases). Here, as in *Mora*,
> 17    common questions predominate liability and damages, so the possibility that Walmart may
> 18    seek to compel arbitration against certain class members does not defeat predominance.

Dkt. 51 (Plaintiff's Class Certification Reply) at 6.

Plaintiff also explained that the arbitration argument cannot defeat class certification because it is easily resolved by modifying the class definition at later stages of the litigation:

---

[2] Walmart cites *Avilez* (Mot. 9), but *Avilez* supports Plaintiff's position, not Walmart's. In *Avilez*, the district court certified a class that included individuals who signed class action waivers and those that did not. *Avilez*, 596 F. App'x at 579. The Ninth Circuit did not say that this precluded certification altogether. Instead, it ordered the district court to modify the class definition to include only those that did not. *Id*.

> 19    Alternatively, if the Court finds that the Terms of Use pose predominance
> 20  problems, the class definition could be modified to exclude online purchases. *See Nevarez*
> 21  *v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 575 (N.D. Cal. 2018) ("[D]istrict courts
> 22  have broad discretion to modify class definitions"); *Avilez v. Pinkerton Gov't Servs.*, 596 F.
> 23  App'x 579, 579 (9th Cir. 2015) (ordering lower court to exclude individuals who signed
> 24  class action waivers from class definition); *Conde v. Sensa*, 2019 U.S. Dist. LEXIS 154439,
> 25  at *14 (S.D. Cal. Sep. 10, 2019) (finding predominance satisfied where class definition
> 26  excluded consumers subject to arbitration clause); *Magallon v. Robert Half Int'l, Inc.*, 311
> 27  F.R.D. 625, 640 (D. Or. 2015) (same).

*Id.* at 6.

The Court rejected Walmart's argument, agreed with Plaintiff, and certified the class. Dkt. 62. And simply repeating the already-rejected argument is "not adequate to support a decertification request." *Heffelfinger v. Elec. Data Sys. Corp.*, 580 F. Supp. 2d 933, 968 n.119 (C.D. Cal. 2008); *Corrn v. United Parcel Service, Inc.*, No. C03–2001 TEH, 2006 U.S. Dist. LEXIS 9013, *13 (N.D. Cal. Feb. 22, 2006) ("[T]he Court will not entertain motions that simply repeat the same arguments raised in opposition to Plaintiffs' class certification motion").

Moreover, the Court's original decision was correct. That some purchasers (here, the online purchasers) have arbitration agreements is not a reason to deny certification or decertify. Instead, as Plaintiff stated in its original motion, this issue can be readily resolved by modifying the class definition to exclude online purchases and include only brick-and-mortar purchasers. *Avilez v. Pinkerton Gov't Servs.*, 596 F. App'x 579, 579 (9th Cir. 2015) (ordering lower court to modify class definition to exclude individuals who signed class action waivers); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) ("the problem of a potentially over-inclusive class can and often should be solved by refining the class definition rather than by flatly denying class certification on that

basis") (internal citations and quotations omitted); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1139 (9th Cir. 2016) ("the better course is not to deny class certification entirely but to amend the class definition as needed to correct for the overbreadth") (internal citations and quotations omitted); *Midland Funding, LLC v. Brent*, No. 3:08 CV 1434, 2010 U.S. Dist. LEXIS 117501, at *11 n.1 (N.D. Ohio Nov. 4, 2010) (rejecting the argument that the presence of an arbitration agreement with some of the unnamed class members barred certification, stating that "[a]ny arbitration-related defenses … to claims of certain class members may be dealt with … through the creation of subclasses, or by eliminating some members of the class"); *Davis v. Four Seasons Hotel*, No. 08-00525 HG-BMK, 2011 U.S. Dist. LEXIS 112386, at *11 (D. Haw. Sept. 30, 2011) (granting class certification, stating that "[t]he possibility that Four Seasons may be able to compel unnamed members of the putative class to arbitrate … does not preclude class certification"); *In re TFT–LCD (Flat Panel) Antitrust Litig.*, No. M07-1827 SI, 2011 U.S. Dist. LEXIS 55033, at *34 (N.D. Cal. May 9, 2011) (denying motion to stop certified class claims from proceeding when a subset of unnamed class members had arbitration agreements).[3]

And, as demonstrated above, as a regular purchaser of the class product at Walmart brick-and-mortar stores, Ms. Golikov would still fall within the modified class. And so would thousands of other unnamed plaintiffs, one of whom Plaintiff should be permitted to propose as a substitute class representative. *See* Lyon Decl., Ex. 1, ¶3 ("Walmart has generated more than $3,000,000 in sales revenue from the sale of Great Value Avocado Oil in California brick-and-mortar stores from February 29, 2020, through February 29, 2024") (emphasis added).

As part of the clarification, Plaintiff should be granted leave to amend the Complaint to reflect the narrowed class, either by adding allegations pertaining to the substitute class representative or to Ms. Golikov's in-store purchases, as detailed in her

---

[3] Walmart argues that purchases made with Walmart Pay in the mobile app also agreed to arbitration provisions. Mot. 13-14. This fails as a decertification argument for the same reason. These purchases can likewise readily be excluded from the class.

past declaration.  *See* Dkt. 69-2. "The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2). And should do so "with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003).  Here, justice requires this amendment for effective adjudication of the class claims that remain intact and have their own "legal status." *Sosna v. Iowa*, 419 U.S. 393, 395 (1975).

> ### C.    Walmart's other decertification arguments also fail.

In addition to the flawed predominance and commonality argument rebutted above, Walmart makes four decertification arguments that we rebut in turn.

> **1.  <u>Typicality and adequacy of class representative</u>**:  Walmart argues that Ms. Golikov's claims are atypical because they must "be arbitrated individually and cannot be part of a class action." Mot. 17. But, as Plaintiff argued during class certification proceedings, Walmart's argument is obviated if the class definition is limited to claims arising from brick-and-mortar purchases. *See supra*; Dkt. 51 at 6. Ms. Golikov (and thousands of other plaintiffs, one of whom could be substituted as the new class representative) made brick-and-mortar purchases, with claims arising from those purchases. And controlling Ninth Circuit law holds that Walmart's arbitration agreement is "clear" that, regardless if consumers have "agree[d] to the Terms of Use" arbitration agreement when making online purchases, they do "not assent to arbitrate claims that might arise out of a separate, in-store purchase." *Johnson v. Walmart Inc*., 57 F.4th 677, 682 (9th Cir. 2023).

> **2.  <u>Adequacy of class counsel</u>:**  Plaintiff's counsel satisfies the adequacy requirement and is routinely appointed class counsel in consumer class actions like this. Dkt. 36-3, ¶12 (listing representative cases); Dkt. 62 (Class Certification Order) at 8 ("the Court finds that the adequacy requirement is satisfied").

As purported grounds for decertification, Walmart now argues that Plaintiff's counsel is "inadequate" because the Complaint references Ms. Golikov's purchase from a "Walmart store" instead of a "Walmart online store." Mot. 18-19

(characterizing the omission of the term "online" as "misconduct," "unethical" and exhibiting a lack of "integrity and candor"). Walmart's hyperbolic rhetoric is not only unfounded and offensive—it also makes no sense. Walmart's argument depends on the premise that (1) Ms. Golikov only purchased online, and (2) counsel was somehow trying to mischaracterize the referenced online purchase as a brick-and-mortar purchase so it could point to a purchase to which the arbitration provision did not apply. But every part of this premise is false. Ms. Golikov did not only purchase online. She also purchased "in person from brick-and-mortar Walmart stores multiple times a year for years (including between 2021 and 2024)." Dkt. 69-2 (Golikov Decl., ¶ 2). And if counsel were deliberately trying to create the appearance of an in-store purchase to overcome the arbitration provision, they simply would have referenced these brick-and-mortar purchases.

Also, Walmart's assertion that Plaintiff was attempting to conceal her online purchases until "after the classes were certified," Mot. at 19, is refuted by the class certification briefing itself. During briefing, Ms. Golikov expressly characterized herself as both an online purchaser and an in-store purchaser. Dkt. 51 at 6-7 (arguing that agreeing to "Terms of Use" for "online" purchases does not bind her for "separate, in-store purchase[s]").

Walmart also argues that class counsel has a conflict between the class claims for online purchases (subject to arbitration) and the class claims for in-store purchases (not subject to arbitration). Mot. 20. But, as Walmart acknowledges, given the Court's Arbitration order, there can be no class claims for online purchases, and so there is no conflict. Also, class notice has not yet occurred (*see* Dkt. 78), so there is no need for any curative notice upon excluding online purchases from the class.

**3. Numerosity**: Walmart repeats its "numerosity is not satisfied" argument, but then acknowledges the same evidence—evidence "that Walmart has 280 stores in California and sells avocado oil in stores," Mot. 21—that the Court already held to be sufficient evidence showing "that the numerosity requirement is satisfied." Dkt. 62 at

4-5. *See Heffelfinger*, 580 F. Supp. 2d at n.119 (C.D. Cal. 2008) ("repetition of arguments that the court declined to accept in deciding plaintiffs' motion for certification are not adequate to support a decertification request"). Also, further evidence demonstrates that "Walmart has generated more than $3,000,000 in sales revenue from the sale of Great Value Avocado Oil in California brick-and-mortar stores from February 29, 2020, through February 29, 2024." Lyon Decl., Ex. 1, ¶3.

    **4. <u>Superiority</u>:** Walmart repeats its arbitration argument as a superiority argument, asserting that "this case will require an individual analysis of every class member to determine which are subject to arbitration agreements and class action waivers." Mot. 24-25. Not true. By excluding online (or app-based) purchases from the class definition and limiting it to California consumers who have brick-and-mortar purchases within the statutory period, no analysis is required. Controlling law is clear that, regardless if consumers have "agree[d] to [Walmart's] Terms of Use" with the arbitration and waiver provisions when making online purchases, they do "not assent to arbitrate claims that might arise out of a separate, in-store purchase." *Johnson v. Walmart Inc.*, 57 F.4th 677, 682 (9th Cir. 2023).

**V.    Conclusion.**

    For the foregoing reasons, Walmart's requested clarification should be rejected, and its motion for decertification denied. Instead, the Court should clarify that (1) the class claims remain intact, (2) the class definition should be limited to brick-and-mortar purchasers, and (3) Plaintiff may either substitute a new class representative or, alternatively, proceed with Ms. Golikov as the class representative.

Dated: July 14, 2025

                                                 Respectfully submitted,

                                                 By: */s/ Richard Lyon*
                                                 Richard Lyon (CBN 229288)
                                                 rick@dovel.com
                                                 Christin Cho (CBN 238173)
                                                 christin@dovel.com
                                                 DOVEL & LUNER, LLP

201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorney for Plaintiff*

## <u>CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION</u>

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 4,812 words, which complies with the word limit of L.R. 11-6.1 and the Court's Standing Order.

Dated: July 14, 2025                                    By: */s/ Richard Lyon*_____
                                                       Richard Lyon

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form15instructions.pdf

**9th Cir. Case Number(s)** [                                    ]

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

| <u>VIA EMAIL:</u> | <u>VIA OVERNIGHT MAIL:</u> |
|---|---|
| Jacob M. Harper (jacobharper@dwt.com) | Hon. R. Gary Klausner |
| James H. Moon (jamesmoon@dwt.com) | Edward R. Roybal Federal Building |
| Heather F. Canner (heathercanner@dwt.com) | 255 East Temple St. |
| Joseph Elie-Meyers (josepheliemeyers@dwt.com) | 12th Floor |
| | Los Angeles, CA 90012 |

**Description of Document(s)** *(required for all documents)*:

Petition for a Writ of Mandamus; Appendix

**Signature** [ s/ Rachel Ong ]    **Date** [ January 16, 2026 ]

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 15**                                                                 *Rev. 12/01/2018*